**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

NAPLETON'S ARLINGTON HEIGHTS
MOTORS, INC. f/k/a NAPLETON'S
PALATINE MOTORS, INC. d/b/a
NAPLETON'S ARLINGTON HEIGHTS
CHRYSLER DODGE JEEP RAM, an
Illinois corporation; NAPLETON'S RIVER
OAKS MOTORS, INC. d/b/a NAPLETON'S
RIVER OAKS CHRYSLER DODGE JEEP
RAM, an Illinois corporation; CLERMONT
MOTORS, LLC d/b/a NAPLETON'S
CLERMONT CHRYSLER DODGE JEEP
RAM, an Illinois limited liability company;
NAPLETON'S NORTH PALM AUTO
PARK, INC. d/b/a NAPLETON'S
NORTHLAKE CHRYSLER DODGE JEEP
RAM, an Illinois corporation; NAPLETON
ENTERPRISES, LLC d/b/a NAPLETON'S
SOUTH ORLANDO CHRYSLER DODGE
JEEP RAM, an Illinois limited liability
company; NAPLETON'S MID RIVERS
MOTORS, INC. d/b/a NAPLETON'S MID
RIVERS CHRYSLER DODGE JEEP RAM,
an Illinois corporation; NAPLETON'S
ELLWOOD MOTORS, INC. d/b/a
NAPLETON'S ELLWOOD CHRYSLER
DODGE JEEP RAM, an Illinois corporation,

        Plaintiffs,

   v.

FCA US LLC, a Delaware corporation,

        Defendant.

Case No. 1:16-cv-00403-VMK-SMF

1

## FCA US LLC'S SECOND SUPPLEMENTAL RESPONSE TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

Defendant FCA US LLC ("FCA") hereby serves its Second Supplemental Response to Plaintiffs' First Set of Requests for Production of Documents ("Second Supplemental Response") pursuant to Federal Rules of Civil Procedure 26(b) and 34(b)(2). FCA incorporates all General Objections, Objections to Definitions, and Objections to Instructions in its Response to Plaintiffs' First Set of Requests for Production of Documents into this Supplemental Response.

## OBJECTIONS TO DEFINITIONS

1.  FCA objects to the definition of "False Sales Report" and "Reports" in Definition 7 insofar as the incorporated term "You" is otherwise objectionable as explained above and the term "bona fide" is so vague and ambiguous that FCA is unable to determine the type of sales report that Plaintiffs are attempting to describe. FCA also objects on the ground that Plaintiffs define the term "Reports" two different ways in Definitions 6 and 7. For the purposes of these requests, FCA will disregard the word "false" used in the Plaintiffs' term "False Sales Reports," and re-define the term as "any document or communication that FCA or FCA's dealers use to report and/or track the sale of new vehicles, including New Vehicle Delivery Reports, that reports or contains data concerning vehicle sales or leases that did not actually occur on the dates or in the period reported by an FCA dealer to FCA." FCA does not admit that the materials captured by this definition are in any way "false."

## FCA'S RESPONSES AND OBJECTIONS TO THE PLAINTIFFS' REQUESTS

**REQUEST NO. 7:**

All DOCUMENTS and COMMUNICATIONS concerning FALSE SALES REPORTS or unwinding of FALSE SALES REPORTS involving YOUR dealers, including Sherman CDJR; Northwestern CDJR; Glendale CDJR; Royal Gate CDJR; and South County CDJR.

**RESPONSE TO REQUEST NO. 7:**

FCA will produce data sufficient to show, if any, the sales reported by FCA dealers located in the Relevant Territory during the Relevant Time Period. In addition to and specifically incorporating its foregoing General Objections, FCA also objects to Request No. 7 on the ground that the term "FALSE SALES REPORTS" is vague and ambiguous, as explained above. FCA also objects on the ground that the time period and geographic scope of Request No. 7 are overbroad and therefore the Request seeks documents that are not relevant to the claims or defenses of any party, nor proportional to the needs of the case, and imposes undue burden and expense on FCA. FCA further objects to Request No. 7 to the extent that disclosure of records concerning non-party FCA dealers may be prohibited by the terms of dealer agreements with other FCA dealers, and/or by law governing the dissemination of information relating to non-party dealerships.

