## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| NAPLETON'S ARLINGTON HEIGHTS MOTORS, INC. f/k/a NAPLETON'S PALATINE MOTORS, INC. d/b/a NAPLETON'S ARLINGTON HEIGHTS CHRYSLER DODGE JEEP RAM, an Illinois corporation; NAPLETON'S RIVER OAKS MOTORS, INC. d/b/a NAPLETON'S RIVER OAKS CHRYSLER DODGE JEEP RAM, an Illinois corporation; CLERMONT MOTORS, LLC d/b/a NAPLETON'S CLERMONT CHRYSLER DODGE JEEP RAM, an Illinois limited liability company; NAPLETON'S NORTH PALM AUTO PARK, INC. d/b/a NAPLETON'S NORTHLAKE CHRYSLER DODGE JEEP RAM, an Illinois corporation; NAPLETON ENTERPRISES, LLC d/b/a NAPLETON'S SOUTH ORLANDO CHRYSLER DODGE JEEP RAM, an Illinois limited liability company; NAPLETON'S MID RIVERS MOTORS, INC. d/b/a NAPLETON'S MID RIVERS CHRYSLER DODGE JEEP RAM, an Illinois corporation; NAPLETON'S ELLWOOD MOTORS, INC. d/b/a NAPLETON'S ELLWOOD CHRYSLER DODGE JEEP RAM, an Illinois corporation, <br><br> Plaintiffs, <br><br> v. <br><br> FCA US LLC, a Delaware corporation, <br><br> Defendant. | Case No. 1:16-cv-00403-VMK-SMF |

## JOINT STATUS REPORT

The Parties submit this Joint Status Report in advance of the status and motion hearing scheduled for February 23, 2017 pursuant to the Court's order (Dkt. 84).

I.      Plaintiffs' First Motion to Compel (Dkt. 71)

        A.      Plaintiffs' Report

        Plaintiffs moved to compel on five general issues.  The parties remain at an impasse with respect to these five issues.  With regard to the first four issues – (1) time period, (2) geographic scope, (3) government investigation documents, and (4) internal investigation documents, there has been no movement.  With regard to the fifth issue, Defendant supplemented its response to Second RFP No. 14 stating that it will search for the term "unnatural acts," but Defendant has not agreed to produce all documents responsive to this Request.  Defendant only agrees to produce documents with the search term "unnatural acts" if they are *also* responsive to Plaintiffs' First RFP No. 4, which requests documents and communications regarding false sales reporting.  Plaintiffs seek all documents reflecting or referring to the phrase "unnatural acts" for the reasons stated in Plaintiffs' motion to compel.

        B.      FCA's Report

        FCA agrees that the parties' positions remain unchanged as to the first four issues raised by Plaintiffs' First Motion to Compel.  FCA's positions with regard to the issues raised in Plaintiffs' First Motion to Compel are laid out in full in FCA's opposition to that motion.  Dkt. 74, Dkt. 91.

        As to the fifth issue raised in that motion, FCA disagrees that Plaintiffs are entitled to any document that hits on the search term "unnatural acts" without regard to whether such document is responsive or relevant to the issues raised in this litigation.  On February 16, 2017 FCA served its Second Supplemental Response to Plaintiffs' Second Set of Requests for Production, supplementing its response to Plaintiffs' Request No. 14 and agreeing to "search for documents and communications using the search term 'unnatural acts'" and to "produce relevant, non-privileged documents, if any, that are responsive to Request No. 4 of Plaintiffs' First Set of Requests for Production, subject to FCA's objections to Request No. 4."[1]  Thus, FCA has agreed to produce non-privileged documents concerning the alleged indicia of a plan to execute and/or conceal a false reporting scheme that hit on the search term "unnatural acts."  Plaintiffs' continued request for all documents using the term "unnatural acts" is not tethered to any issue in their Amended Complaint, and could force FCA to produce documents wholly unrelated to this litigation just because they include a particular undefined phrase.

