UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NAPLETON'S ARLINGTON HEIGHTS MOTORS, INC. f/k/a NAPLETON'S PALATINE MOTORS, INC. d/b/a NAPLETON'S ARLINGTON HEIGHTS CHRYSLER DODGE JEEP RAM, an Illinois corporation; NAPLETON'S RIVER OAKS MOTORS, INC. d/b/a NAPLETON'S RIVER OAKS CHRYSLER DODGE JEEP RAM, an Illinois corporation; CLERMONT MOTORS, LLC d/b/a NAPLETON'S CLERMONT CHRYSLER DODGE JEEP RAM, an Illinois limited liability company; NAPLETON'S NORTH PALM AUTO PARK, INC. d/b/a NAPLETON'S NORTHLAKE CHRYSLER DODGE JEEP RAM, an Illinois corporation; NAPLETON ENTERPRISES, LLC d/b/a NAPLETON'S SOUTH ORLANDO CHRYSLER DODGE JEEP RAM, an Illinois limited liability company; NAPLETON'S MID RIVERS MOTORS, INC. d/b/a NAPLETON'S MID RIVERS CHRYSLER DODGE JEEP RAM, an Illinois corporation; NAPLETON'S ELLWOOD MOTORS, INC. d/b/a NAPLETON'S ELLWOOD CHRYSLER DODGE JEEP RAM, an Illinois corporation,<br><br>    Plaintiffs,<br><br>  v.<br><br>FCA US LLC, a Delaware corporation,<br><br>    Defendant. | Case No. 1:16-cv-00403-VMK-SMF |

**JOINT STATUS REPORT**

    The Parties submit this Joint Status Report in advance of the status hearing scheduled for March 28, 2017, and pursuant to the Court's February 27, 2017 order (Dkt. 96).

I.  Definition of "Competing Dealer" for Non-Data Requests

A.  Plaintiffs' Report

Plaintiffs propose the following modified definition of "Competing Dealer" for use in FCA's responses to the non-data requests in Plaintiffs' First and Second Requests for Production of Documents:

> All dealers located in each Plaintiff's Sales Locality for the period 1/1/2013 to 1/12/2016, plus the following nine additional dealers:
>
> 1. Ron Lewis
> 2. Beaver County
> 3. Kasing Auto Sales Inc
> 4. Posner Park
> 5. Thomas Dodge Chrysler Jeep of
> 6. Fields
> 7. Sherman DCJ
> 8. DuPage CDJ
> 9. Wallace CJD

In prior meet & confer discussions and hearings before this Court, FCA indicated that it was comfortable with a definition including all the dealers in each Plaintiff's Sales Locality plus a few additional dealers that sold a high volume of vehicles into a Plaintiff's Trade Zone. Plaintiffs have made a proposal in line with this discussion. Plaintiffs' proposal adds only an average of 1-2 additional "Competing Dealers" for each of the seven Plaintiff dealers. These are the dealers that sold the highest volume of vehicles into the Plaintiffs' Trade Zones. The table below indicates the number and percentage of vehicles these dealers sold into Plaintiffs' Trade Zones in 2015 (or in one case, 2013).

| Plaintiff Dealership | Additional "Competing Dealer" | Sales Locality of Competing Dealer | Sales into Plaintiff's TZ in 2015 | % of Total Sales into TZ in 2015 |
|---|---|---|---|---|
| Elwood | Ron Lewis | Pittsburgh, PA | 107 | 31.4% |
| Elwood | Beaver County | Beaver, PA | 58 | 17.0%% |
| Elwood | Kasing Auto Sales Inc | Ellwood City, PA (same Sales Locality) | 64 (in 2013) | 24.5% (in 2013) |
| South Orlando | Posner Park | Haines City, FL | 47 | 2.6% |
| River Oaks | Thomas Dodge Chrysler Jeep of | Gary, IN | 57 | 4.1% |
| Clermont | Posner Park | Haines City, FL | 53 | 3.8% |
| Arlington Heights | Fields | Chicago Central | 142 | 9.6% |

| Arlington Heights | Sherman DCJ | Chicago Central | 66 | 4.5% |
| Arlington Heights | DuPage CDJ | Chicago West | 45 | 3.1% |
| Northlake | Wallace CJD | Stuart, FL | 106 | 6.5% |

