**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| NAPLETON'S ARLINGTON HEIGHTS MOTORS, INC., et al., | |
| Plaintiffs, | No. 1:16-cv-00403-VMK-SMF |
| v. | Hon. Sheila Finnegan |
| FCA US LLC, a Delaware corporation, | |
| Defendant. | |

**JOINT STATUS REPORT**

The parties submit this Joint Status Report in advance of the status hearing scheduled for

May 24, 2017.

**I.      SCHEDULE FOR DOCUMENT PRODUCTIONS AND JOINT STATUS**
**REPORTS**

**A.      Plaintiffs' Report**

Since the last status hearing on April 14, 2017, Plaintiffs have made the following

productions of documents:

| Date | Plaintiffs' Production | Materials Produced |
|---|---|---|
| 4/15/2017 | 4th production | • Sales journals, 2011-2016<br>• Inventory logs, 2011-2016 |
| 4/27/2017 | 5th production | • CRM (Customer Relationship Manager) database materials, 2011 – 2014 (same materials for 2015-2016 produced previously) |
| 5/12/2017 | 6th production | • FCA format financial statements, 2011-2016 |

Plaintiffs have further made progress working with a third party vendor, and have determined that Plaintiffs will be able to produce certain sales price information in a spreadsheet format as requested by Defendant. Plaintiffs continue to work on this conversion process.

The parties have agreed to continue with rolling productions, making a production at least every three weeks beginning three weeks from the date of this report.

Following the Court's order clarifying the set of Competing Dealers for purposes of ESI searches, the parties negotiated and agreed to ESI search strings that bring within the ambit of their searches documents relating to such Competing Dealers. As part of this effort, the parties collaborated on researching relevant personnel and email extensions for these dealers. FCA has also requested an additional search term to be run across certain Plaintiff custodians, and Plaintiffs are investigating the volume of the requested search string and whether any limitation or compromise is appropriate or possible.

The parties jointly decided to file this status report and then continue to file joint status reports every six weeks, beginning with six weeks from the date of this report.

The parties disagree on a deadline for completion of document production by Plaintiffs and Defendant. Plaintiffs propose that the parties complete their production of documents responsive to the opposing parties' requests for production by Friday, July 14, 2017. Defendants does not agree and refuses to propose an alternative deadline. On 10/13/2016, Judge Kendall ordered that fact discovery would close on May 5, 2017 (Doc. 63). Due to various complications and delays, the parties jointly requested a six-month extension of all pre-trial deadlines, which Judge Kendall granted on 3/31/2017, noting that "further extensions will be unlikely." (Doc. 103). Plaintiffs expect the new November 3, 2017 fact discovery cut-off to be a hard deadline. Plaintiffs anticipate a large number of depositions in this case. To allow adequate time to review

the large volume of documents Plaintiffs anticipate receiving from FCA, and time to prepare for and take the depositions, Plaintiffs request that FCA complete its document production by July 14, 2017.  Plaintiffs respectfully request that the Court impose this document production deadline on both parties.  Plaintiffs will more fully brief this issue in a motion to compel to be filed in advance of the May 24, 2017 status hearing.

The parties further disagree on deadlines for production of specific categories of documents by FCA.  Defendant has not timely produced documents in response to Plaintiffs' requests for production of documents, many of which have been outstanding for over a year.[1] Defendant has not produced any additional documents since the 4/14/2017 status hearing, and Defendant refuses to propose or agree to any deadlines for production of various categories of documents.  Moreover, Defendant continues to object to producing documents concerning FCA's sales reporting to the public, investors, and creditors.  This is unacceptable to Plaintiffs who are not able to prosecute their case without certain materials in the possession of FCA. Therefore, in advance of the 5/24/2017 status hearing, Plaintiffs will file a motion to compel production of responsive documents within a reasonable time frame.

**B.      FCA's Report**

To date, FCA has produced nearly 6,000 pages of documents and voluminous data reports, including:

-    NVDR data from 75 dealers from 2011-2016;

-    Allocation data from 75 dealers from 2011-2016;

-    MSR data for Plaintiffs from 2011-2016;

---

[1] Plaintiffs served their First Set of Requests for Production Directed at Defendants on March 25, 2016, and their Second Set of Requests on October 24, 2016.

- Pump-in and pump-out data for all of Plaintiffs' trade zones from 2011-2016;

- Allocation methodology;

- MSR and fair share methodology;

- Descriptions of Plaintiffs' sales localities and fair share obligations;

- Dealer and incentive manuals;

- FCA vehicle segmentation lists; and

- VGP methodology and program rules from January 2013 through January 2016.

In FCA's most recent production, on May 19, 2017, FCA began the first of its rolling ESI productions from the universes of documents agreed upon by the parties and ordered by the Court, including those identified using custodians and search terms, the documents produced by FCA to the government in connection with certain ongoing investigations, and documents identified during certain internal investigations conducted by FCA. Per the parties' agreement, FCA will continue to make rolling productions at least every three weeks.

