**Exhibit A**

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |
|---|---|
| NAPLETON'S ARLINGTON HEIGHTS MOTORS, INC. f/k/a NAPLETON'S PALATINE MOTORS, INC. d/b/a NAPLETON'S ARLINGTON HEIGHTS CHRYSLER DODGE JEEP RAM, an Illinois corporation; NAPLETON'S RIVER OAKS MOTORS, INC. d/b/a NAPLETON'S RIVER OAKS CHRYSLER DODGE JEEP RAM, an Illinois corporation; CLERMONT MOTORS, LLC d/b/a NAPLETON'S CLERMONT CHRYSLER DODGE JEEP RAM, an Illinois limited liability company; NAPLETON'S NORTH PALM AUTO PARK, INC. d/b/a NAPLETON'S NORTHLAKE CHRYSLER DODGE JEEP RAM, an Illinois corporation; NAPLETON ENTERPRISES, LLC d/b/a NAPLETON'S SOUTH ORLANDO CHRYSLER DODGE JEEP RAM, an Illinois limited liability company; NAPLETON'S MID RIVERS MOTORS, INC. d/b/a NAPLETON'S MID RIVERS CHRYSLER DODGE JEEP RAM, an Illinois corporation; NAPLETON'S ELLWOOD MOTORS, INC. d/b/a NAPLETON'S ELLWOOD CHRYSLER DODGE JEEP RAM, an Illinois corporation, | Case No. 1:16-cv-00403-VMK-SMF |
| Plaintiffs, |  |
| v. |  |
| FCA US LLC, a Delaware corporation, |  |
| Defendant. |  |

1

## FCA US LLC'S RESPONSE TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

Defendant FCA US LLC ("FCA") hereby serves its Response to Plaintiffs' First Set of Requests for Production of Documents ("Response") pursuant to Federal Rules of Civil Procedure 26(b) and 34(b)(2).

## GENERAL OBJECTIONS

1. FCA will produce responsive non-privileged documents in its possession, custody, or control that are relevant to any party's claim or defense and proportional to the needs of the case, in accordance with its obligations under Fed. R. Civ. P. 26 and 34. FCA's production will be subject to a protective order, an ESI protocol that is agreed to by the parties and/or entered by the Court ("ESI protocol"), and its general and specific objections set forth below. FCA does not admit the existence of any responsive documents, or the relevance or admissibility of any documents, by responding to Plaintiffs' requests.

2. FCA objects to the "Standard Delivery Specifications" in Exhibit A attached to Plaintiffs' First Set of Requests for Production of Documents ("Plaintiffs' First Request"). FCA, however, will deliver documents in accordance with the ESI protocol.

3. FCA will produce relevant non-privileged documents in response to Plaintiffs' requests on a rolling basis and within a reasonable time period, and otherwise objects to producing all requested documents within thirty days, as requested by Plaintiffs.

4. FCA objects to each request insofar as the Plaintiffs seek documents or other information that are subject to a legal privilege, including, without limitation, the attorney-client privilege and the work product doctrine.

2

5.  FCA objects to each request that seeks confidential and/or proprietary trade secrets or other research, development, or commercial information that is confidential, proprietary, and/or competitively sensitive, including without limitation, information about or provided by non-party FCA dealers. *See* Fed. R. Civ. P. 26(c). To the extent FCA may be prohibited from disclosing information of non-party FCA dealers by the terms of dealer agreements with other FCA dealers, and/or law, including state dealer act provisions, FCA objects to the production of such information except as provided by such contracts and/or laws. *See* Fla. Stat. Ann. § 320.64(28); 63 Pa. Stat. Ann. § 818.12(b)(16).

6.  FCA objects to each request on the ground that the requests are so overly broad in time and geography as to seek information that is not relevant to any party's claim or defense, nor proportional to the needs of the case. The use of undefined, or inappropriately defined, geographic areas also imposes an undue burden and expense on FCA in searching for and producing documents in response to Plaintiffs' First Request. Unless otherwise specified, FCA will limit its responses to these Requests to the geographic area that includes the Sales Locality in which each Plaintiff is located (the "Relevant Territory").

