**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| NAPLETON'S ARLINGTON HEIGHTS MOTORS, INC. f/k/a NAPLETON'S PALATINE MOTORS, INC. d/b/a NAPLETON'S ARLINGTON HEIGHTS CHRYSLER DODGE JEEP RAM, an Illinois corporation; NAPLETON'S RIVER OAKS MOTORS, INC. d/b/a NAPLETON'S RIVER OAKS CHRYSLER DODGE JEEP RAM, an Illinois corporation; CLERMONT MOTORS, LLC d/b/a NAPLETON'S CLERMONT CHRYSLER DODGE JEEP RAM, an Illinois limited liability company; NAPLETON'S NORTH PALM AUTO PARK, INC. d/b/a NAPLETON'S NORTHLAKE CHRYSLER DODGE JEEP RAM, an Illinois corporation; NAPLETON ENTERPRISES, LLC d/b/a NAPLETON'S SOUTH ORLANDO CHRYSLER DODGE JEEP RAM, an Illinois limited liability company; NAPLETON'S MID RIVERS MOTORS, INC. d/b/a NAPLETON'S MID RIVERS CHRYSLER DODGE JEEP RAM, an Illinois corporation; NAPLETON'S ELLWOOD MOTORS, INC. d/b/a NAPLETON'S ELLWOOD CHRYSLER DODGE JEEP RAM, an Illinois corporation,<br><br>      Plaintiffs,<br><br>  v.<br><br>FCA US LLC, a Delaware corporation,<br><br>      Defendant. | Case No. 1:16-cv-00403-VMK-SMF |

**FCA'S MOTION TO LIMIT THE SCOPE OF DISCOVERY UNDER RULE 26**

**I.     INTRODUCTION**

Despite many months of burdensome and expensive document review and production by FCA, and this Court's painstaking attempts to tailor discovery to the claims and defenses of this case, the Plaintiffs still repeat their seemingly endless requests for wholesale cloned discovery of documents produced to the government, rather than attempting to devise a discovery plan that is proportional to the needs of this case and achievable within any reasonable discovery period. Having attempted to arrive at a reasonable approach cooperatively with the Plaintiffs, FCA now seeks an order from this Court pursuant to Federal Rule of Civil Procedure 26 limiting the scope of discovery as described below.

On July 12, 2017, noting the high burden FCA faces in reviewing all documents produced to the government, particularly where government productions are ongoing, the Court directed the parties "to explore possible modifications to the review process for the Government Investigation documents, including the use of search terms, given the large (and growing) volume of such documents and District Judge's discovery deadline." Dkt. 144 at 2. In response to the Court's direction, FCA proposed to the Plaintiffs that rather than review documents produced to the government on a document-by-document basis, as previously ordered by the Court, FCA would instead limit the review to documents produced to the government that hit on the agreed-upon search terms for certain types of custodians. To support its proposal, FCA provided Plaintiffs with detailed information regarding the volume of documents produced to the government that would also be captured by the parties' agreed upon search terms. Plaintiffs asked for additional information beyond what the Court ordered, and in the spirit of facilitating discussion, FCA provided Plaintiffs with highly specific information regarding review of the government productions.

Despite the more than reasonable amount of information FCA has provided and the Court's direction to explore options to narrow the review of documents produced to the government, Plaintiffs continue to refuse to engage in a meaningful discussion and have not submitted any proposal, instead asking FCA to first provide even *more* information and undertake additional review before Plaintiffs will even propose an alternative approach. Specifically, FCA has provided to Plaintiffs: (1) the number of documents produced to the government for each of the 19 FCA custodians in this case; (2) the number of documents produced to the government that FCA has determined to be responsive to Plaintiffs' requests in this case and has produced to Plaintiffs, on a custodian-by-custodian basis; (3) the number and percent of documents produced to Plaintiffs from the government productions which would have been captured by the parties' agreed-upon search terms, by custodian; and (4) the number of documents not produced to the government that hit on the agreed-upon search terms and that FCA will review, by custodian.[1] The parties met and conferred three times concerning possible modifications to the review process—on July 25, 2017, August 4, 2017, and August 16, 2017— but Plaintiffs refuse to agree to any proposal to modify discovery so that it meets the proportionality requirements of Rule 26, nor have they provided a counterproposal. Instead Plaintiffs have backtracked to their argument prior to this Court's first order on the government production review by continuing to seek cloned discovery and documents from irrelevant custodians. Accordingly, FCA is forced to bring this motion to limit discovery pursuant to Rule

