UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NAPLETON'S ARLINGTON HEIGHTS
MOTORS, INC., et al.,

    Plaintiffs,

    v.

FCA US LLC, a Delaware corporation,

    Defendant.

Case No. 1:16-cv-00403-VMK-SMF

Honorable Sheila Finnegan

## NON-PARTY RESPONDENTS' SUR-REPLY MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY AND IN SUPPORT OF RELIEF SOUGHT PURSUANT TO FED. R. CIV. P. 26 AND 45

### INTRODUCTION[1]

Our Opposition Memorandum demonstrates the factual and legal defects of Plaintiffs' Motion and of the Sherman and Dickens Subpoenas. Yet, rather than respond to these flaws, Plaintiffs' Reply points to shiny objects in a not-so-subtle attempt to distract attention from the shortcomings of Plaintiffs' Motion and the extreme undue burden imposed by the Subpoenas.[2]

Plaintiffs cannot hide from the facts that they botched a Court-ordered filing deadline, and do not state a valid justification establishing good cause to set aside their carelessness. *See* Pls.' Rep. at 5–6. The absurd excuse Plaintiffs offer to the Court for blowing the motions to

---

[1] As stated in our Opposition Memorandum (Dkt. 255), the non-parties are Skokie Motor Sales, Inc., doing business as Sherman Dodge Chrysler Jeep Ram, and David R. Dickens ("Sherman" and "Mr. Dickens;" collectively "the Non-Parties"). In addition, Plaintiffs' Motion to Compel is docketed at No. 235 ("Plaintiffs' Motion," cited "Pls.' Mot.") and their Reply is docketed at No. 261 ("Plaintiffs' Reply," cited "Pls.' Rep."). The Non-Parties' Sur-Reply Memorandum is respectfully submitted pursuant to the Court's February 28, 2018 Order (Dkt. 244), March 2, 2018 Order granting a Sur-Reply (Dkt. 248), and Local Rule 5.6. The Non-Parties do not seek to intervene in this action under Fed. R. Civ. P. 24 and appear solely to resolve Plaintiffs' Motion. *See* Dkt. 255 at 1, n.1 ("Opp. Mem.").

[2] Plaintiffs served two Subpoenas on the Non-Parties, a subpoena for documents served on Sherman on September 7, 2017, and a deposition subpoena served on Mr. Dickens on January 8, 2018 (individually the "Sherman Subpoena" and "Dickens Subpoena;" collectively the "Subpoenas"). *See* Opp. Mem. at 1, 5–7.

compel deadline—which Plaintiffs agreed to—is because "***Plaintiffs' counsel had pre-existing commitments[.]***" *See* Dkt. 203 (Dec. 20, 2017 Order suggesting the February 22d motions to compel deadline); Dkt. 206 at 6 (Jan. 23, 2018 Joint Status Report where Plaintiffs did not object to this deadline); Dkt. 214 (Jan. 25, 2018 Order setting deadline). That excuse defies credulity.

Nor can Plaintiffs argue that the excessive undue burden and significant expense which the Subpoenas seek to impose upon the Non-Parties is clearly outweighed by any incremental benefit Plaintiffs' might potentially obtain from the discovery sought. To see the fatal flaw in Plaintiffs' Motion and the Subpoenas, the Court need look no further than Plaintiffs' Reply and, specifically, the materials submitted as Exhibit B (Tom Segreti Declaration) and Exhibit C (Ray Czarnik Rough Dep. Tr.) thereto. That such discovery exists confirms that the documents and testimony contemplated by the Subpoenas is ***wholly cumulative of evidence which Plaintiffs already have***. At the least, the discovery is more appropriately directed to Defendant FCA. This needless duplication is exacerbated by the nearly 300,000 pages of documents already produced in this extensively-litigated action, and close to 50 witnesses noticed to be deposed before fact discovery closes. *See* Dkt. 206 at 1, 3–4 (Jan. 23, 2018 Joint Status Report); Dkt. 251 at 4–5 (Mar. 6, 2018 Joint Status Report). Any discovery from the Non-Parties is therefore superfluous, entirely unnecessary, and not proportional to the needs of this case. The Court should preclude Plaintiffs' unwarranted fishing expedition against the Non-Parties.

