**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **NAPLETON'S ARLINGTON HEIGHTS MOTORS, INC.**, *et al*. ) ) ) | |
| Plaintiffs, ) ) | Case No. 16 C 403 |
| v. ) ) | Judge Virginia M. Kendall |
| **FCA US LLC, a Delaware, corporation,** *et al.*, ) ) ) | Magistrate Judge Sheila Finnegan |
| Defendants. ) | |

### ORDER

Now pending before the Court are (1) Defendant FCA's Motion to Compel the production of certain text messages and the scheduling of certain depositions (Doc. 231); and (2) Plaintiffs' Motion to Compel supplemental responses to interrogatory Nos. 1-4, 7, and 12, and the production of certain metadata relating to a spreadsheet that FCA produced in discovery, as well as any similar spreadsheets (Doc. 233). Having considered the parties' motions and related submissions (Docs. 242, 243) and their March 6, 2018 Joint Status Report ("JSR") (Doc. 251), and having heard oral argument on February 28, 2018, the Court rules as follows:

1. **FCA's Motion to Compel Production of Text Messages:** FCA's motion to compel first seeks production of the text messages of certain agreed upon custodians from whom Plaintiffs would produce electronically stored information ("ESI"). FCA complains that with less than two months left for fact discovery, and only upon inquiry from FCA in light of a dearth of text messages produced from Plaintiffs' agreed upon custodians, Plaintiffs informed FCA in mid-February 2018 that Plaintiffs did not collect devices or review text messages from all agreed upon custodians. In addition, Plaintiffs

refused at that time to identify the custodians from whom they did and did not collect and/or review text messages for responsive documents. (Doc. 231, at 2-3).

Plaintiffs do not dispute that the custodians at issue were agreed upon, or that the ESI required to be collected from all agreed upon custodians included their text messages. Instead, Plaintiffs originally argued in response to FCA's motion that they conducted "custodial interviews" to determine the custodians from whom they should collect text messages, and then "collected text messages from devices that were likely to contain relevant information based on those interviews." (Doc. 243, at 1). Plaintiffs then corrected that position in the parties' March 6, 2018 JSR, disclosing that "[t]here was no general collection of, or searches run over, text messages from the cell phones of plaintiffs' agreed upon custodians." (Doc. 251-2).

Given this revelation, "Plaintiffs have agreed to withdraw their objection to FCA's motion to compel, and to collect and review, without the use of search terms, available text messages from the relevant time period for the agreed-upon custodians." (Doc. 251, at 6). But FCA has in turn advised that it now understands "there are only six, and perhaps fewer, custodians who even still have text messages available for counsel to collect and review," and "FCA reserves all rights to seek appropriate relief in light of these developments." (*Id.* at 8). In any event, given Plaintiffs' withdrawal of their opposition, FCA's pending motion to compel Plaintiffs' production of their agreed-upon custodians' text messages is granted, except as to Ms. Dawn McCarthy and Ms. Barb Riordan, whose text messages FCA has agreed not to seek. (*Id*).

**2.** **FCA's Motion to Compel Depositions:** FCA's motion also seeks to compel the deposition of one fact witness (Mr. Pete Grinnell) and a separate Rule 30(b)(6) deposition of each of the seven Plaintiff dealerships. (Doc. 231, at 8-9). As to Mr. Grinnell,

the parties' March 6 JSR has since confirmed that they "expect to reach agreement" regarding the scheduling of Mr. Grinnell's deposition. (Doc. 251, at 6). Accordingly, FCA's motion is granted as to that deposition, and the parties are directed to finalize their arrangements for Mr. Grinnell's deposition (if they have not already done so) by March 21, 2018, or file a JSR by that date explaining the impediment to its scheduling.