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 7**:

In addition to the documents FCA previously agreed to produce in response to Request No. 7, FCA will search for and produce non-privileged documents and communications, if any, using agreed-upon search terms and custodians, concerning the alleged "indicia of a plan to execute and/or conceal a false reporting scheme" as described in Request No. 4 subparagraphs (a)-(i) for FCA dealers in the Relevant Territory, Sherman CDJR, and Northwestern CDJR during the Relevant Time Period. FCA otherwise maintains, and specifically incorporates, its General Objections and specific objections to Request No. 7.

**REQUEST NO. 8:**

All DOCUMENTS and COMMUNICATIONS concerning the Volume Growth Program in connection with the PLAINTIFFS and COMPETING DEALERS from January 1, 2012 to the present, including those concerning:

(a) how YOU determined the targets for each PLAINTIFF and COMPETING DEALER, and what the targets were at any time;

(b) how YOU determined the clawback penalty (as further described in the amended complaint) for each PLAINTIFF and COMPETING DEALER, and what the penalties were at any time;

(c) how YOU determined the benefits and drawbacks (including monies, vehicle allocations, or other preferential treatment) of compliance or non-compliance;

(d) what benefits YOU provided for compliance or non-compliance with the Volume Growth Program to any PLAINTIFF or COMPETING DEALER at any time;

(e) what conditions and terms YOU required any PLAINTIFF or COMPETING DEALER to meet to comply with and be eligible for benefits under the Volume Growth Program, and how YOU determined those conditions and terms; and

(f) what impact compliance or non-compliance with the Volume Growth Program had on the sales or finances of any PLAINTIFF or COMPETING DEALER.

**RESPONSE TO REQUEST NO. 8:**

FCA will produce non-privileged documents, if any, sufficient to show the VGP program rules and how VGP sales objectives were determined for dealers located in the Relevant Territory during the Relevant Time Period. FCA will also produce non-privileged documents, if any, sufficient to show the VGP incentives received by dealers located in the Relevant Territory during the Relevant Time Period. FCA will also search for and produce non-privileged communications with Plaintiffs, if any, using agreed-upon search terms and custodians, concerning the VGP during the Relevant Time Period.

In addition to and specifically incorporating its foregoing General Objections, FCA otherwise objects to Request No. 8 on the ground that FCA objects to Plaintiffs' definition of the term "Competing Dealers," as explained above. FCA also objects to Request No. 8 on the ground that Plaintiffs' claim that the alleged schemes "[began] no later than early 2015" and therefore their request for information for the period from January 1, 2012 to the present seeks information that is not relevant to the claims or defenses of any party, nor proportional to the needs of the case,

4

and imposes undue burden and expense on FCA. FCA further objects to Request No. 8 on the

ground that the terms "clawback penalty," "benefits," "drawbacks," "compliance," and "non-

compliance" are so vague and ambiguous that FCA is unable to determine the type of

information that Plaintiffs are attempting to describe. FCA also objects to Request No. 8 to the

extent it seeks information not in FCA's possession, custody, or control in that it requests

information about "what impact compliance or non-compliance with the [VGP] had on the sales

or finances of any PLAINTIFF OR COMPETING DEALER." Finally, FCA objects to Request

No. 8 to the extent that disclosure of documents and communications concerning non-party FCA

dealers may be prohibited by the terms of dealer agreements with other FCA dealers, and/or by

law governing the dissemination of information relating to non-party dealerships.

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 8**:

In addition to the documents FCA previously agreed to produce in response to Request No. 8,

FCA will search for and produce non-privileged communications, if any, using agreed-upon

search terms and custodians, concerning the VGP in connection with dealers located in the

Relevant Territory during the Relevant Time Period. FCA otherwise maintains, and specifically

incorporates, its General Objections and specific objections to Request No. 8.

**REQUEST NO. 10:**

All DOCUMENTS and COMMUNICATIONS concerning the Minimum Sales Responsibilities
of the PLAINTIFFS and any component used to calculate their Minimum Sales Responsibilities,
including those concerning:

  (a) how YOU determined the PLAINTIFFS' SALES ZONES, and what the SALES ZONES
       are or were;

  (b) how YOU determined the vehicles that compete with the vehicles sold by PLAINTIFFS,
       and what those vehicles are;

  (c) how YOU determined the PLAINTIFFS' fair share among dealers within their SALES
       ZONES, what those fair shares are or were, and who the dealers within their SALES
       ZONES are or were;

(d) how YOU determined market shares and what the market shares were for each PLAINTIFF;

(e) analyses or opinions from Urban Science or JD Power & Associates with respect to YOUR determination that YOUR vehicles are competitive with luxury SUVs; and

(f) the input YOU provided or intended to provide to any PLAINTIFF in determining their Minimum Sales Responsibilities or any component of Minimum Sales Responsibilities, or any statements, representations, or promises YOU made to PLAINTIFFS on this subject.