II.     Plaintiffs' Second Motion to Compel (Dkt. 81)

        A.      Plaintiffs' Report

                1.      Plaintiffs' RFPs Regarding False Sales Reporting

---

[1] In response to Request No. 4 FCA has agreed to produce documents and communications concerning the alleged indicia of a plan to execute and/or conceal a false reporting scheme.

Plaintiffs moved to compel responses to First RFP Nos. 3, 4, 5, and 7 regarding false sales reporting. Defendant supplemented its responses to First RFP Nos. 4 and 7 and resolved the dispute on these requests. Plaintiffs maintain their motion to compel responses to First RFP Nos. 3 and 5. Pursuant to First RFP No. 3, Plaintiffs specifically seek documents reflecting the finite set of transactions, including NVDRS, that were subtracted from FCA's sales numbers under its new sales reporting methodology, as described in FCA's July 26, 2016 press release attached to Plaintiffs' Second Motion to Compel as Exhibit C.

2.    Plaintiffs' RFPs Using the Term "Competing Dealers" (First RFP Nos. 8, 11, 12; Second RFP Nos. 2, 4, 5, 13)

In compliance with the Court's order, Defendant provided Pump-In and Pump Out data reports for the years 2011-2016. After working with their expert to review and analyze this data, Plaintiffs proposed a more narrow definition of "Competing Dealers" to Defendant on February 21, 2017 as follows:

> Any dealer that sold ten (10) or more vehicles per calendar year to customers residing in the Trade Zone in which the following Plaintiff dealerships operate:
> 1) Napleton's Arlington Heights,
> 2) Napleton's River Oaks,
> 3) Napleton's Clermont,
> 4) Napleton's Northlake,
> 5) Napleton's South Orlando,
> 6) Napleton's Mid Rivers;
> _and_ any dealer that sold five (5) or more vehicles.per calendar year to customers residing in the Trade Zone in which Napleton's Ellwood City dealership operates. The relevant time period is January 1, 2011 to the present.

Counsel for FCA will confer with their client on the revised definition. For discovery requests that are limited in geographic scope to the Plaintiff Dealers and Competing Dealers, responses consistent with this definition will provide data for approximately 90% of vehicle sales into the Trade Zones of the seven Plaintiff dealerships. Plaintiffs' expert advises that this data will be adequate for Plaintiffs to show liability and damages. Defendant's prior position is that competing dealers or the "relevant territory" only includes dealers within the Plaintiff dealer's Sales Locality. Under Defendant's definition, responsive data would cover the following percentage of vehicle sales into the Trade Zones of the seven Plaintiff dealerships:

| Napleton's Dealership | % of sales into Plaintiff's Trade Zone covered by dealers in Plaintiff's Sales Locality |
|---|---|
| Ellwood City | 27.9% |
| Arlington Heights | 68.3% |
| Northlake | 78.8% |
| Clermont | 80.3% |
| South Orlando | 85.9% |

| River Oaks | 91.7% |
| Mid Rivers | 92.1% |

Plaintiffs' expert advises that this data will not be adequate for plaintiffs to carry their burden of proving liability under certain claims or maximizing damages under all claims.

### 3.    Plaintiffs' Other RFPs

Defendant supplemented its responses to First RFP Nos. 8 and 10, and there is no longer a dispute regarding these responses. The parties remain at an impasse with respect to Plaintiffs' First RFP Nos. 11 and 12, and Second RFP Nos. 15 and 16.

### B.    FCA's Report

FCA agrees that Plaintiffs' motion to compel with regard to RFPs 4, 7, 8, and 10 is now moot. On February 16, 2017 FCA served its Second Supplemental Response to Plaintiffs' First Set of Requests for Production. In the Second Supplemental Response FCA supplemented its responses to Plaintiffs' Request Nos. 7, 8, and 10. FCA also clarified the manner in which it defines the term "False Sales Reports" for purposes of Plaintiffs' discovery requests. FCA also believes that Plaintiffs' motion to compel with regard to RFP 3, which requests "[r]ecords of all false sales reports," is now moot as FCA has produced data sufficient to show the sales reported by FCA dealers in the Relevant Territory during the Relevant Time Period and will produce documents and communications concerning the alleged indicia of a plan to execute and/or conceal a false reporting scheme. FCA refers to its Opposition to Plaintiffs' Second Motion to Compel, filed herewith, for FCA's positions on the other issues raised by that motion. Dkt. 92.