### B. FCA's Report

On March 22, 2017—the day that this Joint Status Report was due—Plaintiffs for the first time provided to FCA their proposed list of "Competing Dealers" for the purpose of ESI searching. (Notwithstanding this Court's February 27, 2017 order that the parties meet and confer on this definition, and FCA's earlier unheeded requests for this information on March 6 and again on March 13, the Plaintiffs have again waited until the last minute to provide important information to FCA). The parties conferred on March 16, 2017, but were unable to discuss "Competing Dealers" because Plaintiffs had failed to provide their proposal by the time of the meet and confer. Due to the Plaintiffs' failure to engage on this issue, counsel for FCA has not had any opportunity to present Plaintiffs' proposal to FCA or to be in a position to respond to it in this filing. This is an example of an unfortunate pattern on Plaintiffs' part that is unfairly interfering with discovery: they promise to provide necessary information and then wait until the last minute to provide anything, rendering FCA unable to substantively respond or the parties to otherwise meet and confer in a way that could help narrow the issues presented to this Court.

FCA's proposed definition of "Competing Dealer," which includes the FCA dealers within each Plaintiffs' Sales Locality during the period from January 1, 2013 through January 12, 2016, for a total of 34 dealers, is appropriate for the purposes of ESI searching. As explained in FCA's previous briefing (Dkt. 74 at 5-8), Sales Localities are the large geographic areas defined in the Plaintiffs' dealer agreements that are used to measure their sales performances and generally include other FCA dealers that tend to compete for retail sales to consumers who live within the Sales Locality.

FCA will review and consider Plaintiffs' new proposal as quickly as possible. However, at first glance the list appears to be overbroad. While FCA may be able to add the three dealers who allegedly compete with Plaintiff Ellwood City as there are not any non-Plaintiff dealers in Ellwood City's Sales Locality, there is no reason to add an assortment of other dealers with very small percentages of sales into a Plaintiff's Trade Zone. Additionally, FCA has previously informed Plaintiffs that Fields was in Plaintiff Arlington Height's Sales Locality at some point during the Relevant Time Period and is therefore incorporated into FCA's definition of Competing Dealer for the purposes of ESI searching. Finally, it is telling that Plaintiffs fail to include the allegedly Conspiring Dealer owned by Ed Napleton's brother, Napleton's Northwestern Chrysler Jeep Dodge, in their list of Competing Dealers even though they name this dealer in their Amended Complaint and previously represented to the Court that it is a "Competing Dealer."

Plaintiffs also indicated for the first time today (March 22) that they may seek to add custodians that they deem to be specifically related to each and every "Competing Dealer" on their list, which has the potential to further inflate the number of FCA's ESI custodians by a substantial

3

margin. As discussed below, FCA has agreed to search the ESI of 15 custodians most likely to possess relevant information and additional custodians would either be irrelevant or redundant. To the extent Plaintiffs continue to seek custodians related to each Competing Dealer, the list of Competing Dealers will need to be reduced significantly in order to maintain proportionality and avoid undue burden.

## II. ESI Custodians and Search Terms

### A. Plaintiffs' Report

Regarding search terms, the parties continue to meet and confer. Regarding ESI custodians, Plaintiffs request that FCA include the following eight custodians in addition to the 15 custodians they have already agreed to.

|   | Custodian Name | Title/Role | Justification |
|---|---|---|---|
| 1 | Reid Bigland | US Sales | Plaintiffs allege an FCA conspiracy to report false sales. Mr. Bigland is the senior FCA executive over US sales. |
| 2 | Kurt Mitzner | Director of Sales Reporting | Plaintiffs allege an FCA conspiracy to report false sales. Mr. Mitzner is the senior FCA executive over sales reporting. For this custodian, Plaintiffs request that the "Relevant Time Period" be extended from 1/12/2016 to 12/31/2016 because relevant documents regarding evaluation of and changes to FCA's sales reporting methodology occurred in 2016 after 1/12/2016. |
| 3 | Plaintiffs know the title and function but not the name. | Vice President/executive responsible for the corporate audit function, including any audits of FCA's sales reporting in the wake of this lawsuit and internal and government investigations into FCA's sales reporting. | Based on their fact investigation, Plaintiffs believe that this person conducted audits of FCA's sales reporting and has relevant information regarding false sales reporting. For this custodian, Plaintiffs request that the "Relevant Time |