Accordingly, FCA disagrees that it has "not timely produced documents in response to Plaintiffs' requests for production of documents[.]" FCA is diligently working to review and produce responsive, non-privileged documents. Because FCA is reviewing hundreds of thousands of documents from dozens of custodians, Plaintiffs' proposed deadline of July 14, 2017 for the completion of all document production, less than two months from now, is neither feasible nor realistic. As FCA has just commenced its ESI review and production and Plaintiffs have not even made an initial ESI production, FCA believes it would be premature to impose an arbitrary deadline for the completion of document production before the parties have had the

opportunity to gauge the speed of their respective ESI reviews.[2]  Furthermore, in an effort to expedite the progress of discovery, FCA has informed Plaintiffs that it is willing to review documents from the parties' custodians before other categories, and to meet and confer regarding additional categories of documents Plaintiffs would like to prioritize.[3]

Plaintiffs misleadingly suggest that they have been awaiting FCA's responses to their discovery requests for over a year, neglecting to mention that discovery in this case was stayed by Judge Kendall until the partial dismissal of Plaintiffs' claims in October 2016.  Dkt. Nos. 57, 62.  Notably, Plaintiffs have not yet made their first ESI production, despite their agreement at the last conference to "immediately begin their ESI searches . . . and promptly begin producing their responsive ESI on a rolling basis."  Dkt. No. 114 at 15.  Furthermore, FCA continues to seek financial data needed to assess Plaintiffs' alleged damages, if any exist.  Plaintiffs have indicated in multiple discovery responses, beginning as early as November 2016, that responsive documents exist in a third-party financial database.  In the intervening months, Plaintiffs have continually represented that they are working to make a production from the database.  While FCA appreciates Plaintiffs' representation that they are working in good faith to make such a production, these requests have been outstanding for months, during which time FCA has repeatedly made voluminous data productions from multiple databases.

---

[2] FCA has informed Plaintiffs of its view, which Plaintiffs mischaracterize as a "refus[al] to propose an alternative deadline."

[3] While Plaintiffs suggest that document production should be completed in time to prepare for what they anticipate will be the "large number of depositions in this case," FCA notes the presumptive limit of 10 depositions set forth in the Rules.  Fed. R. Civ. P. 30(2)(A)(i).

## II.     POTENTIAL FCA CUSTODIAN – ROBERT WEAVER

### A.     Plaintiffs' Report

Plaintiffs respectfully ask the Court to clarify whether it intended to include "Robert Weaver" among potential additions to FCA's custodian list.  Plaintiffs appreciate that FCA agreed to include Reid Bigland, Kurt Mitzner, and Chris Glenn as ESI custodians, as stated in FCA's 5/12/2017 status report (Doc. 116).  And Plaintiffs ask the Court to clarify whether Robert Weaver should be added to this list. The Court's 4/26/2017 Order stated:

> The Court is persuaded of the potential probative value of information in the possession of **Reid Bigland** (Head of U.S. Sales), **Kurt Mitzner** (Director of Sales Reporting), **Chris Glen** (Sales and Operations Manager for Midwest Business Center), and **Robert Weaver** (Sales Operations Manager for the Southeast Business Center).  The Court has insufficient information, however, to resolve FCA's objection that ESI from these individuals would be duplicative of ESI from other custodians it has already agreed to search, or determine whether any such duplication is warranted in view of the burden to FCA of searching these additional custodians.  FCA is therefore preliminarily directed to run the agreed search terms/strings for Messrs. **Bigland, Mitzner, and Glen** for the purpose of determining the number of "hits" and reporting this to Plaintiffs and the Court in a status report to be filed by 5/12/2017. (Doc. 114, paragraph 3(a))

The first sentence of this paragraph states that the Court is persuaded of the probative value of information in the possession of:

1.     Reid Bigland,
2.     Kurt Mitzner,
3.     Chris Glenn, and
4.     **Robert Weaver.**

Yet, the last sentence of the paragraph directs FCA to run the agreed search strings only for:

1.     Reid Bigland,
2.     Kurt Mitzner, and
3.     Chris Glenn.

Plaintiffs query whether the Court intended to include Robert Weaver among the names in the last sentence.

After receiving FCA's 5/12/2017 Status Report (Doc. 116), Plaintiffs' counsel asked Defendant's counsel whether they ran the search strings across the ESI for Robert Weaver and made any determination whether to add Robert Weaver as an additional ESI custodian. FCA responded that FCA believes the issue "should be tabled until further document production from FCA." Plaintiffs, however, believe it makes sense to be clear on the current list of custodians, so that searches can be run across the documents of all agreed or court-ordered custodians at the outset, and Defendants can produce responsive documents without further delay.