## **OBJECTIONS TO DEFINITIONS**

1.  FCA objects to the definition of "Defendants" and "You" in Definition 2 insofar as it seeks to impose additional obligations on FCA beyond those imposed by the Federal Rules of Civil Procedure by including FCA's predecessors and successors in the definition. FCA also objects to the definition of "Defendants" and "You" as it includes FCA Realty, LLC, which is no longer a party to this litigation.

2.  FCA objects to the definition of "Sales Zone" in Definition 4 insofar as the term "geographic zones" is vague and ambiguous, and is not a term in use by FCA.

3

3. FCA objects to the definition of "Competing Dealers" in Definition 5 insofar as the terms "Sales Zone" and "within an area encompassing those zip codes in which 95% of residents located in those zip codes stay to purchase new vehicles from dealers in those zip codes" are so vague and ambiguous that FCA is unable to understand the territory that the Plaintiffs are attempting to describe. Furthermore, FCA objects to the definition of "Competing Dealers" insofar as it incorporates a time period of "January 1, 2012 through the present," which is overly broad given Plaintiffs' allegations and therefore seeks documents that are not relevant to the claims or defenses of any party, nor proportional to the needs of the case.

4. FCA objects to the definition of "Sales Report" and "Reports" in Definition 6 insofar as the incorporated term "You" is otherwise objectionable as explained above. FCA also objects on the ground that Plaintiffs define the term "Reports" two different ways in Definitions 6 and 7.

5. FCA objects to the definition of "False Sales Report" and "Reports" in Definition 7 insofar as the incorporated term "You" is otherwise objectionable as explained above and the term "bona fide" is so vague and ambiguous that FCA is unable to determine the type of sales report that Plaintiffs are attempting to describe. FCA also objects on the ground that Plaintiffs define the term "Reports" two different ways in Definitions 6 and 7.

6. FCA objects to the definition of "unwind" and "unwound" in Definition 8 insofar as the terms "void," "reverse," "undo," "reflect," and "not completed" are so vague and ambiguous that FCA is unable to determine the type of sales information Plaintiffs are attempting to describe.

7. FCA objects to the definition of "Document" in Definition 9 insofar as it seeks to impose additional obligations on FCA beyond those imposed by the Federal Rules of Civil Procedure including that it is not limited to documents in FCA's possession, custody, or control and has

4

the potential to include electronically stored information from sources that are not reasonably accessible because of undue burden or cost.

## OBJECTIONS TO INSTRUCTIONS

1. FCA will produce relevant non-privileged documents between the dates of January 1, 2014 and January 12, 2016 (the "Relevant Time Period"), unless otherwise indicated, pursuant to a protective order approved by the Court and the ESI protocol. FCA otherwise objects to the substantially longer time period used by the Plaintiffs in Instruction 1 on the ground that Plaintiffs' claim that the alleged schemes "[began] no later than early 2015" and therefore their request seeks information that is not relevant to the claims or defenses of any party, nor proportional to the needs of the case, and is therefore beyond the scope of permissible discovery. FCA also objects on the ground that requests covering such a period would impose undue burden and expense on FCA in searching for and producing such information.

2. FCA will produce relevant non-privileged documents as they are kept in the usual course of business and pursuant to a protective order approved by the court and the ESI protocol. FCA otherwise objects to Instruction 4's requirement that FCA "identify the file folder, file drawer, or electronic folder in where" documents were kept insofar as it seeks to impose discovery obligations on FCA that extend beyond that required by the Federal Rules of Civil Procedure and that impose undue burden and expense on FCA.

3. FCA will produce responsive non-privileged documents that are relevant to any party's claim or defense and proportional to the needs of the case pursuant to a protective order approved by the court and the ESI protocol. FCA otherwise objects to Instruction 5 in that the Court

has directed counsel for the parties to attempt to agree on an ESI protocol on or before November 23, 2016.

4. FCA will produce a privilege log pursuant to Fed. R. Civ. P. 26(b)(5)(A) for documents withheld from production and otherwise objects to Instruction 6 insofar as it seeks to impose obligations on FCA that extend beyond those required by the Federal Rules of Civil Procedure insofar as it calls for information related to oral communications and redacted documents and imposes undue burden and expense on FCA.