---

[1] The Court directed FCA to "provide Plaintiffs with updated information regarding the number of custodians for whom it has produced documents from the government production, the percentage of the production that would have been captured had FCA used Plaintiffs' search terms, and whether that percentage varies by custodian." Dkt. 144 at 2. FCA has provided Plaintiffs with far more information than required by Court, has promptly responded to Plaintiffs' questions about this information, and has provided additional information requested by Plaintiffs. Meanwhile, Plaintiffs have refused "to explore possible modifications to the review process for the Government Investigation documents, including the use of search terms," nor have Plaintiffs suggested any other possible modification. *Id.*

2

26 and to limit FCA's review of the documents produced to the government to (1) those that hit on the parties' agreed-upon search terms and (2) are not from custodians located in Business Centers in which no Plaintiff operates.

### A. FCA Has Undertaken Extensive Document Review Discovery to Date

Despite the fact that the seven Plaintiffs are located in only four states, each Plaintiff competes with a limited number of FCA dealers, and Plaintiffs' fraud and RICO claims were dismissed (Dkt. 62), Plaintiffs have consistently sought to impose broad, nationwide discovery on FCA, arguing that it is necessary because finding evidence of FCA's allegedly "vast" conspiracy is "like looking for a needle in a haystack." Dkt. 109 at 12. While this Court has taken pains to appropriately tailor discovery based on the information before it, Plaintiffs have succeeded in imposing a substantial burden on FCA without disclosing vital information about the damages they are seeking, or even basic information concerning the profits and sales that they claim to have lost by reason of FCA's allegedly unlawful conduct. And FCA did not discover the full scope of its (still ongoing) productions to the government until after the Court ordered that FCA must review each document produced to the government for responsiveness to Plaintiffs' other document requests, in lieu of the cloned discovery Plaintiffs have relentlessly sought. Dkt. 135 at 1 (filed under seal). This discovery significantly altered the burden of review for FCA, as the Court has now recognized. To date, FCA has reviewed approximately 111,500 documents that have been produced in connection with the government investigations, approximately 52,000 documents produced to the government to date remain to be reviewed, and due to ongoing productions, over 500,000 more documents will likely need to be reviewed in the future if the scope of discovery does not change. Not only is the sheer number of documents to review, without any geographic limitations, overly burdensome, but the government productions also include documents with little to no relevance to Plaintiffs' claims and defenses from far-

3

flung custodians who work in Business Centers hundreds, if not thousands, of miles from the more local markets where Plaintiffs' compete.

**B.     Plaintiffs Refuse to Agree to Any Modification of Discovery**

While the Court initially directed FCA to review all documents produced to the government, it also advised the parties "to work together to eliminate any unnecessary categories of documents that are voluminous and unhelpful." Dkt. 114 at 5 n.1. As this case has progressed, it has become clear that to maintain proportionality FCA's review of the government productions must be narrowed. On July 12, 2017, the Court directed the parties to discuss possible modifications to narrow the review, including search terms. Dkt. 144 at 2.

**i.     FCA Has Repeatedly Attempted to Propose Possible Modifications**

After the Court's direction that the parties confer regarding possible modifications to narrow the scope of review of documents produced to the government, FCA provided Plaintiffs with various types of data related to the government productions and FCA's productions to Plaintiffs, as described above. In particular, on July 21, 2017 FCA provided data showing the number and percent of documents produced to Plaintiffs from the government productions that would have been captured by the parties' agreed-upon search terms on a custodian-by-custodian basis. Overall, 1,574 of the 1,992 documents produced, or 79 percent, would have been captured by the search terms. This proves that the search terms are appropriately tailored and are capturing the vast majority of responsive documents, exactly as they are designed to do.[2] After