For the reasons stated herein and in our Opposition Memorandum, the Non-Parties respectfully ask the Court to dispose of Plaintiffs' Motion in one of two ways: (1) deny Plaintiffs' Motion because it violates a Court-ordered filing deadline and Plaintiffs offer no good cause justifying their sloppiness; and (2) enter an order pursuant to Rule 45 and/or Rule 26 quashing, modifying, or otherwise protecting the Non-Parties from the unduly burdensome

discovery sought by the Subpoenas. The specific relief which the Non-Parties respectfully request is described at the conclusion of our Opposition Memorandum, and is repeated below.

**ARGUMENT**

**I.    Plaintiffs' Motion is Untimely and Subjects the Non-Parties to Prejudice.**

    **A.**    <u>Plaintiffs' Motion Violates the Court's January 25th Order.</u>

Plaintiffs' Motion violates the February 22d motions to compel deadline set by the Court. *See* Dkt. 214 (Jan. 25, 2018 Order). On its face, Plaintiffs' Motion does not speak to the Motion's untimeliness, and Plaintiffs' Reply barely mentions the fact that they blew a deadline.[3] *See* Pls.' Rep. at 5–6. Rather than own up to their own error, Plaintiffs try desperately to concoct a tale suggesting that, somehow, the Non-Parties are to blame for Plaintiffs' poor diligence. *See* Pls.' Rep. at 5. This circuitous, blame-game reasoning is neither credible nor well-taken.

Plaintiffs' posturing aside, the Court need go no further to dispose of Plaintiffs' Motion. It is well settled law that a district court not only has broad discretion to set deadlines, but that those deadlines should be enforced. As we explain in our Opposition Memorandum (at 8–9), the Seventh Circuit consistently affirms the denial of filings on untimeliness grounds and has repeatedly admonished attorneys on the importance of deadlines. *See Reales v. Consolidated Rail Corp.*, 84 F.3d 993, 996 (7th Cir. 1996) (district courts "are entitled—indeed they must—enforce deadlines"); *Spears v. City of Indianapolis*, 74 F.3d 153, 157–58 (7th Cir. 1996) ("The flow of cases through a busy district court is aided, not hindered, by adherence to deadlines."); *Raymond v. Ameritech Corp.*, 442 F.3d 600, 605–06 (7th Cir. 2006) ("We live in a world of deadlines. … The practice of law is no exception.") (citing *Spears*, 74 F.3d at 157).

---

[3] Still before the Court is Plaintiffs' request for leave to file Plaintiffs' Motion. *See* Dkt. 237 (Plaintiffs' motion for leave); Dkt. 244 (Feb. 28, 2018 Order denying Plaintiffs' motion to reconsider motions to compel deadline and taking the motion for leave under advisement). However, Plaintiffs' motion for leave (Dkt. 237) does not speak to facts relating to the timing of Plaintiffs' Motion or why it was filed after the motions to compel deadline.

In comparison, each case Plaintiffs cite (Pls.' Rep. at 6–7) are inapposite and unpersuasive here. Before the courts in those cases were blown deadlines in the context of the liberal pleading standards of Fed. R. Civ. P. 12 concerning motions to dismiss, answers, counter-claims, and amended pleadings. None of Plaintiffs' cases considered the narrower standard applied to non-party discovery or the circumstances before this Court where a party's blown deadline causes prejudice to a non-party.

      **B.**     <u>Plaintiffs' Reply Does Not State Any Valid Justification for Violating the Court's January 25th Order.</u>

In permitting briefing on Plaintiffs' Motion, the Court requested that the Non-Parties and Plaintiffs address the facts relating to the timing of Plaintiffs' Motion and why it was filed after the February 22d motions to compel deadline. Our Opposition Memorandum sets forth the facts the Court asked for, as understood by the Non-Parties' counsel. *See* Opp. Mem. at 4, 8–9. On the other hand, Plaintiffs' Reply devotes just a single sentence to explaining the events after the meet and confer between counsel for the Non-Parties and Plaintiffs on February 20, 2018 leading up to Plaintiffs' untimely filing. *See* Pls.' Rep. at 5–6.