Regarding FCA's request for a separate Rule 30(b)(6) deposition of each of the seven Plaintiff dealerships, Plaintiffs' counsel stated during the February 28th hearing that they did not oppose this request but only FCA's position that each deposition could last up to 7 hours. (Doc. 260, at 19). The parties' March 6 JSR explains that Plaintiffs intend to prepare one individual (Mr. Bruce Etheridge) to testify as the corporate representative for each of the seven Plaintiffs, and have agreed to a fourteen-hour deposition of that representative over two days. (Doc. 251, at 1-3). FCA expresses concern about a single representative's ability to testify for all seven Plaintiffs, particularly when Mr. Etheridge is employed by the "Napleton Automotive Group" and not any of the Plaintiff dealerships – "a point Plaintiffs cited in claiming they lacked custody or control over Mr. Etheridge's text messages in response to FCA's motion to compel." (*Id.* at 3). FCA is nevertheless "willing to provisionally agree to Plaintiffs' proposal that the 30(b)(6) depositions of Plaintiffs be limited to two days in total, but reserves the right to request additional time if necessary, including based on inadequate preparation of the witness." (*Id.*).

Accordingly, FCA's motion to compel is granted insofar as Plaintiffs are required to produce Mr. Etheridge (or some other corporate representative) on behalf of each of the Plaintiffs for Rule 30(b)(6) depositions, the collective of which may last up to fourteen hours over two days. In the event Plaintiffs' designee is unable to speak to the 30(b)(6) topics that FCA has served and/or Plaintiffs opt to designate additional representatives,

3

the parties may raise any remaining disputed issues regarding the length of Plaintiffs' 30(b)(6) depositions after completing all necessary meet and confer efforts.

3. **Plaintiffs' Request for a 14-Hour 30(b)(6) Deposition of FCA:** In responding to FCA's motion to compel a separate Rule 30(b)(6) deposition of each Plaintiff, Plaintiffs challenged FCA's insistence on limiting the 30(b)(6) deposition of its corporate representatives (FCA says it will produce 2-3 representatives) to just seven hours. (Doc. 251, at 1-2, 4). Plaintiffs seek a fourteen-hour deposition of FCA's representatives, but FCA contends it is "a single corporate entity, of which Plaintiffs are entitled to a single 30(b)(6) deposition of seven hours," and will agree, at most, to a nine-hour deposition. (*Id.* at 4).

Although Plaintiffs did not formally move to compel on this issue, the Court notes the Committee Comment to the 2000 amendment of Rule 30 instituting a seven-hour deposition limit, observing that "the deposition of each person designated under Rule 30(b)(6) should be considered a separate deposition." Fed. R. Civ. P. 30(d) cmt. (2000). Thus, while the Committee Comment to the 1993 amendment to Rule 30 confirms that a Rule 30(b)(6) deposition is "treated as a single deposition even though more than one person may be designated to testify," that is solely for purposes of the limit of ten depositions, whereas the 2000 Committee Comment makes clear that each representative is subject to a seven-hour deposition, although that "presumptive duration may be extended, or otherwise altered" by agreement or court order. *Id.*; Fed. R. Civ. P. 30(a) cmt. (1993). Here, although twenty-one hours would be excessive, Plaintiffs' request for a fourteen-hour deposition of FCA's 2-3 representatives appears reasonable.

4. **Plaintiffs' Motion to Compel Interrogatory Answers:** Having resolved FCA's motion to compel, the Court now turns to Plaintiffs' motion to compel, which first

4

seeks to compel FCA to provide supplemental answers to Interrogatory Nos. 1, 3, 4, 7 and 12. This motion is granted in part and denied in part as follows:

    a.    **Interrogatory Nos. 1, 3, and 4:**  Each of these interrogatories seeks information regarding the "false sales reporting" scheme that Plaintiffs allege:  No. 1 asks FCA to identify "all instances" in which it was involved with "the submission of False Sales Reports by FCA Dealers"; No. 3 asks FCA to identify all employees and other representatives who "asked other FCA employees to solicit False Sales Reports" or were "aware that FCA employees were soliciting False Sales Reports from FCA dealers"; and No. 4 asks FCA to identify "all FCA dealers who objected to, complained about, or declined to comply with requests by FCA to submit False Sales Reports." (Doc. 233, at 3-4). All three requests pertain to the time period 1/1/2011 to 12/31/2016. (*Id.*).