**RESPONSE TO REQUEST NO. 10:**

FCA will produce non-privileged documents, if any, sufficient to show how FCA calculated each Plaintiff's respective Minimum Sales Responsibilities during the period from January 1, 2013 through January 12, 2016, including how fair share was calculated, when applicable; Plaintiffs' respective Minimum Sales Responsibilities and Plaintiffs' respective sales performances as compared to their Minimum Sales Responsibilities during the period from January 1, 2013 through January 12, 2016; a list of the non-FCA vehicles that FCA views as competing with FCA vehicles and reason(s) for changes in such list(s) during the period from January 1, 2013 through January 12, 2016; Plaintiffs' fair share numbers, where applicable, as they relate to Minimum Sales Responsibility, during the period from January 1, 2013 through January 12, 2016; and the identity of FCA dealers located in the same Sales Localities as Plaintiffs during the period from January 1, 2013 through January 12, 2016. FCA will also search for and produce non-privileged communications, if any, with Plaintiffs using agreed-upon search terms and custodians concerning their Minimum Sales Responsibility during the period from January 1, 2013 through January 12, 2016.

In addition to and specifically incorporating its foregoing General Objections, FCA otherwise objects to Request No. 10 on the ground that it is overbroad, seeks documents and communications that are neither relevant to any claim or defense of any party, nor proportional

6

to the needs of the case, and imposes undue burden and expense on FCA, because it requests "all"

documents and communications concerning the Minimum Sales Responsibility of the Plaintiffs

and any component used to calculate their Minimum Sales Responsibilities.  FCA also objects on

the ground that the terms "Sales Zones," "luxury SUVs," and "market share" are undefined and

are so vague and ambiguous that FCA is unable to determine the type of information that

Plaintiffs are attempting to describe.  Finally, FCA objects on the ground that Request No. 10

seeks information that is not relevant to any party's claim or defense and is not in FCA's

possession, custody, or control insofar as it requests "analyses or opinions from Urban Science or

JD Power & Associates with respect to YOUR determination that YOUR vehicles are

competitive with luxury SUVs."

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 10**:

In addition to the documents FCA previously agreed to produce in response to Request

No. 10, FCA will search for and produce non-privileged communications, if any, using agreed-

upon search terms and custodians, concerning Plaintiffs' Minimum Sales Responsibility during

the period from January 1, 2013 through January 12, 2016.  FCA otherwise maintains, and

specifically incorporates, its General Objections and specific objections to Request No. 10.


Dated: February 16, 2017                           Respectfully submitted,


                                                   */s/ Robert Cultice*
                                                   Robert D. Cultice *(admitted pro hac vice)*
                                                   Felicia H. Ellsworth *(admitted pro hac vice)*
                                                   Caitlin W. Monahan *(admitted pro hac vice)*
                                                   WILMER CUTLER PICKERING HALE AND DORR LLP
                                                   60 State Street
                                                   Boston, MA 02109
                                                   (617) 526-6000
                                                   robert.cultice@wilmerhale.com

felicia.ellsworth@wilmerhale.com
caitlin.monahan@wilmerhale.com

Randall L. Oyler
Owen H. Smith
Brandon C. Prosansky
Katherine A. Neville
BARACK FERRAZZANO KIRSCHBAUM &
NAGELBERG LLP
200 West Madison Street
Suite 3900
Chicago, IL 60606
(318) 984-3100
randall.oyler@bfkn.com
owen.smith@bfkn.com
brandon.prosansky@bfkn.com
katie.neville@bfkn.com

***Attorneys for Defendant.***

**CERTIFICATE OF SERVICE**

I hereby certify that on February 16, 2017 the foregoing document, FCA US LLC'S

SECOND SUPPLEMENTAL RESPONSE TO PLAINTIFFS' FIRST SET OF REQUESTS

FOR PRODUCTION OF DOCUMENTS, was emailed to plaintiffs' counsel of record.


*/s/ Robert Cultice*
Robert D. Cultice *(admitted pro hac vice)*
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000
Fax: (617) 526-5000
robert.cultice@wilmerhale.com