With regard to the definition of "Competing Dealers," in response to this Court's order of February 3, 2017 (Dkt. 84), on February 6, 2017, FCA produced six years of pump-in and pump-out data for the seven Plaintiffs. Collecting, reviewing, and producing this data was no small task. Over two weeks after FCA produced this data, on the eve of the next status conference with this Court, Plaintiffs provided a further revised proposed definition of "Competing Dealers" mere hours before the filing of this Joint Status Report. Plaintiffs' new definition includes any dealer that has sold five or more vehicles per calendar year since January 1, 2011 into Plaintiff Ellwood's trade zone, and any dealer that has sold 10 or more vehicles per calendar year since January 1, 2011 into any of the other Plaintiffs' trade zones. While FCA is working to assess Plaintiffs' newest proposal, FCA believes based on its initial review that this proposal is still overbroad, including dealers that do not conceivably "compete" with any of the Plaintiffs.

## III.    FCA US LLC's Motion to Compel (Dkt. 79)

### A.    Plaintiffs' Report

As Plaintiffs have begun their rolling production of documents, Defendant withdraws its motion to compel production of documents. The parties remain at an impasse with regard to Defendant's Interrogatory No 5. With regard to Interrogatory No. 2, Plaintiff has confirmed its

position on the definition of "Competing Dealers", and Defendant is working with its client to respond to the revised definition. The parties remain at an impasse with regard to the "Conspiring Dealers" part of Interrogatory No. 2.

B.    FCA's Report

FCA agrees that the parties' positions remain unchanged with regard to Plaintiffs' responses to Interrogatories Two and Five and Plaintiffs' initial disclosures.  In its motion to compel, FCA seeks an order requiring that Plaintiffs (1) supplement their response to Interrogatory Two by identifying the "Conspiring" and Competing" dealers referenced in Plaintiffs' Amended Complaint, and (2) supplement their response to Interrogatory Five and their initial disclosures to provide the computation of damages required by the Federal Rules.  Plaintiffs served a supplement to their interrogatories on February 10, 2017, but that supplement failed to address the deficiencies raised in FCA's motion.  FCA also agrees that the portion of its motion calling for Plaintiffs to begin document production by February 9, 2017 is moot.

IV.    Custodians

A.    Plaintiffs' Report

In compliance with the Court's Order, the parties have exchanged lists of proposed custodians for searching the ESI of both parties.  The parties continue to meet and confer on the custodian lists, but have reached an impasse regarding certain issues.  Plaintiffs have requested that Defendant search the files of 24 custodians, and Defendant has only agreed to search the files of 14 of these custodians.  Based on review of documents already produced by Defendant, Plaintiffs foresee that they will need to add certain custodians to the list of FCA custodians. Plaintiffs will be prepared to discuss the significance of each of the listed custodians at the February 23, 2017 status hearing.  As a big picture matter, Plaintiffs maintain that documents related to FCA's sales reporting are key to the allegations in their Complaint.  Defendant argues that FCA's sales reporting is not relevant to the Complaint and refuses to produce documents related to FCA's sales reporting or to search the files of custodians with responsibility for FCA's sales reporting.  Plaintiffs respectfully request that the Court compel Defendant to produce documents concerning sales reporting and search the files of FCA employees with responsibility for sales reporting, including Reid Bigland.