4

| | | | Period" be extended from 1/12/2016 to 12/31/2016 because the relevant audit work took place during 2016 after 1/12/2016. |
|---|---|---|---|
| 4 | Jeff Eschenbach | California Business Center Director | Based on their fact investigation, Plaintiffs believe that this person participated in or is knowledgeable about FCA's false sales reporting scheme. |
| 5 | Steve Yandura | Denver Business Center Director | Based on their fact investigation, Plaintiffs believe that this person participated in or is knowledgeable about FCA's false sales reporting scheme. |
| 6 | Bill Potter | Sales Manager for Denver Business Center | Based on their fact investigation, Plaintiffs believe that this person participated in or is knowledgeable about FCA's false sales reporting scheme. |
| 7 | Chris Glen | Sales Operations Manager for Midwest Business Center | Based on their fact investigation, Plaintiffs believe that this person participated in or is knowledgeable about FCA's false sales reporting scheme. |
| 8 | Robert Weaver | Sales Operations Manager for Southeast Business Center | Based on their fact investigation, Plaintiffs believe that this person participated in or is knowledgeable about FCA's false sales reporting scheme. |

Plaintiffs reserve the right to identify additional custodians during the course of discovery.

    **B.    FCA's Report**

1. **Search Terms**

FCA proposed revisions to the search terms to be used in searching ESI of FCA custodians and Plaintiffs' custodians on March 6, 2017. The parties met and conferred regarding the revisions on March 16, 2017 and agreed in principle to certain types of modifications. Counsel for Plaintiffs promised to send additional proposed revisions to counsel for FCA. These revisions have not been provided as of the date of this report.

2. **Custodians**

FCA has agreed to search the ESI of 15 FCA employees with positions at varying levels of FCA's organization. Specifically, FCA has agreed to the following FCA employees as ESI custodians:

1. Alistair Gardner – Head of Network Development (FCA – North America), formerly Southeast Business Center Director
2. Jeff Kommor – VP of Sales and Fleet Operations, formerly Midwest Business Center Director
3. Bashar Cholagh – Senior Manager (Market Representation, Investments, and Diversity Dealer Development)
4. Matt Thompson – Director of Sales Planning and Programs
5. Phillip Scroggin – Midwest Business Center Director
6. Carlos Jimenez – Southeast Business Center Director; formerly Mid Atlantic Business Center Director
7. James Kinsey – Mid Atlantic Business Center Director
8. David Englen – Southeast Business Center Director
9. Tim Duncan – Senior Manager of Sales Operations (Midwest Business Center); formerly Market Representation Manager
10. Ralph Jones – Area Sales Manager (Midwest Business Center)
11. Robert Lewis – Area Sales Manager (Mid Atlantic Business Center)
12. Matt Williams – Area Sales Manager (Southeast Business Center)
13. Jovon Burkes – Area Sales Manager (Midwest Business Center)
14. Dave Stuart – Area Sales Manager (Midwest Business Center)
15. Ryan Smith – Area Sales Manager (Southeast Business Center)

This list of custodians includes executives holding responsibility for vehicle sales, high-level managerial employees with responsibility for market representation, dealer network, and sales incentives; as well as individuals operating in the field who are responsible for day-to-day communications with dealers. These 15 custodians should be more than sufficient to identify information relevant to the claims and defenses raised by the parties in this litigation. The list includes six current and former Business Center Directors with responsibility for the three multi-state Business Centers in which Plaintiffs are located. The list also includes six Area Sales Managers with responsibility for and contact with the Plaintiffs and other FCA dealers at the local level. A number of these custodians have been added at Plaintiffs' request.

The Plaintiffs, however, have proposed a list of 8 additional custodians, for a total of 23, that includes some of the highest level officers of the company. Once again, Plaintiffs' proposal was provided to counsel for FCA for the first time on March 22, 2017, the date of this filing, despite FCA's repeated requests for this information, and differs materially from any previous proposed custodians the parties have discussed. FCA maintains that the 15 custodians it has agreed to is more than sufficient, and Plaintiffs' efforts to include high-ranking FCA officials as ESI custodians, without any basis for suggesting these individuals are likely to possess non-duplicative relevant information, is an improper fishing expedition.

Plaintiffs now seek to add a host of irrelevant custodians in yet another effort to obtain national discovery for a case brought by seven dealers in just four states—including three proposed custodians from the California and Denver Business Centers, where no Plaintiff operates. They do this despite the Court's denial of Plaintiffs' motion to compel nationwide discovery. Dkt. 96. Plaintiffs also seek to add mid-level Sales Operations Managers for the Midwest and Southeast Business Centers who would be redundant custodians in light of FCA's agreement to search the ESI of Business Center Directors and Area Sales Managers.