In the 04/10/2017 Supplemental Joint Status Report (Doc. 109), Plaintiffs requested the addition of, among others, five FCA custodians who work at FCA's business centers and directly interact with the Plaintiff dealers and other FCA dealers who likely participated in the false sales reporting scheme. Based on Plaintiffs' fact investigation, Plaintiffs believe that Jeff Eschenbach, Steve Yandura, Bill Potter, Chris Glen, and Robert Weaver—all FCA employees at the business center level—participated in or are knowledgeable about FCA's false sales reporting scheme. Plaintiffs have alleged that, to the extent FCA solicited its dealers to submit false sales reports, it did so through its employees at the business center level, who interact with the FCA dealership employees. Plaintiffs have alleged that such solicitations typically came from Business Center Directors, Sales Managers, Sales Operations Managers, and Area Sales Managers—all of whom operate out of FCA's business centers rather than FCA's corporate headquarters. Thus, it is Plaintiffs' position that key documents and testimony necessary to prove their case will come from FCA employees with these titles at FCA's business centers. Of Plaintiffs' five additional proposed FCA custodians at this level, the Court chose not to compel inclusion of Jeff Eschenbach, Steve Yandura, or Bill Potter because their business centers are outside of Plaintiffs' geographic localities. But the Court stated that it "is persuaded of the potential

probative value of information in the possession of" Chris Glen and Robert Weaver.  Plaintiffs

believe documents in the possession of Robert Weaver may be key to their case and ask the

Court to direct Defendant to run the agreed search terms across Mr. Weaver's documents for the

purpose of determining the number of "hits" and reporting this to Plaintiffs and the Court.

**B.**     **FCA's Report**

To avoid repeatedly burdening the Court with disputes over ESI custodians, FCA agreed

to include three additional custodians requested by Plaintiffs that the Court had indicated may

have probative information: Reid Bigland, Kurt Mitzner, and Chris Glenn (Dkt. No. 116).  FCA

has now agreed to search for, collect, review, and, to the extent responsive and non-privileged,

produce documents from18 ESI custodians.  (In contrast, Plaintiffs have only 14 ESI custodians).

As with Plaintiffs' request for an arbitrary date for completion of document production, FCA

believes Plaintiffs' demand to add yet another ESI custodian to FCA's review burden is

premature.  FCA has just made its initial ESI production and Plaintiffs have yet to make a single

ESI production.  Until the parties make further progress in producing and reviewing documents

from the agreed-upon custodians, the parties are unable to assess the purported need for any

other proposed custodians.  After Plaintiffs review the produced documents, they can then make

an informed determination as to whether they still believe the inclusion of Robert Weaver is

necessary, and if so, on what grounds.  Plaintiffs' continued requests to add more custodians in a

vacuum, before receiving any documents to suggest that any one particular custodian is "key to

their case" would only serve to increase the already substantial review burden borne by FCA in

this litigation, without regard to the marginal value that including additional custodians would

bring.

Dated: May 19, 2017

Respectfully submitted,

FCA US LLC

By: /s/ Robert Cultice
*Of Counsel*:
Robert D. Cultice *(admitted pro hac vice)*
Felicia H. Ellsworth *(admitted pro hac vice)*
Caitlin W. Monahan *(admitted pro hac vice)*
Michael J. Horrell *(admitted pro hac vice)*
WILMER CUTLER PICKERING HALE AND DORR
LLP
60 State Street
Boston, MA 02109
(617) 526-6000
robert.cultice@wilmerhale.com
felicia.ellsworth@wilmerhale.com
caitlin.monahan@wilmerhale.com
michael.horrell@wilmerhale.com

Randall L. Oyler
Owen H. Smith
Brandon C. Prosansky
Katherine A. Neville
BARACK FERRAZZANO KIRSCHBAUM &
NAGELBERG LLP
200 West Madison Street
Suite 3900
Chicago, IL 60606
(318) 984-3100
randall.oyler@bfkn.com
owen.smith@bfkn.com
brandon.prosansky@bfkn.com
katie.neville@bfkn.com

THE NAPLETON PLAINTIFFS

By: /s/ Jeannie Evans
Jeannie Y. Evans
HAGENS BERMAN SOBOL SHAPIRO LLP
455 N. Cityfront Plaza Drive, Suite 2410
Chicago, Illinois 60611
Telephone: (708) 628-4949
Facsimile: (708) 628-4950
jeannie@hbsslaw.com

Steve W. Berman
Thomas E. Loeser
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 8th Avenue
Suite 3300
Seattle, WA 98101
(206) 623-7292
steve@hbsslaw.com
toml@hbsslaw.com

David C. Gustman
Jeffery M. Cross
Alexander Vesselinovitch
Dylan Smith
David J. Ogles
Freeborn & Peters LLP
311 S. Wacker Drive, Suite 3000
Chicago, IL 60606
(312) 360-6000
dgustman@freeborn.com
jcross@freeborn.com
avesselinovitch@freeborn.com
dsmith@freeborn.com
dogles@freeborn.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document, Joint Status Report, filed through the CM/ECF system will be served upon counsel for Defendant electronically through the CM/ECF system on May 19, 2017.


      /s/ Jeannie Y. Evans

Jeannie Y. Evans
HAGENS BERMAN SOBOL SHAPIRO LLP
455 N. Cityfront Plaza Drive, Suite 2410
Chicago, Illinois 60611
Telephone: (708) 628-4949
Facsimile: (708) 628-4950
jeannie@hbsslaw.com