5. FCA will respond to Plaintiffs' First Request pursuant to Federal Rules of Civil Procedure 26 and 34. FCA otherwise objects to Instruction 8, which states that "[i]f any of these REQUESTS cannot be responded to in full, respond to the extent possible, specifying the reasons for YOUR inability to respond in full and stating whatever information, knowledge or belief YOU do have concerning the portion to which YOU cannot respond," on the grounds that FCA is responding to Plaintiffs' First Request in accordance with the Federal Rules of Civil Procedure, the instruction is vague and ambiguous, and it imposes undue burden and expense on FCA.

6. FCA will produce responsive non-privileged documents in its possession, custody, or control that are relevant to any party's claim or defense and proportional to the needs of the case. FCA otherwise objects to Instruction 9 insofar as it requires FCA to provide information concerning documents that are explicitly not within FCA's possession, custody, or control and imposes undue burden and expense on FCA in collecting and producing such information.

7. FCA will supplement or correct its Response in a timely manner if it learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or

corrective information has not otherwise been made known to the other parties during the

discovery process or in writing, or as ordered by the court, in accordance with Federal Rule

of Civil Procedure 26(e)(1). FCA otherwise objects to Instruction 10 insofar as it requires

FCA to supplement or correct its responses where the additional or corrective information

has otherwise been made known to Plaintiffs or in a circumstance that is immaterial.

## FCA'S RESPONSES AND OBJECTIONS TO THE PLAINTIFFS' REQUESTS

### REQUEST NO. 1:

All DOCUMENTS and COMMUNICATIONS that YOU reviewed and/or uncovered when "FCA US carried out an investigation of the facts"—as YOU stated in YOUR January 14, 2016 press release—with respect to "allegations of false sales reporting." (The press release is attached as Ex. B to these REQUESTS.)

### RESPONSE TO REQUEST NO. 1:

In addition to and specifically incorporating its foregoing General Objections, FCA

objects to Request No. 1 on the ground that it seeks information protected by the attorney-client

and work product privileges concerning the original complaint filed by Plaintiffs Arlington

Heights and Northlake on January 12, 2016 and the draft complaint attached to Edward

Napleton's letter dated August 14, 2015.

### REQUEST NO. 2:

All DOCUMENTS and COMMUNICATIONS that YOU claim support YOUR defenses in YOUR Rule 26(a) disclosures.

### RESPONSE TO REQUEST NO. 2:

FCA will produce non-privileged documents relevant to the claim or defense of any party

and proportional to the needs of the case in response to specific requests, but objects to the use of

the document categories described in FCA's Initial Disclosure served on March 25, 2016 as a

substitute for the specific requests required under Federal Rule of Civil Procedure 34.

7

**REQUEST NO. 3:**

Records of all FALSE SALES REPORTS.

**RESPONSE TO REQUEST NO. 3:**

FCA will produce data, if any, sufficient to show the sales reported by FCA dealers located in the Relevant Territory during the Relevant Time Period. In addition to and specifically incorporating its foregoing General Objections, FCA otherwise objects to Request No. 3 on the ground that the term "FALSE SALES REPORTS" is vague and ambiguous, as explained above. FCA also objects on the ground that the time period and geographic scope of Request No. 3 are overbroad and therefore the Request seeks documents that are not relevant to the claims or defenses of any party, nor proportional to the needs of the case, and imposes undue burden and expense on FCA. FCA further objects to Request No. 3 to the extent that disclosure of records concerning non-party FCA dealers may be prohibited by the terms of dealer agreements with other FCA dealers, and/or by law governing the dissemination of information relating to non-party dealerships.