---

[2]     Plaintiffs are welcome to test this hypothesis by running the search terms against FCA's productions to date, which contain, for the most part, documents produced to the government (per Plaintiffs' request that FCA prioritize the review and production of such documents). Thus, Plaintiffs cannot claim that their reluctance to propose any modifications to the review process and demands for further information are the byproduct of lack of knowledge. Instead, Plaintiffs' position arises from a deliberate disregard for the burden inflicted on FCA and a continued attempt to mine irrelevant documents for some shred of evidence to support their allegations.

receiving this information, Plaintiffs requested additional data regarding the agreed-upon custodians, which FCA provided on August 1, 2017. Specifically, FCA identified the number of documents produced to the government for each custodian and the number of documents that were not produced to the government but that hit on the agreed-upon search terms and that FCA will review. This data showed that as of that date 73,002 documents had been produced to the government for the agreed-upon custodians and FCA will review an additional 56,408 documents for those custodians that were not produced to the government. Based on this data and the effectiveness of the search terms, FCA proposes that an appropriate way to narrow FCA's review and make it more proportionate and less burdensome is to apply the parties' agreed-upon search terms to the documents produced to the government and to review the documents that hit on any of these search terms for responsiveness to Plaintiffs' other requests. Additionally, FCA also proposes that it exclude from its review documents from custodians who are assigned to Business Centers in which no Plaintiff operates and which, therefore, are not relevant to any parties' claim or defense.[3]

        ii.        **Plaintiffs Continue to Request Additional Discovery, Including Renewed Requests for Cloned Discovery, and Fail to Propose Any Modification for Discovery**

On August 10, 2017, after reviewing the extensive data provided by FCA, including the fact that 79 percent of responsive documents would have been captured using the agreed upon search terms, Plaintiffs sent FCA a letter requesting that FCA produce to Plaintiffs "all of the documents produced to the government" for three custodians: Phil Scroggin, Jeffrey Kommor,

---

[3] FCA's proposal would exclude custodians who are assigned to the Northeast, Great Lakes, Denver, West, California, and Southwest Business Centers. The documents of custodians assigned to the Midwest, Mid-Atlantic, and Southeast Business Centers would be reviewed, as would the documents of custodians not specifically assigned to a Business Center.

and Ralph Jones.[4] This request is remarkable given the fact that the Court has already concluded that cloned discovery is inappropriate, a ruling the Plaintiffs continue to ignore. What is more, rather than proposing any suggestions to limit the scope of FCA's review of the government investigation documents, Plaintiffs go on to request that FCA confirm it has reviewed all of the documents produced to the government for the 19 custodians in this case and then proceed to review the 56,408 documents hitting on search terms that were not produced to the government — claiming this should happen *before* Plaintiffs will even propose a limiting method. At the same time, Plaintiffs expect FCA to prioritize review of documents from the government productions for custodians from Business Centers where no Plaintiff operates.[5] In other words, despite the Court's order for the parties to explore possible modifications to the review process, Plaintiffs expect FCA to engage in at least six more weeks of burdensome review before Plaintiffs will even *begin* to consider a modification narrowing the scope of review of the Government production documents.

### iii. FCA Requests Relief Under Fed. R. Civ. P. 26

Having tried and failed to engage in any good-faith dialogue with Plaintiffs on possible modifications of review of the government documents, FCA requests that the Court issue an order allowing FCA: (1) to run the agreed-upon ESI search terms across the documents produced

---

[4] Plaintiffs claim this requested cloned discovery is warranted because they are "surprised and concerned by the low number of documents FCA determined were responsive to requests for productions in this case." The low responsiveness rate of the government production should not be surprising, however, because, as FCA has previously explained, the government investigation is not coextensive with the claims by the seven Plaintiffs in this case. Moreover, Plaintiffs themselves have represented to FCA that their review of their own custodians has resulted in an exceedingly low responsiveness rate.