Incredibly, the only excuse Plaintiffs muster (Pls.' Rep. at 5–6) is that ***their lawyers "had pre-existing commitments" despite a team of lawyers "connected to this issue[.]"*** In other words, Plaintiffs' defense is that their attorneys were too busy to bother complying with the Court's February 22d motions to compel deadline. It bears emphasis that Plaintiffs are represented by two national plaintiffs-side law firms whose combined resources span a dozen offices and hundreds of attorneys.[4] Moreover, Plaintiffs cite no case for the proposition that a lawyer's "pre-existing commitments" is good cause to set aside blowing a filing deadline.

---

[4] Counsel for the Non-Parties reiterates their Opposition Memorandum (at 3, n.3) that the Non-Parties agreed to an expedited briefing schedule on Plaintiffs' Motion as a professional courtesy—including filing this Sur-Reply Memorandum in just one day.

Accordingly, Plaintiffs do not—and cannot—submit any legitimate justification meeting the good cause threshold because no such valid reason exists. The Court should not reward Plaintiffs' failure, especially as doing so prejudices the Non-Parties.

### C. The Non-Parties are Prejudiced by Plaintiffs' Untimely Filing.

Although Plaintiffs' Reply claims (at 6) that the Non-parties have not given evidence of the prejudice they suffer due to the untimeliness of Plaintiffs' Motion, such prejudice is self-evident. Nonetheless, the Non-Parties explain it here.

The Non-Parties have been unwillingly hauled before the Court to litigate Plaintiffs' untimely and meritless Motion, as well as to seek relief from Plaintiffs' extremely unduly burdensome Subpoenas. And at significant, and needless, expense. Neither Sherman nor Mr. Dickens has a financial interest in the outcome of this litigation, and stand to gain or lose nothing from it. *See* Opp. Mem. at 4. They are disinterested non-parties to this action. *Id.* Yet, all the while, Plaintiffs hurl explosive conspiracy theories about fraud at the Non-Parties, dragging their names through the mud in open court.[5] That Plaintiffs make such baseless accusations against a competing dealer borders on harassment for Plaintiffs' own commercial benefit.

In sum, the Court should not overlook or condone Plaintiffs' utter disregard for the deadline which the Court set. Excusing Plaintiffs' failure has, and further will, subject the Non-Parties to prejudice. Plaintiffs' Motion should be denied.

## II. The Undue Burden and Wholly Cumulative Nature of the Subpoenas Far Outweigh Any Benefit to Plaintiffs.

Plaintiffs' arguments on the merits fare no better. Initially, Plaintiffs continue to invoke the wrong legal standard governing non-party discovery. *See* Pls.' Mot. at 5; Pls.' Rep. at 1. Even if the liberal discovery standard among parties applied here (it does not), discovery is not

---

[5] Despite Plaintiffs' bluster that "Sherman is not an innocent non-party" (Pls.' Rep. at 4), Plaintiffs have not moved to add Sherman or any other FCA dealer as a named defendant in this action

without limits. *See Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 183 (N.D. Ill. 2013). It is settled law that because "[n]on-party status 'is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue[,] … courts give special weight to the unwanted burdens thrust upon non-parties when balancing competing needs.'" *Tresona Multimedia, LLC v. Legg*, No. 15-C-4834, 2015 WL 4911093, at *2 (N.D.Ill. Aug. 17, 2015) (citing *Parker*, 291 F.R.D. at 188) (internal citation and quotation omitted). Plaintiffs cannot dispute this basic principle of discovery practice: non-parties have different obligations and burdens than do parties. *See* Opp. Mem. at 2, 7–8.

      **A.**    <u>Plaintiffs' Reply Confirms the Sherman and Dickens Subpoenas are Unduly Burdensome, Grossly Overbroad, and Wholly Cumulative of Other Discovery.</u>

In determining whether a subpoena is unduly burdensome, courts weigh "the person's status as a non-party, the relevance of the discovery sought, the subpoenaing party's need for the documents, the breadth of the request and the burden imposed on the subpoenaed party." *Tresona Multimedia*, 2015 WL 4911093, at *2. *See also Northwestern Mem'l Hosp. v. Ashcroft*, 362 F. 35 923, 927 (7th Cir. 2004) (analysis must determine if "the burden of compliance with [the subpoena] would exceed the benefit of production of the material sought by it.").