    FCA objects that these interrogatories are overbroad and unduly burdensome insofar as they require FCA to "undertake an exhaustive, company-wide investigation." (Doc. 242, at 2). FCA also claims that it "fully answered the Interrogatories by providing Plaintiffs with the names of individuals who, to FCA's knowledge, have information responsive to the interrogatories and directing Plaintiffs to previously-produced documents containing information responsive to the Interrogatories," and that "much of the information sought in the Interrogatories can be obtained through the more convenient, less burdensome, and less expensive means of oral depositions of the individuals identified in the responses." (*Id.* at 1-2). More than this, FCA argues, "would stretch far beyond the 'reasonable investigation' that FCA is obligated to—and in fact did—undertake." (*Id.*).

    The Court agrees that Rule Fed. R. Civ. P. 26(g) requires the answering person's or party's best "knowledge, information, and belief formed after a reasonable inquiry," not

5

an exhaustive inquiry. The Committee Comments to this Rule similarly explain that "[t]he rule simply requires that the attorney make a reasonable inquiry into the factual basis of his response," and that this duty "is satisfied if the investigation undertaken by the attorney and the conclusions drawn therefrom are reasonable under the circumstances." Fed. R. Civ. P. 26(g) cmt. (1983). The Court also agrees that Plaintiffs' Interrogatory No. 1 is unduly burdensome in seeking "all instances" of alleged false sales reporting over a six-year period, particularly when Plaintiffs themselves have identified in the discovery FCA has produced "hundreds" of alleged "fictitious" car sales (in New Vehicle Delivery Reports) that were submitted and later unwound by Competing Dealers and/or FCA, and which Plaintiffs believe "evidences the posting of the false sales reports." (Doc. 136, at 2, 10). To the extent Plaintiffs would have FCA's interrogatory answer catalogue each of these transactions, Plaintiffs appear to have similar "relative access" to the discovery needed to do so, thus militating against putting FCA to the task. *See* Fed. R. Civ. P. 26(b) (requiring consideration of "the parties' relative access to relevant information").

The Court also agrees that Interrogatories 1, 3, and 4 are better suited to deposition discovery. After all, even Plaintiffs have argued that "[m]uch of the key evidence in this case is likely to come in as oral testimony from FCA employees, former employees, and third parties" (Doc. 206, at 3), and the first topic in Plaintiffs' 30(b)(6) deposition notice to FCA largely tracks the inquiries made in these three interrogatories. (Doc. 251-1, seeking testimony regarding all instances of false sales reporting and the FCA employees and dealers involved). Conversely, the Court finds Plaintiffs' reason for insisting that the information be provided *also* in a "verified response" -- "so we can just move on in trial to the damages and not have to be arguing about who did it" – unpersuasive. (Doc. 260, at 71). The discovery rules afford a plaintiff access to

6

information "relevant to any party's claim or defense," Fed. R. Civ. P. 26(b)(1), they do not guaranty a defendant's sworn concession of liability.

Plaintiffs' motion to compel supplemental answers to Interrogatory Nos. 1, 3, and 4 is therefore denied, but without prejudice to Plaintiffs renewing the motion after deposition discovery is completed and following an opportunity for FCA to supplement its answers to the extent deposition discovery does not provide the information sought, as required by Fed. R. Civ. P. 26(e).  But in so ruling, the Court pauses to mention its reliance upon two representations that FCA made in response to Plaintiffs' motion.  First, FCA's counsel represented that FCA claims no privilege or work product protection for factual information responsive to these interrogatories.  (Doc. 260, at 54-55).  And second, FCA's counsel committed that FCA will supplement its interrogatory answers to the extent additional responsive information becomes known, whether through FCA's "attorney-led investigation" or "other ongoing processes."  (*Id.* at 55-56).[1]  The Court places particular weight on this latter representation, as it draws no distinction between information in the "possession and control" of FCA as "the defendant here" (as counsel phrased it) and information in the possession and control of its counsel in this case, in any government or internal investigation, or otherwise.  (*Id.*).

Accordingly, as required by Rule 26(e), FCA is directed to supplement its interrogatory answers "in a timely manner" based on information known to it, whether that information is known to FCA personnel or any of its lawyers.  Fed. R. Civ. P. 26(e)(1)(A). And to the extent such information includes the names of additional witnesses or

---

[1]   FCA reportedly has separate counsel (from a different law firm) representing it in the government investigation.  That outside law firm has conducted an investigation that is ongoing. FCA's counsel emphasized during the February 28th hearing that FCA is asserting work product protection and the attorney/client privilege over that lawyer investigation but not the facts learned from it.  (*Id.* at 54-55).