B.    FCA's Report

Per the Court's order of February 3, 2017, the parties have met and conferred regarding custodians for both FCA and Plaintiffs.  As part of that process, FCA has agreed to search the ESI of 14 FCA employees.  These 14 FCA custodians include employees at many levels of FCA's organization, including the Head of Network Development; the Vice President of Sales and Fleet Operations; the Director of Sales Planning and Programs; the Senior Manager for Market Representation, Investments, and Diversity Dealer Development; the Senior Manager of Sales Operations for the Midwest Business Center; the Directors for each of the three Business Centers in which the Plaintiffs operate; and Area Sales Managers with responsibility for the Plaintiff dealerships.  While Plaintiffs suggest that they will seek to add additional custodians with

"responsibility for FCA's sales reporting," FCA has already agreed to search the ESI of the Vice President of Sales and Fleet Operations, which should be more than sufficient to identify any documents relating to retail sales reporting that are relevant to this case. Furthermore, Plaintiffs' suggestion that the Head of Alfa Romeo and Maserati, President and CEO of FCA Canada, and the Head of U.S. Sales, Reid Bigland, is an appropriate custodian for this civil action involving just 7 of FCA's over 2,400 dealers is without merit. There are no allegations concerning Mr. Bigland in the Plaintiffs' Amended Complaint, and any relevant communications involving Mr. Bigland, if any exist, would be captured by the ESI of the other high-ranking individuals FCA has agreed to include as ESI custodians for purposes of discovery in this litigation.

V.      Search Terms

      A.      Plaintiffs' Report

      Pursuant to the Court's Order, Defendant provided a list of proposed search strings. Plaintiffs reviewed and provided a set of revised search strings. Defendant is working to test these search strings, and the parties intend to meet and confer in good faith to agree on acceptable search strings.

      B.      FCA US LLC's Report

      FCA agrees with Plaintiffs' report as to the status of the parties' negotiations concerning search terms.

Dated: February 21, 2017

Respectfully submitted,

Respectfully submitted,

FCA US LLC

Napleton Plaintiffs

By: _/s/ Robert D. Cultice_____
Robert D Cultice
Felicia H. Ellsworth
Caitlin W. Monahan
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA 02109
 (617) 526-6000
robert.cultice@wilmerhale.com
felicia.ellsworth@wilmerhale.com
caitlin.monahan@wilmerhale.com
*PRO HAC VICE*

By: _/s/ Jeannie Evans_____
David C. Gustman
Jill C. Anderson
Jeffery M. Cross
Alexander Vesselinovitch
Dylan Smith
David J. Ogles
FREEBORN & PETERS LLP
311 S. Wacker Drive, Suite 3000
Chicago, IL  60606
(312) 360-6000
dgustman@freeborn.com
janderson@freeborn.com
jcross@freeborn.com
avesselinovitch@freeborn.com
dsmith@freeborn.com
dogles@freeborn.com

Randall L. Oyler
Owen H. Smith
Brandon C. Prosansky
Katherine A. Neville
BARACK FERRAZZANO KIRSCHBAUM & NAGELBERG LLP
200 W. Madison Street, Suite 3900
Chicago, IL  60606
(312) 984-3100
randall.oyler@bfkn.com
owen.smith@bfkn.com
brandon.prosansky@bfkn.com
katie.neville@bfkn.com

Steve W. Berman
Thomas E. Loeser
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 8th Avenue
Suite 3300
Seattle, WA 98101
(206) 623-7292
steve@hbsslaw.com
toml@hbsslaw.com

Jeannie Y. Evans
HAGENS BERMAN SOBOL SHAPIRO LLP
455 N. Cityfront Plaza Drive, Suite 2410
Chicago, Illinois 60611
Telephone: (708) 628-4949
Facsimile: (708) 628-4950
jeannie@hbsslaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that this **JOINT STATUS REPORT** filed through the CM/ECF system will be served upon counsel for Plaintiffs electronically through the CM/ECF system on February 21, 2017.

*/s/ Robert D. Cultice*
Robert D. Cultice *(admitted pro hac vice)*
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000
Fax: (617) 526-5000
robert.cultice@wilmerhale.com