Plaintiffs' suggestion that the Head of Alfa Romeo and Maserati, President and CEO of FCA Canada, and the Head of U.S. Sales, Reid Bigland, is an appropriate custodian for this civil action involving just 7 of FCA's over 2,400 dealers is without merit. There are no allegations concerning Mr. Bigland in the Plaintiffs' Amended Complaint and this request violates the apex doctrine, which shields high-level corporate executives from harassing and disruptive discovery requests when such individuals do not have unique personal knowledge of the matter in dispute or the information sought from the executive can be obtained from another witness. *Murillo v. Kohl's Corp.*, No. 16-CV-196-JPS, 2016 WL 6090862, at *2 (E.D. Wis. Oct. 18, 2016).

Finally, Plaintiffs request for a "Vice President/executive responsible for the corporate audit function, including any audits of FCA's sales reporting in the wake of this lawsuit and internal and government investigations into FCA's sales reporting" is yet another inappropriate attempt to obtain privileged information and information concerning government investigations. Plaintiffs make this request despite the fact that (1) FCA has agreed to search across documents reviewed when FCA carried out an investigation of the facts as stated in FCA's January 14, 2016 press release and produce relevant documents and (2) the Court has ordered FCA to review and produce relevant documents produced to the government.

For these reasons, FCA requests that this Court deny Plaintiffs request to add additional FCA custodians.

### III. Decisions on the Issue of Waiver

#### A. Plaintiffs' Cases

The Court invited the parties to each cite no more than seven decisions on the issue of waiver with respect to Defendants' work product claims as to any internal investigations and any press releases related therto. Plaintiffs cite the following:

1. *Kingdom Auth. v. City of Rockford*, 09 C 50240, 2011 WL 245585, at *2 (N.D. Ill. Jan. 26, 2011) ("An investigation may have the dual purpose of determining the cause of an incident and potential internal remedies, while at the same time preparing to defend subsequent lawsuits . . . Where documents would have been prepared in the same way even if no lawsuit was ever filed, they are not covered by the work product doctrine.")

2. *E.I. Dupont de Nemours and Co. v. Kolon Industries, Inc.*, 269 F.R.D. 600, 605 (E.D. Va. 2010) ("[P]ublic disclosure of information, particularly when the disclosing party voluntarily broadcasts the information in media channels, is quite different; it destroys any expectation of privacy for the disclosed information.")

3. *In re Intel Corp. Microprocessor Antitrust Litig.*, 05-1717-JJF, 2008 WL 11233766, at *9–11 (D. Del. Mar. 6, 2008) (work product waiver where corporation published conclusions of internal report to control media perceptions of litigation against competitor); *report and recommendation adopted sub nom. In re: Intel Corp. Microprocessor Antitrust Litig.*, 05-1717-JJF, 2008 WL 11231447 (D. Del. Mar. 20, 2008)

4. *In re Royal Ahold N.V. Securities & ERISA Litig.*, 230 F.R.D. 433, 436–38 (D. Md. 2005) ("[T]o the extent that Royal Ahold offensively has disclosed information pertaining to its internal investigation in order to improve its position with investors, financial institutions, and the regulatory agencies, it also implicitly has waived its right to assert work product privilege as to the underlying memoranda supporting its disclosures.").

5. *Kintera, Inc. v. Convio, Inc.*, 219 F.R.D. 503, 512 (S.D. Cal. 2003) (parties "should not be allowed to shield their work product from discovery but at the same time use it as a 'sword' by touting the essence of the work product on their website," finding waiver to work product protection of matters discussed on website)

6. *Electro Sci. Industries, Inc. v. Gen. Scanning, Inc.*, 175 F.R.D. 539, 543 (N.D. Cal. 1997) ("[A] sophisticated party who intentionally discloses the most significant part of an otherwise privileged communication, in an act calculated to advance that party's commercial interests, cannot establish, as the law would require, that the party reasonably believed that it would be able to preserve the confidentiality of the other parts of that communication," noting the "most significant part" was the attorney's ultimate conclusions).

### B. FCA's Cases

There is not a pending motion concerning the question of whether FCA waived work product claims as to any internal investigations and any press releases related thereto. However, pursuant to the Court's order that each side cite no more than 7 decisions concerning the question of waiver, FCA provides the following cases for the Court's consideration.

1. *In re Vecco Instruments, Inc. Sec. Litig.*, No. 05 MD 1695(CM)(GAY), 2007 WL 210110, at *2 (S.D.N.Y. Jan. 25, 2007) (finding no waiver of work product protection

based on press release that "summarized the findings and conclusions" of an internal investigation but "did not quote, paraphrase or reference any of the specific documents at issue in support of its conclusions").

2. *In re Dayco Corp. Derivative Sec. Litig.*, 99 F.R.D. 616, 619 (S.D. Ohio 1983) (finding no waiver of attorney-client privilege or work product based on press release that summarized the "findings" and "conclusions" of internal investigation but not the facts or evidence that led to those conclusions).