**REQUEST NO. 4:**

All DOCUMENTS and COMMUNICATIONS concerning an agreement, demand, idea, invitation, offer, plan, request, or suggestion to consider, contemplate, participate in, aid, execute, solicit, invite, agree to, reward, or conceal the creation or submission of FALSE SALES REPORTS. For the avoidance of doubt, the DOCUMENTS and COMMUNICATIONS reflecting the following indicia of a plan to execute and/or conceal a false reporting scheme are responsive to this REQUEST:

    (a) an agreement, demand, idea, invitation, offer, plan, request, or suggestion to consider, contemplate, participate in, aid, execute, solicit, invite, agree to, reward, or conceal the unwinding of SALES REPORTS;

    (b) that a SALES REPORT would be a personal favor to YOUR employees (including by helping them make their bonuses or meet their sales goals, requirements, or targets);

    (c) that a SALES REPORT would or should be submitted by a specific deadline or within a certain timeframe (such as before the end of a month, quarter, or year);

(d) that a dealer could, would or did receive a benefit or reward (such as monies, allocations of vehicles, or other preferential treatment) in exchange for submitting a SALES REPORT, including how and in what form YOU would provide those benefits;

(e) an inquiry or an assurance that any activity in connection with creating, submitting, or unwinding a SALES REPORT was legitimate, illegitimate, legal, illegal, harmless, or harmful;

(f) that submitting and/or unwinding a SALES REPORT would trigger or avoid triggering the warranty on a new vehicle;

(g) that any PERSON could avoid detection from an audit, investigation, or scrutiny in connection with submitting a SALES REPORT, unwinding a SALES REPORT, or receiving a benefit for submitting or unwinding a SALES REPORT;

(h) that a SALES REPORT has been or will be submitted or unwound for any purpose other than to report the legitimate sale of a new vehicle in exchange for fair value from the purchaser of such vehicle; and

(i) any other indication that a SALES REPORT had been or would be submitted for a purpose outside the ordinary course of YOUR or a dealer's business.

**RESPONSE TO REQUEST NO. 4:**

FCA will search for and produce non-privileged documents and communications, if any, using agreed-upon search terms and custodians, concerning the alleged "indicia of a plan to execute and/or conceal a false reporting scheme" as described in subparagraphs (a)-(i) for FCA dealers in the Relevant Territory during the Relevant Time Period. In addition to and specifically incorporating its foregoing General Objections, FCA otherwise objects to Request No. 4 on the grounds that the term "FALSE SALES REPORTS" is vague and ambiguous, as explained above and the following set of words are vague, ambiguous, and incomprehensible in the context of these requests: "agreement, demand, idea, invitation, offer, plan, request, or suggestion to consider, contemplate, participate in, aid, execute, solicit, invite, agree to, reward, or conceal the creation or submission." FCA also objects on the ground that the time period and geographic scope of Request No. 4 are overbroad and therefore the Request seeks documents

9

that are not relevant to the claims or defenses of any party, nor proportional to the needs of the

case, and imposes undue burden and expense on FCA.  FCA further objects to Request No. 4 to

the extent that disclosure of documents and communications concerning non-party FCA dealers

may be prohibited by the terms of dealer agreements with other FCA dealers, and/or by law

governing the dissemination of information relating to non-party dealerships.

**REQUEST NO. 5:**

DOCUMENTS and COMMUNICATIONS sufficient to show how unwinding a SALES
REPORT affects (i) the sales and financial figures YOU report to the investing public or YOUR
creditors, (ii) the bonuses YOU pay to YOUR business center directors and their direct
supervisors and reports, and (iii) the warranties for new vehicles initially reported sold.

**RESPONSE TO REQUEST NO. 5:**

FCA will produce non-privileged documents and communications, if any, sufficient to

show how unwinding a sales report affects, if at all, bonuses that FCA paid, if any, to its business

center directors in the Relevant Territory and their direct supervisors and reports during the

Relevant Time Period.  In addition to and specifically incorporating its foregoing General

Objections, FCA otherwise objects to Request No. 5 insofar as it seeks information concerning

the sales and financial figures FCA reports, if any, to the investing public or its creditors, and

warranties for new vehicles initially reported sold on the ground that such information is not

relevant to the claims or defenses of any party, nor proportional to the needs of the case, and is

therefore beyond the scope of permissible discovery.