[5] Plaintiffs request that FCA prioritize review of documents for Mike Dragojevik and Steven Yandura, individuals who work in the Southwest and Denver Business Centers, respectively. But none of the Plaintiffs are located in those Business Centers and even if Plaintiffs could find a shred of support for their allegations using those custodians' documents, Plaintiffs would face the insurmountable task of arguing that the impact of alleged false sales reporting in the Southwest or Denver Business Centers somehow substantially impacted competition in Florida, Pennsylvania, Missouri, and Illinois.

6

to the government and review the documents that hit on these terms, and (2) exclude from review documents produced to the government for custodians who work in Business Centers in which no Plaintiff operates.

## II. ARGUMENT

### A. The Scope of Discovery Must Be Modified to Meet the Proportionality Requirement of Fed. R. Civ. P. 26

Discovery must be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Under Fed. R. Civ. P. 26(b)(2)(C) "the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)."

The current scope of discovery far exceeds the bounds of Rule 26's proportionality requirement. First, this case is not a class action. To the contrary, the Plaintiffs are seven individual FCA dealers who operate in discrete markets in Northern Illinois; the greater Pittsburgh, Pennsylvania area; the greater St. Louis, Missouri area; Palm Beach County, Florida, and the greater Orlando, Florida area. Dkt. 21 at ¶ 20. The Plaintiffs allege violations of the Robinson-Patman Act, the ADDCA, and state dealer statutes and, as such, the alleged actions of far-flung FCA dealers are not relevant to their claims. Specifically, Plaintiffs' Robinson-Patman Act claims are based on a theory of indirect price discrimination: that FCA allegedly rewarded

7

"conspiring" and "competing" dealers with additional incentives and/or vehicles, in return for the false reporting of their sales to FCA. Plaintiffs claim that they refused to report false sales and therefore were not provided such benefits, which allegedly resulted in "disfavored" Plaintiffs paying more to buy vehicles from FCA than the "favored" dealers. AC at ¶¶ 3-4. According to the Plaintiffs, this "indirect" price discrimination enabled allegedly "conspiring" FCA dealers that compete with the Plaintiffs to sell their vehicles to consumers at lower retail prices than the Plaintiffs and that retail customers, therefore, were diverted from each of the Plaintiffs to the Plaintiffs' alleged competitors.

Plaintiffs are not entitled to seek discovery outside the subject of these claims and any relevant discovery sought must be "proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1); *see also PolyOne Corp. v. Lu*, 2017 WL 2653130, at *1 (N.D. Il. Jun. 20, 2017) (denying motion to compel based on attenuated connection between claims and requested materials under Fed. R. Civ. P. 26(b)(1) because "[t]he Supreme Court has cautioned that the requirement of Rule 26(b)(1) that the material sought in discovery be 'relevant' should be firmly applied, and the district courts should not neglect their power to restrict discovery where necessary") (quoting *Miller UK Ltd. v. Caterpillar, Inc.,* 17 F. Supp. 3d 711, 721 (N.D. Ill. 2014)). Even where discovery is calculated to be relevant to the specific claims and defenses set forth, a court "must limit the frequency or extent of discovery if it determines that the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(iii). Here, the Plaintiffs have crossed the bounds of permissible discovery by trying to treat a case involving limited claims by seven plaintiffs in specific markets as if it were a nationwide class action. Given that each Plaintiff competes in a relatively small area in one of four states, FCA should not be forced to review hundreds of thousands of documents produced to the government,

many of which relate solely to territories in which Plaintiffs cannot possibly have competed or been harmed. Such review is disproportional to the claims and defenses in this case and the review parameters should be modified accordingly. *See Campbell v. Facebook, Inc.*, 2016 WL 7888026 (N.D. Cal. 2016) (denying motions to compel because "plaintiffs' discovery requests are overbroad, apparently seeking to discover new practices to challenge, as opposed to seeking more information on the specific . . . issue[s] in this case").