Here, Sherman's and Mr. Dickens' non-party status is entitled to significant weight. *See id.* at *2. As our Opposition Memorandum demonstrates (at 5–7, 9–12), the Sherman Subpoena is grossly overbroad and imposes an excessive undue burden on Sherman.[6] On the other side of the scale, Plaintiffs' claim that the marginal discovery sought through the Sherman Subpoena is somehow relevant to damages issues. *See* Pls.' Mot. at 2, 6; Pls.' Rep. at 3–4.

---

[6] Still, Sherman has produced documents sufficient to satisfy any potential need Plaintiffs may have, and at the Court's instruction (*see* Dkt. 244), Sherman and Mr. Dickens have continued to try to negotiate responses to the Subpoenas that are appropriately tailored and less burdensome. Plaintiffs' rejected the compromises offered. *See* Opp. Mem. at 5–7, 13. The Non-Parties remain willing to meet and confer over an acceptable compromise while the Court considers the briefing on Plaintiffs' Motion.

The Court rightly foresaw the potential for undue burden when it allowed Plaintiffs to serve the Sherman Subpoena. *See* Dkt. 174 at 4–5 (Sept. 5, 2017 Order). The Court did not grant Plaintiffs *carte blanche* to pursue every scintilla of evidence loosely described in the Sherman Subpoena, or to demand that the Non-Parties fully comply with the Sherman Subpoena without limitation. Dkt. 174 at 4–5. Quite the opposite, the Court was skeptical that "***at least some of these requests may be overbroad and unduly burdensome, particularly in their demands for 'all documents' rather than documents 'sufficient to show' (e.g., Nos. 1, 2, and 4)***, [but] the Court is unable to assess this without more information." Dkt. 174 at 4–5. More information is now before the Court, and it proves the Court's suspicion was correct.

Plaintiffs' Reply does not contest that the Sherman Subpoena ***demands that Sherman respond to 676 separate RFPs***. Their silence is tacit acknowledgment of this glaring deficiency. The fatal blow to Plaintiffs' undue burden argument with respect to the Sherman Subpoena is their suggestion (Pls.' Rep. at 3–4) that Sherman search for "records documenting the incentives ***paid by FCA***" including "a representative sample of … credit memos and account statements[.]" Plaintiffs' own proposal—almost to the very word—acknowledges that such materials and information are within FCA's possession, and that what Plaintiffs seek are simply Sherman's copies or versions of FCA materials. The Sherman Subpoena is thus unduly burdensome and wholly cumulative of discovery in the record or which ought to be directed to FCA.

The same logic applies to the Dickens Subpoena. Plaintiffs' Reply (at 2–3) states they intend to seek testimony from Mr. Dickens about "***requests from FCA*** to report false sales, and the specific incentive benefits ***provided by FCA*** in exchange." Assuming, *arguendo*, that Plaintiffs' allegations are true, current and/or former FCA personnel know what requests they made of Sherman and the benefits provided in turn. The needless duplicity of the Dickens

7

Subpoena is also apparent from Plaintiffs' own representations to the Court. In seeking leave to take 25 depositions, Plaintiffs stated they need testimonial evidence "that *FCA* discriminated against [Plaintiffs]" including how "*FCA* rewarded [Plaintiffs'] competitors" for purportedly participating in the alleged conduct and that "multiple *FCA representatives* bribed multiple dealers…and paid the dealers off[.]" *See* Dkt. 220 at 2–3 (Feb. 2, 2018 Plaintiffs' Status Report). Plaintiffs' representations focus on current and/or former FCA employees, and have nothing to do with Sherman or Mr. Dickens. Hence, by their own admission, Plaintiffs seek testimonial evidence that resides exclusively with current or former employees of FCA or Plaintiffs themselves. Plaintiffs also told the Court they "have no interest in taking more depositions than they need to prove their case" and "*will endeavor to obtain some of the necessary evidence by declaration*." *Id.* at 3. It is unfortunate that Plaintiffs made this representation to the Court and subsequently rejected the Non-Parties' appropriately tailored compromises to respond to the Sherman and Dickens Subpoenas through declarations.