7

dealerships responsive to Interrogatories 3 and 4, the Court urges FCA to provide such supplemental answers sufficiently soon to allow Plaintiffs to pursue the information in depositions, just as FCA argues they should do. Relatedly, while the instant dispute pertains to interrogatories, the Court notes FCA's assertion that it has directed Plaintiffs "to previously-produced documents containing information responsive to the Interrogatories pursuant to Fed. R. Civ. P. 33(d)." (Doc. 242, at 1). To the extent such documents were produced in response to document requests, and FCA is also aware of privileged or work product materials that contain similar responsive information, the Court also reminds FCA of its obligation under Fed. R. Civ. P. 34(b)(2)(C) to "state whether any responsive materials are being withheld on the basis of that objection." *See also* cmt. to 2015 Amendment ("The producing party does not need to provide a detailed description or log of all documents withheld, but does need to alert other parties to the fact that documents have been withheld and thereby facilitate an informed discussion of the objection.").

    **b.**    **Interrogatory No. 7:** Plaintiffs' Interrogatory No. 7 purports to seek information concerning (a) FCA's actual or potential incremental profit per new vehicle sale and (b) identification of documents concerning an FCA dealer's actual or potential incremental profit per new vehicle sale.[2] FCA objects that the interrogatory "seeks

---

[2] The interrogatory is difficult to decipher, stating:

> State FCA's estimate of actual or potential incremental profit to an FCA dealership of making an additional new vehicle sale, including but not limited to profits for lost retail sales of vehicles and related finance and insurance profits, lost profits from the resale of used vehicles which would have been taken in trade on the lost vehicle sales, lost potential sales to future customers who would have been either repeat customers or customers referred to Plaintiffs by customers, lost profits for accessories ordered by customers from the Plaintiffs and service charges to install those accessories, lost profits from warranty and non-warranty sales of service and parts for vehicle owners who

8

information that will be the subject of expert testimony and is therefore premature." (Doc. 242, at 4, citing *U.S. Tyson v. Amerigroup Ill., Inc.*, 230 F.R.D. 538, 544-45 (N.D. Ill. 2015)).

During the February 28 hearing, Plaintiffs' counsel agreed to defer part (a) of the interrogatory (the portion seeking FCA's actual or potential incremental profit per new vehicle sale) until expert discovery, but pressed the portion seeking identification of documents "concerning" an FCA dealership's actual or potential incremental profit per new vehicle sale. (Doc. 260, at 72-73). According to Plaintiffs' counsel, this was "just a simple request for a document." (*Id.*). But counsel's explanation of its meaning demonstrated that the request is anything but simple. When asked how Plaintiffs would respond if asked the same question (based on their interactions with FCA and new vehicle sales), their counsel explained "it varies. Different people give different answers. . . . it depends on the car that was sold. There's different profits on a car. . . . there's also -- it depends if it was a financed car or not." (*Id.*). When the Court then questioned how FCA could respond simply to the request (covering a 6-year period), Plaintiffs said they indicated in the "meet and confer" with FCA (but not in the motion to compel filed with this Court) that they were only seeking "one or two or three examples" rather than "every example." (Doc. 260, at 72-73).

---

tend to have their vehicles serviced at the same dealership where the vehicle was purchased, and lost incentive benefits, including lost VGP incentives and co-op advertising payments. Also identify any Documents concerning the actual or potential incremental profit to an FCA dealership of making an additional new vehicle sale, as expressed in internal FCA communications, in communications with dealers or prospective dealers, in communications with other third parties, as relied on or not objected to by FCA in any litigation matters, or for any other purpose.

(Doc. 33, at 4). One of FCA's objections was that this request was so vague and ambiguous as to be incomprehensible.