3. *Hartford Fire Ins. Co. v. Pure Air on the Lake Ltd. P'ship*, 154 F.R.D. 202, 210-12 (N.D. Ind. 1993) (finding no work product waiver over consulting expert report or supporting documents based on one-page press release that summarized the report but did not include the expert's "studies, factual findings or conclusions," and noting that "none of the cases cited by Plaintiffs suggest that after some limited voluntary disclosure has occurred (for instance, in a press release) that all of the underlying documents relied upon must then be produced").

4. *In re VisionAmerica, Inc. Sec. Litig.*, No. 02-MC-033 D/V, 2002 WL 31870559, at *3-4 (W.D. Tenn. Dec. 18, 2002) (finding no waiver of privilege over investigation when documents referencing the investigation were disclosed to opposing party because "the acknowledgment that an attorney has examined a matter or a release of the findings of a special report does not result in waiver of the privilege").

5. *Rauh v. Coyne*, 744 F. Supp. 1181, 1185 (D.D.C. 1990) (finding no waiver of attorney-client privilege and work product protection over investigation "merely because defendants disclosed counsel's conclusion that the investigation could not determine the truth of [plaintiff's] allegations").

6. *Hill v. City of Chicago*, No. 06 C 6772, 2011 WL 320204, at *3 (N.D. Ill. Jan. 31, 2011) (finding no waiver of law enforcement investigatory privilege based on reference to investigation in public court filing because the filing did not "voluntarily disclose the materials to which [the defendant] is asserting the privilege" but merely disclosed "the fact that there is an ongoing investigation").

7. *E.I. Dupont de Nemours & Co. v. Kolon Indus., Inc.*, 269 F.R.D. 600, 606-08 (E.D. Va. 2010) (finding limited waiver of work product protection for factual basis of statement in press release that the FBI had concluded that several of the defendant's employees had travelled "expressly for the purpose of obtaining confidential [Plaintiff] process technology," but no waiver with respect to attorney opinion work product or other documents related to broader investigation).

Dated: March 22, 2017

| Respectfully submitted, | Respectfully submitted, |
|---|---|
| FCA US LLC | Napleton Plaintiffs |

By: */s/ Robert Cultice*  
Robert D Cultice  
Felicia H. Ellsworth  
Caitlin W. Monahan  
WILMER CUTLER PICKERING HALE AND DORR LLP  
60 State Street  
Boston, MA 02109  
 (617) 526-6000  
robert.cultice@wilmerhale.com  
felicia.ellsworth@wilmerhale.com  
caitlin.monahan@wilmerhale.com  
*PRO HAC VICE*

By: */s/ Jeannie Evans*  
David C. Gustman  
Jill C. Anderson  
Jeffery M. Cross  
Alexander Vesselinovitch  
Dylan Smith  
David J. Ogles  
FREEBORN & PETERS LLP  
311 S. Wacker Drive, Suite 3000  
Chicago, IL  60606  
(312) 360-6000  
dgustman@freeborn.com  
janderson@freeborn.com  
jcross@freeborn.com  
avesselinovitch@freeborn.com  
dsmith@freeborn.com  
dogles@freeborn.com

Randall L. Oyler  
Owen H. Smith  
Brandon C. Prosansky  
Katherine A. Neville  
BARACK FERRAZZANO KIRSCHBAUM & NAGELBERG LLP  
200 W. Madison Street, Suite 3900  
Chicago, IL  60606  
(312) 984-3100  
randall.oyler@bfkn.com  
owen.smith@bfkn.com  
brandon.prosansky@bfkn.com  
katie.neville@bfkn.com

Steve W. Berman  
Thomas E. Loeser  
HAGENS BERMAN SOBOL SHAPIRO LLP  
1918 8th Avenue  
Suite 3300  
Seattle, WA 98101  
(206) 623-7292  
steve@hbsslaw.com  
toml@hbsslaw.com

Jeannie Y. Evans  
HAGENS BERMAN SOBOL SHAPIRO LLP  
455 N. Cityfront Plaza Drive, Suite 2410  
Chicago, Illinois 60611  
Telephone: (708) 628-4949  
Facsimile: (708) 628-4950  
jeannie@hbsslaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that this **JOINT STATUS REPORT** filed through the CM/ECF system will be served upon counsel for Plaintiffs electronically through the CM/ECF system on March 22, 2017.

/s/ Robert Cultice
Robert D. Cultice *(admitted pro hac vice)*
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000
Fax: (617) 526-5000
robert.cultice@wilmerhale.com