**REQUEST NO. 6:**

All DOCUMENTS and COMMUNICATIONS concerning the allegations in paragraphs 38(a)-(h)
and 42 of the PLAINTIFFS' amended complaint (including, for the avoidance of doubt,
DOCUMENTS and COMMUNICATIONS memorializing, reflecting, referencing, commenting
upon, corroborating, supporting, or disagreeing with any of the allegations in these paragraphs).

**RESPONSE TO REQUEST NO. 6:**

FCA will search for and produce non-privileged documents and communications, if any, using agreed-upon search terms and custodians, concerning the allegations in ¶¶ 38(a)-(h) of the Amended Complaint.  In addition to and specifically incorporating its foregoing General Objections, FCA otherwise objects to Request No. 6 insofar as paragraph 42 of Plaintiffs' Amended Complaint is vague and ambiguous; makes sweeping, unsubstantiated, and irrelevant accusations related to undefined monthly "results" made to "the public at large and [] the investment community" and alleged "mergers" and "other business opportunities;" is not limited in geographic scope; and imposes undue burden and expense on FCA.  FCA further objects to Requests No. 6 to the extent that disclosure of documents and communications concerning non-party FCA dealers may be prohibited by the terms of dealer agreements with other FCA dealers, and/or by law governing the dissemination of information relating to non-party dealerships.

**REQUEST NO. 7:**

All DOCUMENTS and COMMUNICATIONS concerning FALSE SALES REPORTS or unwinding of FALSE SALES REPORTS involving YOUR dealers, including Sherman CDJR; Northwestern CDJR; Glendale CDJR; Royal Gate CDJR; and South County CDJR.

**RESPONSE TO REQUEST NO. 7:**

FCA will produce data sufficient to show, if any, the sales reported by FCA dealers located in the Relevant Territory during the Relevant Time Period.  In addition to and specifically incorporating its foregoing General Objections, FCA also objects to Request No. 7 on the ground that the term "FALSE SALES REPORTS" is vague and ambiguous, as explained above.  FCA also objects on the ground that the time period and geographic scope of Request No. 7 are overbroad and therefore the Request seeks documents that are not relevant to the claims or defenses of any party, nor proportional to the needs of the case, and imposes undue burden and expense on FCA.  FCA further objects to Request No. 7 to the extent that disclosure of records

11

concerning non-party FCA dealers may be prohibited by the terms of dealer agreements with

other FCA dealers, and/or by law governing the dissemination of information relating to non-

party dealerships.

## REQUEST NO. 8:

All DOCUMENTS and COMMUNICATIONS concerning the Volume Growth Program in connection with the PLAINTIFFS and COMPETING DEALERS from January 1, 2012 to the present, including those concerning:

(a) how YOU determined the targets for each PLAINTIFF and COMPETING DEALER, and what the targets were at any time;

(b) how YOU determined the clawback penalty (as further described in the amended complaint) for each PLAINTIFF and COMPETING DEALER, and what the penalties were at any time;

(c) how YOU determined the benefits and drawbacks (including monies, vehicle allocations, or other preferential treatment) of compliance or non-compliance;

(d) what benefits YOU provided for compliance or non-compliance with the Volume Growth Program to any PLAINTIFF or COMPETING DEALER at any time;

(e) what conditions and terms YOU required any PLAINTIFF or COMPETING DEALER to meet to comply with and be eligible for benefits under the Volume Growth Program, and how YOU determined those conditions and terms; and

(f) what impact compliance or non-compliance with the Volume Growth Program had on the sales or finances of any PLAINTIFF or COMPETING DEALER.

## RESPONSE TO REQUEST NO. 8:

FCA will produce non-privileged documents, if any, sufficient to show the VGP program

rules and how VGP sales objectives were determined for dealers located in the Relevant

Territory during the Relevant Time Period. FCA will also produce non-privileged documents, if

any, sufficient to show the VGP incentives received by dealers located in the Relevant Territory

during the Relevant Time Period. FCA will also search for and produce non-privileged

communications with Plaintiffs, if any, using agreed-upon search terms and custodians,

concerning the VGP during the Relevant Time Period.