Additionally, the amount in controversy, or lack thereof, does not justify the review of hundreds of thousands of documents without the use of search terms. Plaintiffs' counsel's own sworn admission in the June 30, 2017 Declaration of Jeffrey M. Cross in Connection with the Parties Joint Status Report ("Cross Declaration") demonstrates the narrowness of their case relative to the disproportionate discovery they seek from FCA. Dkt. 138 (exhibits filed under seal).[6] The Cross Declaration attests that for 30 of the 68 alleged "competing" nonparty dealers, Plaintiffs were unable to uncover a single instance of "suspicious NVDR postings" to corroborate their theory of false sales reporting—meaning alleged "false sales reporting" could not have diverted sales from Plaintiffs to these 30 dealers. *See* Exhibits to Cross Decl. Of the remaining 38 nonparty dealers identified as "competing dealers" by Plaintiffs, 17 had five or fewer total "suspicious" unwinds over the entire six-year discovery period, and only five allegedly "competing" dealers had more than 50 "suspicious" unwinds. *Id.* These numbers contradict the exaggerated and distorted tale of a nationwide false sales reporting scheme that the Plaintiffs have told the Court each time they appeared and against which the Court has had to

---

[6] The Cross Declaration identified NVDRs "posted by the Competing Dealer in bulk at the end of one month only to be unwound in bulk at the beginning of the next month." Cross Decl. at 2. ***All*** such unwinds were compiled into Exhibit A to Mr. Cross's declaration, and using these compilations, Mr. Cross prepared summaries of what he posits are the "suspicious" NVDR postings for the nonparty dealers that allegedly compete with each Plaintiff, grouped by the geographic area in which the "competing" dealer allegedly competes with a Plaintiff dealer. *Id.*

9

assess discovery obligations. Indeed, although Plaintiffs' counsel has characterized this as a 26-million-dollar case, Plaintiffs' own statement that each allegedly false sales report resulted in "about an $800 premium" per unwind belies that claim.[7] Dkt. 48, *Mar. 28, 2017 Transcript of Initial Status Conference* 7:7-12; Dkt. 118-3, Plaintiffs' Objections and Answers to FCA US LLC's Second Set of Interrogatories at No. 9 (estimating "the cash incentives that FCA paid per vehicle for which an FCA dealers was willing to submit a false NVDR" as "more than $800"). Given this new information, it is important that the Court tailor the scope of discovery to Plaintiffs' claims considering the high burden to FCA and the low amount in controversy, despite Plaintiffs' prior hyperbole. *See Infowhyse GmbH v. Fleetwood Grp.*, 2016 WL 4063168, at *4 (N.D. Ill. July 29, 2016) (noting "proportionality is a significant factor controlling the scope of discovery").

### B. The Scope of Discovery Must Be Modified to Reduce the Burden on FCA

As previously discussed, under the current discovery orders, FCA must review hundreds of thousands of documents, including documents for custodians located in territories vast distances away from Plaintiffs, without the use of search terms. FCA has a substantial team dedicated to document review and production (14 attorneys for first-level review and 5 attorneys for further review), but even with this team, continued manual review would require an additional twelve months to complete.[8] This timeframe could also extend because the review population continues to grow—FCA does not know when productions to the government will be completed, and as of May 2017, FCA anticipated producing an additional 500,000 documents.

---

[7]  Over half of the competing dealers for whom Plaintiffs could identify even a ***single*** "suspicious unwind" allegedly would have received, at most, $800-$8000 in "unclean" incentives over six years – such *de minimis* amounts demonstrate the low value of Plaintiffs claims, even if true, which they decidedly are not.

[8]  This is based on a review rate of approximately 9,000 documents per week.

*See Assured Guar. Mun. Corp. v. UBS Real Estate Sec. Inc.,* 2013 WL 1195545, at *3 (S.D.N.Y. Mar. 25, 2013) (court denied production of emails reasoning that requested discovery would require "review [of] hundreds of thousands more documents, bringing its total review to over three-quarters of a million documents. . . . [R]equiring a search of the files. . . cannot be justified given the minimal marginal value of the information sought.").