Furthermore, the wholly cumulative nature of the Dickens Subpoena is confirmed by Plaintiffs' Reply (at 1–3) and Reply Exhibit B (Tom Segreti Declaration) and Exhibit C (Ray Czarnik Rough Dep. Tr. (excerpt)). Through this discovery, Plaintiffs already have the testimonial evidence sought from Mr. Dickens without even deposing him. In fact, counsel for the Non-Parties' identified Mr. Segreti to Plaintiffs' counsel as likely having discoverable information because he was Sherman's General Manager at the time Plaintiffs' claim the alleged FCA false sales reporting practices began.

This analysis is dispositive, and tips the scale of the undue burden balancing test in the Non-Parties' favor. Both Subpoenas impose an undue burden and are wholly cumulative of evidence already in the record in this action. Plaintiffs' Reply shows that Plaintiffs can obtain—

8

and as established by Plaintiffs' Reply and Exhibits B and C thereto, **have obtained**—the discovery sought from the Non-Parties through other less burdensome means. Accordingly, because the Non-Parties demonstrate that the Subpoenas are nothing more than a fishing expedition for wholly cumulative discovery, the undue burden imposed upon the Non-Parties clearly outweighs any marginal benefit Plaintiffs might obtain.

> **B.** Plaintiffs' Reply Does Not Establish that Mr. Dickens has Highly Relevant Personal Knowledge.

For the wrong reasons, Plaintiffs' Reply focuses on Reply Exhibit B (Tom Segreti Declaration) and Exhibit C (Ray Czarnik Rough Dep. Tr. (excerpt)), as well as the Exhibit A (draft Dickens Declaration). None establish that Mr. Dickens has "highly relevant" personal knowledge or, if he does, that he specifically recalls events potentially relevant to Plaintiffs' allegations which happened over three years ago. *See CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 993–94 (7th Cir. 2002). As we demonstrate, *supra*, Plaintiffs already have testimonial evidence from Mr. Segreti (Sherman's General Manager at the start of the alleged false sales reporting practice) and Ray Czarnik (a Napleton's General Manager and part owner of the Napleton's business) about Sherman and Mr. Dickens. Regardless of any bias and motive of Mr. Czarnik to tell a self-serving story, and that of Mr. Segreti—whom Mr. Dickens fired from Sherman in mid-2014—to be less than forthcoming in his Declaration, that this evidence exists cuts-off any marginal need Plaintiffs may have had to take Mr. Dickens' deposition.

Plaintiffs therefore still have not established that Mr. Dickens has highly relevant personal knowledge justifying that he be deposed.

## CONCLUSION

For the reasons stated herein and in our Opposition Memorandum, the Non-Parties respectfully request that the Court deny Plaintiffs' Motion because it is untimely under the

9

Court's January 25th Order. Further, the Court should enter an order pursuant to either Rule 45 or Rule 26 quashing, modifying, or otherwise protecting the Non-Parties from Plaintiffs' unduly burdensome discovery requests through the following less burdensome and appropriately tailored methods:

- Order Sherman to submit a declaration authenticating its document production for use at trial;

- Order Mr. Dickens to submit a declaration in lieu of sitting for deposition concerning his personal knowledge of facts which may be relevant to Plaintiffs' claims; and

- Order Plaintiffs to cease pursuing the unduly burdensome discovery sought by the Sherman and Dickens Subpoenas.

Such a resolution adopts the compromises the Non-Parties' offered in the meet and confer process to satisfy the Subpoenas and resolve Plaintiffs' Motion, and appropriately balances any potential need Plaintiffs may have for evidence from the Non-Parties, while mitigating the undue burden imposed.

March 13, 2018

Respectfully Submitted,

  /s/ Tyrone C. Fahner
Tyrone C. Fahner
Joshua A. Faucette
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600

*Counsel for Non-Parties Skokie Motor Sales, Inc., d/b/a/ Sherman Dodge Chrysler Jeep Ram, & David R. Dickens*

## CERTIFICATE OF SERVICE

I certify that on March 13, 2018, I caused a true and correct copy of the foregoing **NON-PARTY RESPONDENTS' SUR-REPLY MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY AND IN SUPPORT OF RELIEF SOUGHT PURSUANT TO FED. R. CIV. P. 26 AND 45** to be served through ECF notification upon all counsel of record.

    /s/ Tyrone C. Fahner
Tyrone C. Fahner

*One of the Attorneys for Non-Parties Skokie Motor Sales, Inc., d/b/a/ Sherman Dodge Chrysler Jeep Ram, & David R. Dickens*