9

The Court declines to enforce such a vague interrogatory, both because its scope is impermissibly unclear and, relatedly, because any "examples" identified in response could only create confusion regarding their significance. Accordingly, Plaintiffs' motion to compel a supplemental answer to Interrogatory No. 7 is denied, but without prejudice to Plaintiffs inquiring at a Rule 30(b)(6) or other deposition whether and how FCA regularly maintains any documents reflecting the actual or potential incremental profit to an FCA dealer per new vehicle sale, which Plaintiffs may then request, to the extent such documents are readily identified and accessible.

      c.      **Interrogatory No. 12:**  Plaintiffs' interrogatory No. 12 asks FCA to identify any inaccurate statements in a two-page, single spaced document created by one of the Plaintiffs alleging certain misconduct by various FCA employees, and to "explain how and why such statements are not accurate."  (Doc. 233, at 4; Doc. 257).[3]  FCA objects generally that the interrogatory prematurely seeks a contention while fact discovery is ongoing.  (Doc. 242, at 3).  The Court agrees, particularly given that Plaintiffs have already sought to depose two of the three employees named in the interrogatory, Messrs. Ralph Jones and Phil Scroggin (Doc. 220), during which Plaintiffs will have ample opportunity to inquire about the conduct alleged in the document in question.  Plaintiffs have also included several related topics in their Rule 30(b)(6) deposition notice (Doc. 252-1), which will also provide opportunity to inquire about such conduct.

---

[3]    The interrogatory reads as follows:

> For all statements in Exhibit A referring to actions or communications by Ralph Jones, Phil Scroggins, Tim Duncan, or FCA, identify any of these statements that you contend is not accurate and explain how and why such statements are not accurate.

(Doc. 233, at 4).

10

Plaintiffs' motion to compel a supplemental answer to Interrogatory No. 12 is therefore denied. But this ruling is again without prejudice to Plaintiffs renewing the motion after deposition discovery is completed and following an opportunity for FCA to supplement its answers to the extent deposition discovery does not provide the information sought, as required by Fed. R. Civ. P. 26(e).

5. **Plaintiffs' Motion to Compel Production of Additional "Forensic Collection Documents":** Finally, Plaintiffs also move to compel FCA to produce the metadata relating to an Excel spreadsheet that FCA created and produced, listing certain text messages that were deleted by one of its ESI custodians (FCA Midwest Business Center employee Ralph Jones) but nevertheless recovered and produced by FCA. (Doc. 233, at 6-7). "Plaintiffs also requested all drafts and versions of the spreadsheet with metadata intact, and all other forensic collection spreadsheets showing the deletion of text messages related to false sales reporting." (*Id.* at 8).

FCA argues that it has properly produced all metadata for the text messages required by the parties' ESI protocol, and that the metadata for the spreadsheet, as well as any similar spreadsheets and their metadata, are not required under the ESI protocol and constitute privileged information and/or protected work product. (Doc. 242, at 5-7). But as an accommodation, FCA agreed to provide Plaintiffs with an explanation of the information in the "Deleted" column in the spreadsheet (about which Plaintiffs' expressed some confusion), and to re-review its text message production from certain custodians (searching manually rather than using agreed search terms) to confirm that all responsive text messages have been produced and produce any that were not but should have been. (Doc. 260, at 65, 68).

Regardless of whether the spreadsheet metadata that Plaintiffs seek is privileged or work product, or whether any other "forensic collection spreadsheets" or their metadata are similarly protected, the Court sees no reason for the "discovery on discovery" that Plaintiffs seek. Plaintiffs have not demonstrated that FCA failed to comply with any of Plaintiffs' discovery requests seeking text messages, improperly deleted any responsive text messages, or failed or refused to produce any responsive text messages (as opposed to Plaintiffs, whose efforts on this front have been seriously wanting), and have thus provided no basis for a motion to compel any information about text messages. Nor have Plaintiffs pointed to any document request seeking the "forensic collection spreadsheets" they now seek. Nor would the Court be inclined to compel either side to produce any documents in response to such a request, in any event. Plaintiffs' motion to compel FCA to produce additional information regarding deleted text messages is therefore denied, as is Plaintiffs' oral request during the hearing for a deposition to inquire about the spreadsheet in question, especially in light of FCA's offer to explain it informally. (*Id.*).

## CONCLUSION

For the foregoing reasons, Defendant FCA's Motion to Compel (Doc. 231) and Plaintiffs' Motion to Compel (Doc. 233) are both granted in part and denied in part for the reasons and on the terms outlined above.

ENTER:

Dated: March 15, 2018

_____
SHEILA FINNEGAN
United States Magistrate Judge