In addition to and specifically incorporating its foregoing General Objections, FCA otherwise objects to Request No. 8 on the ground that FCA objects to Plaintiffs' definition of the term "Competing Dealers," as explained above. FCA also objects to Request No. 8 on the ground that Plaintiffs' claim that the alleged schemes "[began] no later than early 2015" and therefore their request for information for the period from January 1, 2012 to the present seeks information that is not relevant to the claims or defenses of any party, nor proportional to the needs of the case, and imposes undue burden and expense on FCA. FCA further objects to Request No. 8 on the ground that the terms "clawback penalty," "benefits," "drawbacks," "compliance," and "non-compliance" are so vague and ambiguous that FCA is unable to determine the type of information that Plaintiffs are attempting to describe. FCA also objects to Request No. 8 to the extent it seeks information not in FCA's possession, custody, or control in that it requests information about "what impact compliance or non-compliance with the [VGP] had on the sales or finances of any PLAINTIFF OR COMPETING DEALER." Finally, FCA objects to Request No. 8 to the extent that disclosure of documents and communications concerning non-party FCA dealers may be prohibited by the terms of dealer agreements with other FCA dealers, and/or by law governing the dissemination of information relating to non-party dealerships.

**REQUEST NO. 9:**

DOCUMENTS sufficient to show monthly new vehicle sales data for each type of Chrysler, Dodge, Jeep and Ram vehicle sold in the United States from January 1, 2012 to the present.

**RESPONSE TO REQUEST NO. 9:**

FCA will produce non-privileged documents, if any, sufficient to show the monthly retail new vehicle sales for each type of Chrysler, Dodge, Jeep and Ram vehicle sold in the United States from January 1, 2013 to January 12, 2016. In addition to and specifically incorporating its foregoing General Objections, FCA otherwise objects to Request No. 9 on the grounds that

13

Plaintiffs' claim that the alleged schemes "[began] no later than early 2015" and therefore their request for information for the period from January 1, 2012 to the present seeks information that is not relevant to the claims or defenses of any party, nor proportional to the needs of the case, and imposes undue burden and expense on FCA.

**REQUEST NO. 10:**

All DOCUMENTS and COMMUNICATIONS concerning the Minimum Sales Responsibilities of the PLAINTIFFS and any component used to calculate their Minimum Sales Responsibilities, including those concerning:

  (a) how YOU determined the PLAINTIFFS' SALES ZONES, and what the SALES ZONES are or were;

  (b) how YOU determined the vehicles that compete with the vehicles sold by PLAINTIFFS, and what those vehicles are;

  (c) how YOU determined the PLAINTIFFS' fair share among dealers within their SALES ZONES, what those fair shares are or were, and who the dealers within their SALES ZONES are or were;

  (d) how YOU determined market shares and what the market shares were for each PLAINTIFF;

  (e) analyses or opinions from Urban Science or JD Power & Associates with respect to YOUR determination that YOUR vehicles are competitive with luxury SUVs; and

  (f) the input YOU provided or intended to provide to any PLAINTIFF in determining their Minimum Sales Responsibilities or any component of Minimum Sales Responsibilities, or any statements, representations, or promises YOU made to PLAINTIFFS on this subject.

**RESPONSE TO REQUEST NO. 10:**

FCA will produce non-privileged documents, if any, sufficient to show how FCA calculated each Plaintiff's respective Minimum Sales Responsibilities during the period from January 1, 2013 through January 12, 2016, including how fair share was calculated, when applicable; Plaintiffs' respective Minimum Sales Responsibilities and Plaintiffs' respective sales performances as compared to their Minimum Sales Responsibilities during the period from

January 1, 2013 through January 12, 2016; a list of the non-FCA vehicles that FCA views as competing with FCA vehicles and reason(s) for changes in such list(s) during the period from January 1, 2013 through January 12, 2016; Plaintiffs' fair share numbers, where applicable, as they relate to Minimum Sales Responsibility, during the period from January 1, 2013 through January 12, 2016; and the identity of FCA dealers located in the same Sales Localities as Plaintiffs during the period from January 1, 2013 through January 12, 2016. FCA will also search for and produce non-privileged communications, if any, with Plaintiffs using agreed-upon search terms and custodians concerning their Minimum Sales Responsibility during the period from January 1, 2013 through January 12, 2016.