As explained above, FCA has informed Plaintiffs that, based on FCA's best estimates, using the agreed-upon search terms would still capture 79 percent of responsive documents. The added burden and expense for FCA to review hundreds of thousands of documents on a document-by-document basis outweighs the benefit of not reviewing a low number of possibly responsive documents. *See Moore v. Publicis Groupe*, 287 F.R.D. 182, 192 (S.D.N.Y 2012) (authorizing use of predictive coding rather than manual human review because "the Federal Rules do not require perfection" in review and the "need for cost effectiveness and proportionality under Rule 26(b)(2)(c)" trumped counsels' concerns); *see also Treppel v. Biovail Corp.,* 233 F.R.D. 363, 374 (S.D.N.Y 2006) ("[T]here is no obligation on the part of a responding party to examine every scrap of paper in its potentially voluminous files in order to comply with its discovery obligations. Rather, it must conduct a diligent search, which involves developing a reasonably comprehensive search strategy"). During the meet and confer on August 16, 2017, Plaintiffs claimed they were unable to assess whether the most useful documents would be captured by search terms; Plaintiffs have had over a month to assess FCA's proposal and are equally situated to run the search terms against FCA's productions and propose

an alternative if the search terms are not acceptable—Plaintiffs have refused to do so.[9] Nor have Plaintiffs made any attempt to justify why their insistence on document-by-document review or, in its absence, nationwide cloned discovery, addresses the proportionality principle. *See Kleen Products LLC v. Packaging Corp. of Am.*, 2012 WL 4498465, at *10-11 (N.D. Ill. Sept. 28, 2012). Accordingly, given the already high number of hours FCA has spent reviewing government investigation documents, the effectiveness of the agreed-upon search terms, and Plaintiffs' refusal to provide any other proposal for modification of review over a month after the Court directed the parties to do so, FCA requests that the Court approve the use of ESI search terms on the government productions and not require FCA to review documents for custodians located in Business Centers in which no Plaintiff operates. *Id.* (holding response to interrogatory that would take 800 hours to accomplish was disproportional and "Plaintiffs do not address the Rule 26 proportionality principle . . . they do not explain how the value of the proposed discovery outweighs its burden.").

## III.     CONCLUSION

For the foregoing reasons, FCA respectfully requests that the Court grant its Motion to Limit the Scope of Discovery under Rule 26 by limiting FCA's review of the documents produced to the government to (1) those that hit on the parties' agreed-upon search terms and (2) were not from custodians located in Business Centers in which no Plaintiff operates.

Dated: August 17, 2017                    Respectfully submitted,

                                          */s/ Robert D. Cultice*
                                          *Of Counsel*:

---

[9] During the parties' meet and confers counsel for FCA also suggested that Plaintiffs review the documents that would not have been captured by the search terms and propose modifications to the search terms if they thought any were necessary. Plaintiffs have not provided any such proposals. Plaintiffs refusal to identify a specific objection to use of the search terms or to propose an alternative belies a good-faith argument that the search terms are deficient.

        Robert D. Cultice *(admitted pro hac vice)*
        Felicia H. Ellsworth *(admitted pro hac vice)*
        Caitlin W. Monahan *(admitted pro hac vice)*
        Michael J. Horrell *(admitted pro hac vice)*
        WILMER CUTLER PICKERING HALE AND DORR LLP
        60 State Street
        Boston, MA 02109
        (617) 526-6000
        robert.cultice@wilmerhale.com
        felicia.ellsworth@wilmerhale.com
        caitlin.monahan@wilmerhale.com
        michael.horrell@wilmerhale.com

        Randall L. Oyler
        Owen H. Smith
        Brandon C. Prosansky
        Katherine A. Neville
        BARACK FERRAZZANO KIRSCHBAUM &
        NAGELBERG LLP
        200 West Madison Street
        Suite 3900
        Chicago, IL 60606
        (318) 984-3100
        randall.oyler@bfkn.com
        owen.smith@bfkn.com
        brandon.prosansky@bfkn.com
        katie.neville@bfkn.com

        ***Attorneys for Defendant***

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that this document filed through the CM/ECF system will be served upon counsel for Plaintiffs via email on August 17, 2017.

*/s/ Robert D. Cultice*
Robert D. Cultice *(admitted pro hac vice)*
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000
Fax: (617) 526-5000
robert.cultice@wilmerhale.com