In addition to and specifically incorporating its foregoing General Objections, FCA otherwise objects to Request No. 10 on the ground that it is overbroad, seeks documents and communications that are neither relevant to any claim or defense of any party, nor proportional to the needs of the case, and imposes undue burden and expense on FCA, because it requests "all" documents and communications concerning the Minimum Sales Responsibility of the Plaintiffs and any component used to calculate their Minimum Sales Responsibilities. FCA also objects on the ground that the terms "Sales Zones," "luxury SUVs," and "market share" are undefined and are so vague and ambiguous that FCA is unable to determine the type of information that Plaintiffs are attempting to describe. Finally, FCA objects on the ground that Request No. 10 seeks information that is not relevant to any party's claim or defense and is not in FCA's possession, custody, or control insofar as it requests "analyses or opinions from Urban Science or JD Power & Associates with respect to YOUR determination that YOUR vehicles are competitive with luxury SUVs."

15

**REQUEST NO. 11:**

DOCUMENTS sufficient to show (i) the incentives, monies, and subsidies that YOU distributed to each PLAINTIFF and each COMPETING DEALER on a monthly basis; (ii) the accounts under which YOU distributed such incentives, monies, and subsidies; and (iii) why YOU distributed or withheld such incentives, monies, and subsidies and why YOU chose to do so under certain accounts. For the avoidance of doubt, this REQUEST extends to co-op and advertising monies.

**RESPONSE TO REQUEST NO. 11:**

FCA will produce non-privileged documents, if any, sufficient to show the VGP program rules and how VGP sales objectives were determined for dealers located in the Relevant Territory during the Relevant Time Period. FCA will also produce non-privileged documents, if any, sufficient to show the VGP incentives received by dealers located in the Relevant Territory during the Relevant Time Period. FCA will also produce non-privileged documents, if any, sufficient to describe the co-operative advertising program(s) available to FCA dealers in the Relevant Territory during the Relevant Time Period and documents, if any, sufficient to show co-operative advertising program funds received by FCA dealers in the Relevant Territory during the Relevant Time Period.

In addition to and specifically incorporating its foregoing General Objections, FCA otherwise objects to Request No. 11 on the ground that FCA objects to Plaintiffs' definition of the term "Competing Dealers," as explained above. FCA further objects to Request No. 11 on the ground that it seeks information that is not relevant to the claim or defense of any party and imposes undue burden and expense on FCA insofar as it seeks information related to the accounts "under which" incentives were "distributed." FCA also objects to Request No. 11 to the extent that disclosure of documents and communications concerning non-party FCA dealers may be prohibited by the terms of dealer agreements with other FCA dealers, and/or by law governing the dissemination of information relating to non-party dealerships.

16

**REQUEST NO. 12:**

DOCUMENTS and COMMUNICATIONS sufficient to show (i) the numbers of vehicles by make and model that YOU allocated to PLAINTIFFS or COMPETING DEALERS on a monthly basis (including advertising and co-op monies); (ii) what methodology YOU employed in allocating such vehicles to the PLAINTIFFS and COMPETING DEALERS; (iii) how and why YOU allocated or distributed such vehicles to each PLAINTIFFS and COMPETING DEALER; and (iv) how and why YOU withheld or did not provide additional vehicles to any PLAINTIFF or COMPETING DEALER.

**RESPONSE TO REQUEST NO. 12:**

FCA will produce non-privileged documents, if any, sufficient to describe the method by which FCA allocated vehicles to dealers in the Relevant Territory during the Relevant Time Period and non-privileged documents, if any, sufficient to show the vehicles allocated to FCA dealers in the Relevant Territory during the Relevant Time Period. In addition to and specifically incorporating its foregoing General Objections, FCA otherwise objects to Request No. 12 on the ground that FCA objects to Plaintiffs' definition of the term "Competing Dealers," as explained above. FCA further objects to Request No. 12 on the ground that it seeks information that is not relevant to the claim or defense of any party and imposes undue burden and expense on FCA insofar as it seeks information sufficient to show "how and why YOU withheld or did not provide additional vehicles to any PLAINTIFF or COMPETING DEALER." FCA also objects on the ground that the terms "advertising," "co-op," "withheld," and "additional vehicles" are so vague and ambiguous that FCA is unable to determine the type of information Plaintiffs are attempting to describe. Finally, FCA objects to Request No. 12 to the extent that disclosure of documents and communications concerning non-party FCA dealers may be prohibited by the terms of dealer agreements with other FCA dealers, and/or by law governing the dissemination of information relating to non-party dealerships.

**REQUEST NO. 13:**

All DOCUMENTS and COMMUNICATIONS referencing or exchanged with Edward F. Napleton.

**RESPONSE TO REQUEST NO. 13:**

FCA will search for and produce non-privileged documents and communications, if any, using agreed-upon search terms and custodians, exchanged with or specifically referencing Edward F. Napleton that are relevant to any party's claim or defense during the Relevant Time Period. In addition to and specifically incorporating its foregoing General Objections, FCA objects to Request No. 13 on the grounds that the Request is overbroad, seeks documents and communications that are not relevant to the claims or defenses of any party, nor proportional to the needs of the case, and imposes undue burden and expense on FCA insofar as it seeks "all" documents and communications referencing or exchanged with Edward F. Napleton.

**REQUEST NO. 14:**

All DOCUMENTS and COMMUNICATIONS concerning the termination or default of the PLAINTIFFS under their franchise agreements or that discuss, analyze, evaluate, or threaten the performance or compliance of the PLAINTIFFS with their franchise agreements.

**RESPONSE TO REQUEST NO. 14:**

FCA will produce non-privileged documents and communications, if any, using agreed-upon search terms and custodians, concerning Plaintiffs' breach of their dealer agreements with FCA and the consequences of such a breach, including termination, during the period from January 1, 2013 through January 12, 2016. In addition to and specifically incorporating its foregoing General Objections, FCA otherwise objects to Request No. 14 on the grounds that the Request seeks documents and communications that are not relevant to the claims or defenses of any party, nor proportional to the needs of the case, and imposes undue burden and expense on FCA insofar as it requests "all" documents and communications concerning the termination or

18

default of the Plaintiffs. FCA also objects on the ground that the following set of words are vague, ambiguous, and incomprehensible in the context of this request: "discuss, analyze, evaluate, or threaten the performance or compliance of." Finally, FCA objects to Request 14 to the extent it calls for documents that are subject to a legal privilege, including, without limitation, the attorney-client privilege and the work product doctrine.

Dated: November 3, 2016                    Respectfully submitted,

                                           /s/ Robert D. Cultice
                                           Robert D. Cultice *(admitted pro hac vice)*
                                           Felicia H. Ellsworth *(admitted pro hac vice)*
                                           Caitlin W. Monahan *(admitted pro hac vice)*
                                           WILMER CUTLER PICKERING HALE AND DORR LLP
                                           60 State Street
                                           Boston, MA 02109
                                           (617) 526-6000
                                           robert.cultice@wilmerhale.com
                                           felicia.ellsworth@wilmerhale.com
                                           caitlin.monahan@wilmerhale.com

                                           Randall L. Oyler
                                           Owen H. Smith
                                           Brandon C. Prosansky
                                           Katherine A. Neville
                                           BARACK FERRAZZANO KIRSCHBAUM &
                                           NAGELBERG LLP
                                           200 West Madison Street
                                           Suite 3900
                                           Chicago, IL 60606
                                           (318) 984-3100
                                           randall.oyler@bfkn.com
                                           owen.smith@bfkn.com
                                           brandon.prosansky@bfkn.com
                                           katie.neville@bfkn.com

                                           ***Attorneys for Defendant.***

19

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 3, 2016 the foregoing document, FCA US LLC'S

RESPONSE TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF

DOCUMENTS, was emailed to plaintiffs' counsel of record.


*/s/ Robert D. Cultice*
Robert D. Cultice *(admitted pro hac vice)*
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000
Fax: (617) 526-5000
robert.cultice@wilmerhale.com