**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| NAPLETON'S ARLINGTON HEIGHTS MOTORS, INC. f/k/a NAPLETON'S PALATINE MOTORS, INC. d/b/a NAPLETON'S ARLINGTON HEIGHTS CHRYSLER DODGE JEEP RAM, an Illinois corporation; NAPLETON'S RIVER OAKS MOTORS, INC. d/b/a NAPLETON'S RIVER OAKS CHRYSLER DODGE JEEP RAM, an Illinois corporation; CLERMONT MOTORS, LLC d/b/a NAPLETON'S CLERMONT CHRYSLER DODGE JEEP RAM, an Illinois limited liability company; NAPLETON'S NORTH PALM AUTO PARK, INC. d/b/a NAPLETON'S NORTHLAKE CHRYSLER DODGE JEEP RAM, an Illinois corporation; NAPLETON ENTERPRISES, LLC d/b/a NAPLETON'S SOUTH ORLANDO CHRYSLER DODGE JEEP RAM, an Illinois limited liability company; NAPLETON'S MID RIVERS MOTORS, INC. d/b/a NAPLETON'S MID RIVERS CHRYSLER DODGE JEEP RAM, an Illinois corporation; NAPLETON'S ELLWOOD MOTORS, INC. d/b/a NAPLETON'S ELLWOOD CHRYSLER DODGE JEEP RAM, an Illinois corporation,<br><br>        Plaintiffs,<br><br>    v.<br><br>FCA US LLC, a Delaware corporation,<br><br>        Defendant. | Case No. 1:16-cv-00403-VMK-SMF |

**FCA US LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS COUNTS IV AND V OF PLAINTIFFS' SECOND AMENDED COMPLAINT**

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

SUMMARY OF ALLEGATIONS ........................................................................................2

LEGAL STANDARD ............................................................................................................3

ARGUMENT .........................................................................................................................3

I.      PLAINTIFFS LACK STANDING TO BRING A RICO CLAIM ................................3

    A.   Plaintiffs Have Not Cured Their Earlier Lack Of Standing ............................. 4

    B.   Plaintiffs Have Not Pleaded Specific Causation As To Any Individual Plaintiff ............ 8

II.     PLAINTIFFS DO NOT ALLEGE SUFFICIENT FACTS TO PLEAD THE ELEMENTS OF A RICO CLAIM ....................................................................11

    A.   Plaintiffs Do Not Adequately Allege The Existence Of An "Association In Fact" Enterprise ................................................................................... 12

        1.   The "Enterprise" Is Not Sufficiently Distinct from FCA ....................................... 12

        2.   The "Enterprise" Lacks A Common Purpose ........................................................ 15

        3.   The "Enterprise" Is Not Sufficiently Distinct From The Alleged Racketeering Activity .......................................................................................... 17

    B.   Plaintiffs Do Not Adequately Allege That FCA "Conducted" The Alleged Enterprise's Affairs ............................................................................. 19

    C.   Plaintiffs Do Not Adequately Allege Either A "Pattern" Or "Racketeering Activity" As Required By RICO .................................................................. 22

III.    Count V Fails Along With Count IV And The "Provisional" Repleading of Counts VI, VII, XIII, and XIV Is Improper ................................................................23

CONCLUSION ....................................................................................................................24

i

## TABLE OF AUTHORITIES

**CASES**                                                         **PAGE(S)**

*Ackerman v. Nw. Mut. Life Ins. Co.*,
172 F.3d 467 (7th Cir. 1999) ...................................................9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...............................................................3

*Bachman v. Bear, Stearns & Co., Inc.*,
178 F.3d 930 (7th Cir. 1999) ...........................................13, 17

*Baker v. IBP, Inc.*,
357 F.3d 685 (7th Cir. 2004) ..........................13, 14, 16, 17, 21

*Bastian v. Petren Res. Corp.*,
892 F.2d 680, 683 (7th Cir. 1990) ......................................24

*Bell Atlantic Co. v. Twombly*,
550 U.S. 544 (2007).............................................................3

*Bressner v. Ambroziak*,
379 F.3d 478 (7th Cir. 2004) .............................................23

*Bucklew v. Hawkins, Ash, Baptie & Co.*,
329 F.3d 923 (7th Cir. 2003) .............................................13

*Cement-Lock v. Gas Tech. Inst.*,
2005 WL 2420374 (N.D. Ill. Sept. 30, 2005) ..................17, 19

*Coleman v. City of Peoria*,
2016 WL 5497363, at *2 (C.D. Ill. Sept. 27, 2016)................24

*Crichton v. Golden Rule Ins. Co.*,
576 F.3d 392 (7th Cir. 2009) .............................................21

*D.M. Robinson Chiropractic, S.C. v. Encompass Ins. Co. of Am.*,
2013 WL 1286696 (N.D. Ill. Mar. 28, 2013)...................17, 18

*DeGuelle v. Camilli*,
664 F.3d 192 (7th Cir. 2011) .............................................22

*Fidelity Nat. Title Ins. Co. of New York v. Intercounty Nat. Title Ins. Co.*,
412 F.3d 745 (7th Cir. 2005) ...............................................3

*Fitzgerald v. Chrysler*,
   116 F.3d 225 (7th Cir. 1997) ........................................................11, 13, 14

*Gamboa v. Velez*,
   457 F.3d 703 (7th Cir. 2006) ...............................................................11, 12

*Goren v. New Vision Int'l, Inc.*,
   156 F.3d 721 (7th Cir. 1998) ....................................................................9

*Guaranteed Rate, Inc. v. Barr*,
   912 F. Supp. 2d 671 (N.D. Ill. 2012) ...............................................1, 3, 15

*H.J. Inc. v. Nw. Bell Tel. Co.*,
   492 U.S. 229 (1989) ................................................................................22

*Jennings v. Auto Meter Prods. Inc*,
   494 F.3d 466 (7th Cir. 2007) ...............................................................11, 22

*Jennings v. Emry*,
   910 F.2d 1434 (7th Cir.1990) ...................................................................18

*McCauley v. City of Chicago*,
   671 F.3d 611 (7th Cir. 2011) .....................................................................3

*Midwest Grinding Co. v. Spitz*,
   976 F. 2d 1016 (7th Cir. 1992) .................................................................12

*National Council on Comp. Ins., Inc. v. American Int'l Grp., Inc.*,
   2009 WL 466802 (N.D. Ill. Feb. 23, 2009) .............................................24

*Nesbitt v. Regas*,
   2015 WL 1331291 (N.D. Ill. Mar. 20, 2015) ..........................................19

*Oberoi v. Nehta*,
   2011 WL 1337107 (N.D. Ill. Apr. 6, 2011) .............................................17

*Okaya (U.S.A.), Inc. v. Denne Indus., Inc.*,
   2000 WL 1727785 (N.D. Ill. Nov. 21, 2000) ..........................................18

*Padilla v. Costco Wholesale Corp.*,
   2012 WL 2397012 (N.D. Ill. June 21, 2012) .............................................7

*Pennsylvania Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*,
   2010 WL 1979569 (N.D. Ill. May 17, 2010) .........................................8, 10

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993)................................................................19

*Richmond v. Nationwide Cassel L.P.*,
    52 F.3d 640 (7th Cir. 1995) ...............................................14

*Rocha v. FedEx Corp.*,
    15 F. Supp. 3d 796, 806 (N.D. Ill. 2014) ...............................12, 14, 16

*Rowe v. Bankers Life & Cas. Co.*,
    2010 WL 3699928 (N.D. Ill. Sept. 13, 2010) ...................8, 13, 15, 19

*Scott v. Chuhak & Tecson, P.C.*,
    725 F.3d 772, 782 (7th Cir. 2013) .........................................24

*Sedima, S.P.R.L. v. Imrex Co.*,
    473 U.S. 479 (1985)................................................................11

*Stachon v. United Consumers Club, Inc.*,
    229 F.3d 673 (7th Cir. 2000) ...........................................14, 17, 23

*U.S. Textiles, Inc. v. Anheuser-Busch Cos., Inc.*,
    911 F.2d 1261 .......................................................................23

*United Food & Commercial Workers Unions & Employers Midwest Health*
    *Benefits Fund v. Walgreen Co.*, 719 F.3d 849 (7th Cir. 2013) ...................12, 20, 21

*Vicom, Inc. v. Harbridge Merch. Servs., Inc.*,
    20 F.3d 771 (7th Cir. 1994) ...........................................11, 22

**STATUTES**

18 U.S.C. § 1961 *et seq*.............................................................. *passim*

18 U.S.C. § 1952...................................................................22

720 Ill. Comp. State. Ann. 5/16-1 .........................................23

Fla. Stat. § 320.64 .................................................................23

Ga. Code Ann. § 16-8-16 .......................................................23

Tex. Penal Code Ann. §§ 31.02-31.03 ...................................23

**RULES**

Fed. R. Civ. P. 9(b) ............................................................*passim*

iv

## INTRODUCTION

The Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO") provides a unique cause of action aimed at eradicating organized, long-term, habitual criminal activity. The statute's narrow purpose notwithstanding, and although "Congress never intended RICO to be employed to allow plaintiffs to turn garden-variety state law fraud cases into RICO claims, the breadth of RICO's text and lure of treble damages and attorney's fees have proven irresistible to plaintiffs bent on federalizing such claims." *Guaranteed Rate, Inc. v. Barr*, 912 F. Supp. 2d 671, 681 (N.D. Ill. 2012). Plaintiffs are no exception to RICO's siren song—now before the Court on a second attempt to make out a RICO claim against FCA in Counts IV and V of their Second Amended Complaint ("SAC"). But, as with their first effort, and for many of the same reasons identified by this Court in its prior dismissal, they have failed.

In order to stem the flood of would-be plaintiffs and weed out "garden-variety" fraud claims, courts have interpreted RICO to impose a strict set of requirements at the pleading stage. For example, it is not enough for Plaintiffs to allege that FCA engaged in the so-called 'scheme'; they must show that the alleged scheme *directly and proximately* caused *each of them* injury. It is not enough for Plaintiffs to allege that FCA conspired with other parties; Plaintiffs must further show that those parties were all members of a distinct criminal "enterprise" that (1) operated separately from FCA; (2) had members who shared a common purpose; and (3) had some identity outside of the alleged racketeering activity. It is similarly not enough to allege that FCA participated in the alleged scheme; Plaintiffs must allege through well-pleaded facts that FCA "conducted" the affairs of the criminal enterprise, rather than its own, and that it did so through a "pattern" of "racketeering activity." Each of RICO's elements is laden with meaning, and each imposes a distinct set of requirements at the pleading stage. Careful application of these requirements to Counts IV and V reveals that Plaintiffs are simply the latest claimants to be

1

drawn in by the lure of civil RICO, and that they cannot state a claim on which relief may be granted.

## SUMMARY OF ALLEGATIONS

Plaintiffs are seven Chrysler, Dodge, Jeep, and RAM dealers, located in four different states: three in Florida, two in Illinois, one in Missouri, and one in Pennsylvania. SAC ¶¶ 25-32. Plaintiffs operate these dealerships under dealer agreements with Defendant FCA US LLC ("FCA"), the manufacturer and distributor of Chrysler, Jeep, Dodge, and RAM motor vehicles, that allow them to sell FCA-branded vehicles to the public. All seven Plaintiffs operate under the common ownership and control of Edward F. Napleton.

Plaintiffs' RICO Counts allege that for "several years" FCA "has been employed by or [been] associated with" a distinct criminal enterprise consisting of FCA, a group of so-called "Conspiring Dealers," FCA employees, and third-party vendors. SAC ¶¶ 190-197. They further claim that "[o]n an ongoing basis, the Enterprise oversaw and coordinated the commission of [] schemes to defraud and to harm Plaintiffs." SAC ¶ 193. The two specific "schemes" plaintiffs allege are (1) that certain FCA dealers were induced to submit "false sales reports" to FCA in return for Volume Growth Program ("VGP") incentives, advertising funds, and additional vehicle allocation that was not available to Plaintiffs (SAC ¶¶ 3, 46-66); and (2) that FCA impaired Plaintiffs' businesses through the allegedly unfair application of a sales performance standard known as Minimum Sales Responsibility ("MSR") (SAC ¶¶ 6, 67-86). These schemes were, allegedly, perpetrated via a "pattern of racketeering" activity including "mail fraud, wire fraud, bribery, extortion, and violations of the Travel Act." SAC ¶ 198.[1]

---

[1] As is required, FCA bases this motion on the allegations in the Second Amended Complaint, which are accepted as true for purposes of this motion only, and is not an admission by FCA of the truth or accuracy of any of Plaintiffs' allegations.

## LEGAL STANDARD

To survive a motion to dismiss, a complaint "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action" are neither legally sufficient nor entitled to the presumption of truth that generally accompanies well-pled allegations. *Iqbal*, 556 U.S. at 678. It is well-settled in this Circuit that the more complex the case, the more "factual specificity" is required. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

Additionally, as the Court has previously recognized, the fraud-based elements of Plaintiffs' RICO claims must be pled with particularity under Fed. R. Civ. P. 9(b). *See* Memorandum Opinion and Order on Defendants' Motion to Dismiss the First Amended Complaint (Dkt. No. 62) ("Order") at 14 n.14 (when evaluating RICO claims, "stricter Rule 9(b) standard [applies] to the underlying allegations of fraud-based racketeering activity") (citation and quotations omitted). To meet this standard, the Seventh Circuit requires allegations of "the who, what, when, where and how" of the alleged fraud. *Guaranteed Rate*, 912 F. Supp. 2d at 684. This heightened standard "minimize[s] the extortionate impact that a baseless claim of fraud can have on a firm or an individual" and avoids "undue pressure on the defendant to settle the case in order to lift the cloud on its reputation." *See Fidelity Nat. Title Ins. Co. of New York v. Intercounty Nat. Title Ins. Co.*, 412 F.3d 745, 748-49 (7th Cir. 2005).

## ARGUMENT

### I.      PLAINTIFFS LACK STANDING TO BRING A RICO CLAIM

In dismissing Plaintiffs' RICO claims in the First Amended Complaint ("FAC") for lack of standing, this Court ruled that Plaintiffs "failed to allege sufficient facts to show that their alleged harm was in fact caused by the FCA's alleged racketeering activity." Order at 16. The

3

Court noted two specific and notably absent facts that undermined Plaintiffs' standing: they had not alleged a drop in sales as a result of the alleged RICO scheme, and had not pled "with any factual enhancement that they were experiencing a shortage of popular vehicles." *Id*. at 18. These facts remain missing in Plaintiffs' Second Amended Complaint , and their absence dooms Plaintiffs' claims. Recognizing the deficiencies in their previously-dismissed claims, the seven Plaintiffs instead burden the Court with irrelevant allegations of wrongdoing in far-flung locations. And, rather than making allegations as to each individual Plaintiff, they attempt to lump their claims together in hopes that the sum will be somehow greater than its parts. But Plaintiffs cannot lend each other standing; each Plaintiff must allege facts sufficient for the RICO claim to stand (or fall) as to that Plaintiff. By failing to plead that the alleged RICO violations directly and proximately caused harm *to each Plaintiff individually*, Plaintiffs have pled themselves out of a claim.

### A. Plaintiffs Have Not Cured Their Earlier Lack Of Standing

As this Court observed in dismissing Plaintiffs' prior RICO claims, "[a] RICO plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by reason of the conduct constituting the violation . . . In meeting that requirement, a plaintiff must show that the defendant's violation was both a proximate and but for cause of her injury." Order at 15. Plaintiffs now attempt to cure this deficiency in ¶¶ 174-89 of their SAC. But aside from the bare and conclusory suggestion in the title of this section of the SAC (entitled "The Pattern of Racketeering Activity Directly and Proximately Injured Plaintiffs' Businesses and Property"), Plaintiffs' new allegations fail to even address, let alone cure, the deficiencies that supported this Court's previous dismissal.

In fact, the bulk of Plaintiffs' new allegations in ¶¶ 174-89 of the Second Amended Complaint have no bearing on causation or injury, but rather contain additional discussion of the

alleged scheme already described.[2]  To the extent the allegations in ¶¶ 174-89 *do* actually attempt to draw a causal link to a cognizable injury, Plaintiffs fail to specify the effect of this supposed scheme on any of the Plaintiffs individually, and merely repeat the same conclusory allegations in support of the same failed standing theories that this Court has already once rejected.  *Compare,*

| First Amended Complaint | Second Amended Complaint |
| --- | --- |
| Scheme allowed "Conspiring Dealers…[to] gain a competitive advantage over dealers" FAC ¶ 133. | Scheme "directly imposed a competitive disadvantage to non-participating dealers like Plaintiffs." SAC ¶ 175. |
| FCA harmed Plaintiffs by giving "preferential subsidies and allocations of vehicles to Conspiring Dealers at the cost of Non-Conspiring Dealers" FAC ¶ 145. | Plaintiffs were "proximately harmed by the pattern of illegal activity because they did not receive a fair distribution of hot-selling vehicles, like Jeeps." SAC ¶ 177. |
| "Plaintiffs have been directly injured in their business and property by reason of Defendant FCA's…pattern of racketeering activity in that Plaintiffs have lost retail sales of vehicles" FAC ¶ 150. | "As a direct and proximate result of FCA's pattern of racketeering activity, Plaintiffs could not compete fairly and lost substantial sales and profits" SAC ¶ 187. |

What is more, Plaintiffs have not altered their theories of causation in the Second Amended Complaint.  First, Plaintiffs allege that they were unable to sell more FCA vehicles because they were not given equal access to "hot-selling" vehicles that were received by non-party FCA dealers that allegedly reported and then unwound vehicle sales.  SAC ¶¶ 175, 177-79, 182, 187-88.  Second, Plaintiffs allege that they suffered from unfair price-competition because non-party dealers who participated in the alleged scheme allegedly used subsidies from FCA to undercut Plaintiffs' prices for the same vehicles.  *Id*. at ¶¶ 186, 188.  Because these are the same

---

[2] *See, e.g.,* SAC ¶ 175 (alleging that managers in a given region participated in scheme); ¶ 176 (alleging employee warned FCA that scheme raised liability concerns); ¶ 177 (alleging scheme caused sales figures to be inaccurate); ¶ 178 (alleging FCA employee had concerns regarding scheme); ¶ 179 (same); ¶ 180 (alleging Plaintiff refused to participate in scheme); ¶182 (describing alleged functioning of the allocation system); ¶ 183 (same); ¶ 184 (alleging how scheme worked).  None of these alleged new "facts" do anything to solve Plaintiffs' fundamental inability to link the alleged scheme to any specific injury any individual Plaintiff claims to have suffered.

theories Plaintiffs previously relied on in their earlier attempt to allege RICO claims, the factual enhancement the Court identified as lacking in its Order is the enhancement the Plaintiffs are required to supply if their new RICO claims are to survive dismissal.

In rejecting Plaintiffs' prior, unsuccessful, RICO claims relating to pricing, this Court relied on the observation in *Anza v. Ideal Steel Supply Corp.* that a party "could have lowered its prices for any number of reasons unconnected to the asserted pattern of fraud. It may have received a cash inflow from some other source or concluded that the additional sales would justify a smaller profit margin." Order at 15-17; *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 458-59 (2006). Because Plaintiffs did "not allege[] specific facts to show that their sales numbers were meeting expectations and those numbers suddenly dropped after the introduction of FCA's scheme and Plaintiffs' decisions to not participate in it," Order at 17, Plaintiffs' price-competition theory failed. As to their vehicle allocation theory, the Court ruled that "even if it were the case that Plaintiffs did indeed receive fewer popular vehicles to sell due to the scheme, they nevertheless failed to allege that they suffered harm because they have not plead with any factual enhancement that they were experiencing a shortage of popular vehicles and thus were losing out on sales due to the scheme." *Id.* at 18.

These deficiencies should have been relatively straightforward for Plaintiffs to cure—if in fact they had suffered any injury cognizable under RICO. *See* Order at 18 n.15 (observing that information about "shortages, inability to receive a specific model type, etc. – would be in the Plaintiffs' possession" and the absence of such factual enhancement was "damning"). But the Second Amended Complaint adds no new factual allegations concerning changes in sales numbers or insufficient inventory to cure these twin deficiencies.[3]

---

[3] To the contrary, Plaintiffs' new allegations render their causation theory all the more tenuous. For example, the automated allocation system Plaintiffs describe ensures that Plaintiffs would <u>not</u> have had a

Instead, Plaintiffs make the conclusory allegation that they have lost "discrete sales opportunities as a result of the NVDR scheme." SAC ¶186. Indeed, they claim to have conducted an "analysis" showing that "numerous" customers "ultimately purchased vehicles from Conspiring Dealers due to availability" or "because of lower price." *Id.* They further estimate that "[i]n 2015 and 2016, respectively, at least 5,608 sales were diverted to Plaintiffs' competition." *Id.* Nowhere do Plaintiffs explain how this 5,608 figure is derived, how the figure should be divided across the seven Plaintiffs, to which competitors sales were allegedly diverted, or any other factual enhancement sufficient to satisfy the pleading requirements of the Federal Rules.

This glaring problem is the first of many. Plaintiffs allege that "numerous" customers bought from competitors "due to availability" but don't even try to provide any factual basis for this allegation—what models of vehicles, when, to whom diverted, etc. *See* SAC ¶ 186. Plaintiffs' inability to provide details of this fundamental aspect of their claim fails to satisfy the requirements of the well-pleaded complaint rule. *See Padilla v. Costco Wholesale Corp.*, 2012 WL 2397012, at *4 (N.D. Ill. June 21, 2012) (granting motion to dismiss where plaintiffs had alleged "numerous" studies supported their fraud claims but failed to offer any specifics).

Plaintiffs' invocation of a total number of lost vehicle sales (4,100, a number which does not represent "lost" sales at all, but is in fact just the number of sales by which Plaintiffs' competitors outperform them) is similarly lacking in any factual enhancement that might establish causation. *See* SAC ¶ 187. As the Supreme Court observed in *Anza*, "[Plaintiffs'] lost

---

vehicle shortage at any time. As they allege, "Importantly, dealers with sufficiently low days' supply can even be awarded multiple vehicles before other dealers are able to obtain even a single vehicle, due to the iterative way in which the algorithm operates." SAC ¶ 183. Thus, by Plaintiffs' own telling, if they were truly ever "out of stock" of the most popular vehicles the automated system would have moved them to the front of the line for allocation.

sales could have resulted from factors other than [Defendants'] alleged acts of fraud. Businesses lose and gain customers for many reasons, and it would require a complex assessment to establish what portion of [Plaintiffs'] lost sales were the product of [Defendants'] decreased prices." *Anza*, 547 U.S. at 459. Plaintiffs' new allegations simply fail to take the essential step of showing that the "alleged violation led <u>directly</u> to the plaintiff's injuries" and should be rejected on that basis. *See id*. at 461 (emphasis added).

Even if they had taken this step, and even if these aggregated numbers were accurate, Plaintiffs' still cannot cure their standing deficiencies because the allegations lump all seven Plaintiffs together, alleging a total number of sales "diverted to Plaintiffs' competition" as a whole. SAC ¶¶ 186-87. This improper "group pleading" makes it impossible for this Court to make the necessary evaluation of the causal link between the alleged scheme and the alleged injury to any one of the individual Plaintiffs, providing further grounds for dismissal of their claims.

**B.    Plaintiffs Have Not Pleaded Specific Causation As To Any Individual Plaintiff**

"In complex cases like the RICO . . . claims at issue here, a fuller set of factual allegations may be necessary to show that the plaintiff's claim is not largely groundless." *See Pennsylvania Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, 2010 WL 1979569, at *5 (N.D. Ill. May 17, 2010)) (citation and quotations omitted); *Rowe v. Bankers Life & Cas. Co.*, 2010 WL 3699928, at *7 (N.D. Ill. Sept. 13, 2010) ("[p]laintiffs' thin description of the 'who' and 'when' of the alleged fraud, without more specificity as to its content, is fatally defective" to their RICO claims). Courts are particularly wary of efforts to evade the requirements of a RICO claim by "lumping" allegations together instead of taking the time to state individualized claims. *See Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 730 (7th Cir. 1998) ("the amended complaint

8

simply treats all the defendants as one; such 'lumping together' of defendants is clearly insufficient to state a RICO claim under § 1962(c)").

Indeed, in cases such as this, where the alleged scheme by necessity will have different effects on different Plaintiffs who operate in different geographic areas and with different competitors, the Seventh Circuit has specifically instructed that "plaintiffs [are] required to specify which defendants said what to whom and when." *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 471 (7th Cir. 1999) (upholding dismissal of fraud claims in a "multiple-plaintiff suit" where the complaint did not "reveal what exactly each agent said to each plaintiff" but instead "merely [gave] the gist" of the fraudulent activity and "the alleged scheme").

Plaintiffs' Second Amended Complaint engages in precisely the sort of claim-lumping that courts regularly reject. Not only do plaintiffs fail to state the "what to whom and when," for each Plaintiff, they actually leave some of the Plaintiffs out of the RICO allegations of the Second Amended Complaint entirely. Plaintiff Clermont Motors, LLC, for example, is identified in SAC ¶¶ 27 and 32 (listing plaintiffs) and in Count X (demanding relief under Florida Automobile Dealers Act). But aside from these two references, there is not a single mention of that Plaintiff, nor any explanation of how the alleged RICO violations harmed it, anywhere else in the 311-paragraph, 99-page SAC. Similarly, Plaintiff Mid Rivers is identified in SAC ¶¶ 30, 32 (listing plaintiffs); SAC ¶ 99, 102 (alleging Mid Rivers was unable to meet sales requirements); and Count XI (demanding relief under Missouri statute). But is otherwise entirely absent from the allegations of the SAC. Indeed, of the seven Plaintiffs, only two are identified by name in the now 71-paragraph RICO section of the SAC. And even these references are in passing and limited to a single paragraph. *See* SAC ¶ 203 (alleging that Plaintiffs Arlington Heights and Northlake invested in facilities).

9

This Court's decision in *Penn. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, is instructive. In *Penn Chiropractic*, multiple healthcare providers brought RICO claims against Blue Cross Blue Shield and its various affiliated entities based on allegations that the insurer engaged in an illegal scheme of reimbursing the plaintiffs for services, and then fraudulently demanding repayment. *Penn Chiropractic Ass'n*, 2010 WL 1979569, at *6. The court rejected the argument that the defendants were "collectively liable for plaintiffs' injuries, regardless of whether a particular defendant's actions actually caused an injury to an individual plaintiff" and ruled that plaintiffs' failure to plead individually "calls into question the basis upon which any particular plaintiff may assert a substantive RICO claim under section 1962(c) against defendants that did nothing to harm that plaintiff." *Id.* at *11. Here, as in *Penn Chiropractic*, there are no individualized allegations of harm. Indeed, several Plaintiffs are absent from any substantive factual allegations of the SAC as a whole and the RICO allegations in particular. Such "intertwining allegations" are insufficient to support a claim. *See id.*

Plaintiffs' decision not to plead their claims individually was no doubt influenced by the fact that the doctrine of *in pari delicto* bars at least one of the Plaintiffs, and perhaps more, from recovering under the statute. As FCA argued in its opposition to Plaintiffs' motion to amend their complaint and the exhibits attached thereto, Plaintiffs have admitted to participating in the very scheme that they allege constitutes a criminal racketeering enterprise. *See* Opposition to Plaintiffs' Motion for Leave to Amend (Dkt. No. 240) at 10-12; Exhibit A to Opposition to

Plaintiffs' Motion for Leave to Amend (Dkt. No. 240-1). [4] Plaintiffs' own actions are an independent ground for dismissal as to at least one of the seven Plaintiffs, providing a further example of how Plaintiffs' group-pleading is an attempt to evade individualized scrutiny of their claims.

## II.    PLAINTIFFS DO NOT ALLEGE SUFFICIENT FACTS TO PLEAD THE ELEMENTS OF A RICO CLAIM

Even if Plaintiffs had adequately alleged that the purported scheme *directly and proximately* caused *each plaintiff dealer* injury, their claim must still be dismissed because it fails to adequately allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Jennings v. Auto Meter Prods., Inc.*, 495 F.3d 466, 472 (7th Cir. 2007) (quoting *Sedima, S.P.R.L. v. Imrex Co. Inc.*, 473 U.S. 479, 496 (1985))

RICO "does not cover all instances of wrongdoing," but is instead "a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006) (citations omitted). Given the statute's broad language, adherence to this maxim is necessary to avoid the "danger of [RICO] being applied to situations absurdly remote from the concerns of the statute's framers." *Fitzgerald v. Chrysler*, 116 F.3d 225, 226 (7th Cir. 1997). To protect against misuse, courts evaluating civil RICO claims have adopted requirements intended to ensure "natural and commonsense result[s]." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 780 (7th Cir. 1994) (citations omitted). In applying these requirements, courts must be constantly on guard against

---

[4] As FCA explained in this briefing, allowing Plaintiffs to bring RICO claims when they participated in the very practice that they assail would be inconsistent with the purpose of the statute and should not be countenanced. *See Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 115 (11th Cir. 2006) ("It would be anomalous, to say the least, for the RICO statute to make racketeering unlawful in one provision, yet award the violator with treble damages in another provision of the same statute . . . [Allowing RICO scheme participant] recovery under RICO would not divest RICO violators of their ill-gotten gains; it would result in a wealth transfer among similarly situated conspirators.").

plaintiffs' invitation to "fit a square peg in a round hole by squeezing garden-variety business disputes into civil RICO actions." *Gamboa*, 457 F.3d at 710 (quoting *Midwest Grinding Co. Inc.* v. *Spitz*, 976 F. 2d 1016, 1025 (7th Cir. 1992)). Here, Plaintiffs attempt precisely that.[5]

**A.**     **Plaintiffs Do Not Adequately Allege The Existence Of An "Association In Fact" Enterprise**

"The 'first rule' of pleading a RICO claim is that the plaintiff must identify the enterprise." *Rocha v. FedEx Corp.*, 15 F. Supp. 3d 796, 806 (N.D. Ill. 2014). Plaintiffs have failed to do so. They allege that "Defendant FCA, the Conspiring Dealers, Business Center Directors, and third-party vendors are an association-in-fact 'enterprise'…as that term is defined in 18 U.S.C. § 1961(4)." SAC ¶ 190. But this type of enterprise formulation has been roundly rejected in this Circuit, and fails as a matter of law, for at least three reasons: (1) the enterprise Plaintiffs define is insufficiently distinct from the alleged participants; (2) the alleged enterprise lacks a common purpose; and (3) the alleged enterprise is held together only by the participants' engagement in the alleged predicate acts.

**1.**     <u>The "Enterprise" Is Not Sufficiently Distinct From FCA</u>

Section 1962(c) makes it "unlawful for any **person** employed by or associated with any **enterprise**…to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c) (emphasis added). Courts have interpreted this language to mean that "Section 1962(c) requires a plaintiff to identify a 'person'—*i.e.*, the defendant—that is distinct from the RICO enterprise." *United Food & Commercial Workers Unions & Employers Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 853 (7th Cir. 2013). It is black letter law that where plaintiffs define a RICO

---

[5] These arguments were raised in FCA's prior motion to dismiss (Dkt. No. 41) but the Court did not need to reach them given its conclusion that Plaintiffs lacked standing under RICO (Order at 14-19). Then, as now, Plaintiffs' failure to allege the substantive aspects of a RICO claim warrant dismissal.

enterprise that is not sufficiently distinct from the RICO defendant their claim must fail. *See Bucklew v. Hawkins, Ash, Baptie & Co.*, 329 F.3d 923, 934 (7th Cir. 2003) ("RICO claim is [a] loser" where there was not "sufficient distinctness" between the alleged RICO person and the alleged enterprise to "trigger RICO liability"); *Baker v. IBP, Inc.*, 357 F.3d 685, 692 (7th Cir. 2004) ("without a difference between the defendant and the 'enterprise' there can be no violation of RICO"); *Rowe*, 2010 WL 3699928, at *4 ("The RICO 'enterprise' must be separate and distinct from the RICO 'person' (i.e., the defendant).").

The Second Amended Complaint adds nothing to Plaintiffs' flawed enterprise definition in the First Amended Complaint, and thus still fails this "distinctness" test. As in the First Amended Complaint, Plaintiffs' alleged enterprise still consists of only (1) FCA, (2) its employees, (3) its dealers, and (4) certain unnamed third-party vendors. As an initial matter, a corporation plus its employees cannot be a RICO enterprise.[6] Otherwise, "[r]ead literally, RICO would encompass every fraud case against a corporation, provided only that a pattern of fraud and some use of the mails or of telecommunications to further the fraud were shown; the corporation would be the RICO person and the corporation plus its employees the 'enterprise.' The courts have excluded this far-fetched possibility by holding that an employer and its employees cannot constitute a RICO enterprise." *Fitzgerald*, 116 F.3d at 226; *see also Bachman v. Bear, Stearns & Co., Inc.*, 178 F.3d 930, 932 (7th Cir. 1999) (a "firm and its employees…are not an enterprise separate from the firm itself," to add the corporation to the individual employees is "to add nothing").

Plaintiffs try to escape this bar by including "Conspiring Dealers" in their concocted enterprise. SAC ¶ 190. But this maneuver too is foreclosed by caselaw. Again, *Fitzgerald* is

---

[6] *See* SAC ¶ 190 (alleging that enterprise included "Certain Business Center Directors, and Area Sales Managers conspiring with those Business Center Directors")

instructive: "What possible difference, from the standpoint of preventing the type of abuse for which RICO was designed, can it make that Chrysler sells its products to the consumer through franchised dealers rather than through dealerships that it owns…?"  *Fitzgerald,* 116 F.3d at 227; *see also id.* ("[W]e cannot imagine, and what we do not find any support for in appellate case law, is applying RICO to a free-standing corporation such as Chrysler merely because Chrysler does business through [dealers], as virtually every manufacturer does."); *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 676 n. 3 (7th Cir. 2000) (plaintiff cannot establish a RICO enterprise by naming corporation's franchises in addition to the corporation); *Rocha*, 15 F. Supp. 3d at 807 (defendants could not constitute a separate RICO enterprise where they were "all members of the same 'corporate family'").

Aware that their "complaint comes perilously close to alleging that [FCA] plus its agents and employees is the 'enterprise,'" and knowing that this is "a theory that won't fly," *Baker*, 357 F.3d at 691, Plaintiffs attempt to cover up this obvious pleading deficiency by including a "third-party" to round out the alleged enterprise.  *See* SAC ¶ 190 ("third-party vendors were retained by FCA to submit marketing and sales data that was then manipulated and abused by FCA in order to conceal its schemes").  This transparent attempt to escape dismissal by adding undefined and irrelevant additional players must fail.  *See Baker*, 357 F.3d at 691-92 (upholding dismissal of RICO claim where alleged enterprise consisted of defendant plus "the persons and organizations" it used to carry out its business); *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 645 (7th Cir. 1995) (enterprise consisting of the defendants, four additional named entities, and "unnamed car dealers" is insufficient); *Stachon*, 229 F.3d at 676 ("vague allegations of a RICO enterprise made up of a string of participants, known and unknown" are insufficient).

14

Tellingly, these fig leaf "third-party vendors" appear in only a handful of paragraphs in Plaintiffs' 311-paragraph Complaint. *See* SAC ¶¶ 80, 83, 190, 195, 220, 238, 271. And when they do, the description hardly sounds like that of a co-conspirator who was engaged with FCA in a common enterprise. *See id.* at ¶ 80 ("even [FCA's third-party vendor] felt compelled to notify FCA . . . [that metrics were skewed] in a manner so as to put FCA's own dealers at an apparent disadvantage. FCA intentionally ignored this notification from [the vendor], and continued to use this faulty data to impose pressure on Plaintiffs."); ¶ 238 ("FCA, acting against the independent advice of [its third-party vendors] has deemed Luxury Brands to be 'competitive' with the vehicles the Plaintiffs sell"); ¶ 271 (same).

Moreover, the few references to third party vendors in the SAC relate only to Plaintiffs' alleged MSR scheme, and offer no explanation of how these third-party vendors, who merely analyzed "marketing and sales data," *id* at ¶ 190, could have participated in FCA's scheme to induce dealers to submit "false sales reports" in return for Volume Growth Program incentives, advertising funds, and additional vehicle allocation that was not available to Plaintiffs (SAC ¶¶ 3, 46-66).

Put simply, including a grab bag of so-called "third-party" vendors in order to salvage a poorly defined enterprise that is otherwise insufficiently distinct from FCA does not stave off dismissal. *See Rowe*, 2010 WL 3699928, at *6 (dismissing RICO claims because addition of "independently contracted agents" to corporate defendants did not suffice to satisfy distinctness requirement).

### 2. The "Enterprise" Lacks A Common Purpose

Even if Plaintiffs' defined enterprise was sufficiently distinct from FCA—the alleged RICO person—it is missing the "essential ingredient" of a RICO enterprise—a common purpose. *See Guaranteed Rate*, 912 F. Supp. 2d at 686-87 ("The existence of a common goal or purpose is

15

an 'essential ingredient' of an association-in-fact enterprise.") (citation omitted). Again, Plaintiffs' SAC does nothing to cure the earlier deficiencies in their FAC on this front. The section of Plaintiffs' Second Amended Complaint alleging the existence of a RICO enterprise, ¶¶ 190-208, continues to state simply that the "members of the Enterprise are . . . joined in purpose" but offers no further factual enhancement or support for what their common purpose actually is, or might be. SAC ¶ 190. This failure alone should end the inquiry. *See Rocha*, 15 F. Supp. 3d at 808 ("[t]he absence of factual allegations regarding the…purpose of the alleged enterprise is fatal to the claim"). Even overlooking this deficiency, it is unclear how the particular set of participants Plaintiffs identify *could ever* share the sort of common purpose required to successfully plead the existence of a RICO enterprise.

By Plaintiffs' own allegations, not only did each participant in the "enterprise" have a different reason for participating, their purposes were in direct conflict. The Conspiring Dealers wanted to "gain a competitive advantage over dealers" and "profit from unearned payments." SAC ¶ 190. Meanwhile, FCA employees were in it for "monetary and quarterly bonuses which are directly related to reported vehicle sales numbers." *Id.* at ¶¶ 52, 59.[7] But FCA had to pay out these very "unearned payments" to the dealers and "bonuses" to the employees, so every dollar these participants gained as a result of the scheme was a dollar lost by FCA—this is the opposite of a common purpose. *See Baker*, 357 F.3d at 691 (no common purpose where "[Defendant] wants to pay lower wages; the [co-conspirators] want to be paid more for services rendered (though [Defendant] would like to pay them less)").

FCA's own alleged purpose was to "prop[] up the value of its stock." SAC ¶ 202. But

---

[7] Plaintiffs are internally inconsistent in their description of FCA employees' purposes, alleging elsewhere that "FCA managers were in fear of losing their jobs so they went ahead [with the scheme]." SAC ¶ 161. This reveals that Plaintiffs have failed to allege a common purpose *even among employees*—let alone among enterprise participants.

16

again, this conflicts with the goals of the other participants as doing so allegedly harmed dealers who were "fraudulently induce[d]…to contribute ever-increasing capital to their business operations." *Id.* As for the third-party vendors, Plaintiffs state only that they had "allied interests" to FCA, but they undermine their assertion through contradictory allegations in the very same paragraph. *See id.* at ¶ 80 (vendors felt "compelled to notify FCA that [metrics were skewed]" but were "intentionally ignored" by FCA); *see also id.* at ¶ 238 ("FCA, act[ed] against the independent advice of [its third-party vendors]"); *id.* at ¶ 271 (same). These clearly divergent interests among the alleged enterprise participants are the opposite of what the statute requires. *See Baker*, 357 F.3d at 691 (no common purpose for alleged association in fact enterprise where the members of the enterprise have "divergent goals").[8]

### 3. The "Enterprise" Is Not Sufficiently Distinct From The Alleged Racketeering Activity

In the same way that an alleged RICO enterprise must be separate and distinct from the alleged RICO defendant, *see supra* Section II.A.1, so too must the defined enterprise be separate and distinct from the alleged pattern of racketeering activity, "otherwise every conspiracy to commit fraud that requires more than one person to commit is a RICO organization and consequently every fraud that requires more than one person to commit is a RICO violation." *Stachon*, 229 F.3d at 676 (quoting *Bachman*, 178 F.3d at 932).

---

[8] To the extent the SAC could be (generously) read to allege that the participants in their alleged enterprise all shared a common profit motive, this is not sufficient to state a common purpose. *See Oberoi v. Nehta*, 2011 WL 1337107, at *4 (N.D. Ill. Apr. 6, 2011) (no RICO enterprise where defendants merely made their own respective profits and did not share in the profits of the alleged enterprise); *D.M. Robinson Chiropractic, S.C. v. Encompass Ins. Co. of Am.*, 2013 WL 1286696, at *9 (N.D. Ill. Mar. 28, 2013) (dismissing RICO claim where plaintiffs alleged that common purpose was "increasing the profits of the [enterprise] participants" and observing "the shared goal of financial profit, by each party conducting its own business, does not qualify as a 'common purpose' under RICO"); *Cement-Lock v. Gas Tech. Inst.*, 2005 WL 2420374, at *19 (N.D. Ill. Sept. 30, 2005) (no common purpose where plaintiffs claimed that the enterprise operated, inter alia, through a system of "payments and kickbacks" as "this purpose served only Defendants' individual self-interest").

Put differently, if the only common thread that ties an alleged enterprise together is the racketeering activity it was alleged to have engaged in, a plaintiff has failed to state a claim under RICO. *See Jennings v. Emry*, 910 F.2d 1434, 1440 (7th Cir.1990) ("although a pattern of racketeering activity may be the means through which the enterprise interacts with society, it is not itself the enterprise, for an enterprise is defined by what it is, not what it does"); *D.M. Robinson Chiropractic, S.C.*, 2013 WL 1286696, at *9 ("An alleged pattern of racketeering activity does not by itself constitute an enterprise").

Unburdened by citation or explanation, Plaintiffs state that "[t]he Enterprise is distinct from and has an existence beyond the pattern of racketeering activity described above, in that it employs and contracts with third-party vendors, dealerships, suppliers, advertising firms, and other entities who conduct valid sales, manufacture actual automobiles, and conduct legitimate marketing research." SAC ¶ 195. It is, of course, true that at an *individual* level each group that Plaintiffs contend participated in the alleged enterprise engaged in its own separate business activities. But that is not the relevant inquiry for the purposes of demonstrating the "separateness" of a RICO enterprise: "In assessing whether an alleged enterprise has an ascertainable structure . . . it is appropriate to consider whether the enterprise would still exist were the predicate acts removed from the equation." *Okaya (U.S.A.), Inc. v. Denne Indus., Inc.*, 2000 WL 1727785, at *4 (N.D. Ill. Nov. 21, 2000). Here, it decidedly would not. The specific constellation of enterprise participants that Plaintiffs identify have no common identity beyond their participation in the alleged predicate acts.

In fact, many of the alleged participants in this so-called enterprise are defined *only* by reference to their alleged racketeering acts—for example, the "Conspiring Dealer" participants are defined by Plaintiffs as "dealers who conspire with FCA to falsely report sales"—they have

no separate identity beyond the simple fact of having engaged in the alleged activity. SAC ¶ 9. FCA employee participants and third-party vendors are similarly identified only in relation to the alleged RICO fraud. *See id.* at ¶ 190. At bottom, "[a]lthough Plaintiffs' complaint sets forth massive detail, it does not disclose a hierarchical organization with a structure and goals separate from the predicate acts themselves. In this case, rather than identify the enterprise, "Plaintiffs have merely strung together a list of individuals and entities." *See Cement-Lock*, 2005 WL 2420374, at *18.

Plaintiffs have not drawn a sufficient distinction between FCA and the alleged enterprise, they do not articulate a common enterprise purpose, and they cannot point to a common thread linking the enterprise participants beyond the predicate acts themselves. As a result, their complaint fails to adequately define a RICO enterprise and must be dismissed.

### B. Plaintiffs Do Not Adequately Allege That FCA "Conducted" The Alleged Enterprise's Affairs

Even if Plaintiffs could define a RICO enterprise, their claim must still be dismissed for failure to show that FCA engaged in the conduct of that enterprise. "To satisfy the conduct element of RICO, the defendant must have played some part in the operation or management of a RICO enterprise. Liability hinges on whether defendants conducted or participated in the conduct of the enterprise's affairs, not just their own affairs." *Rowe*, 2010 WL 3699928, at *4 (citing *Reves v. Ernst & Young*, 507 U.S. 170, 184-185 (1993)).[9]

---

[9] The requirement that a RICO plaintiff adequately allege conduct separate from its own affairs is particularly important where, as here, Plaintiffs' enterprise formulation is shaky. *See supra* Section II.A; *see also Nesbitt v. Regas*, 2015 WL 1331291, at *7 (N.D. Ill. Mar. 20, 2015) ("A RICO complaint—especially one that alleges an association-in-fact enterprise where the distinctions between the alleged "enterprise" and the individual defendants may not be clear—must allege that the defendant acted on the enterprise's behalf, rather than merely serving the defendant's own, individual, interests.").

The Seventh Circuit has evaluated RICO allegations in a situation closely similar to this and determined that the sort of quid pro quo arrangements alleged by Plaintiffs fail, as a matter of law, to meet the requirement.  In *United Food & Commercial Workers Unions & Employers Midwest Health Benefits Fund v. Walgreen Co.*, an employee benefit plan brought a RICO action alleging that the defendant, a pharmacy, conspired with a pharmaceutical company to fraudulently overcharge plaintiffs by filling prescriptions for generic drugs with the pharmaceutical co-conspirator's more expensive alternative.  *Walgreen Co.*, 719 F.3d 849, 854 (7th Cir. 2013).  The Seventh Circuit affirmed the dismissal of this claim, explaining that, "[w]hile the complaint contains ample allegations of misconduct by both [pharmacy] and [pharmaceutical], it falls short of plausibly alleging the type of concerted activity undertaken on behalf of an identifiable enterprise necessary to a successful RICO claim.  RICO is not violated every time two or more individuals commit one of the predicate crimes listed in the statute." *Id.* at 850-51.

In *Walgreen*, as here, the plaintiff alleged that one RICO participant (the pharmaceutical company) approached several other potential participants (the pharmacies) and gave them the opportunity to make more money by participating in the alleged scheme (filling prescriptions with the pharmaceutical's more expensive drug).  Some of the pharmacies declined, others agreed.  In *Walgreen*, as here, the plaintiff alleged the existence of an "association in fact" RICO enterprise consisting of the conspiring retail distributor, the product manufacturer, and employees of the two companies.  *See id.* at 855.  Without reaching the question of whether the complaint in that case sufficiently defined an enterprise, the court ruled that the complaint did not adequately allege that the pharmacy and pharmaceutical were "conducting" the affairs of the enterprise as opposed to their own.  *Id.* at 856.  Although, as here, the plaintiff detailed numerous

20

conversations and communications in which the two defendant companies allegedly agreed to
and coordinated the scheme, "nothing in the complaint reveals how one might infer that these
communications or actions were undertaken on behalf of the *enterprise* as opposed to on behalf
of Walgreen and Par in their individual capacities, to advance their individual self-interests." *Id.*
at 854 (emphasis in original).

Plaintiffs face the same problem here. The Second Amended Complaint alleges nothing
more than that each participant acted to advance its own commercial interest. *See supra* at
Section II.A.2 (discussing individual commercial motivations of each alleged enterprise
participant). The Seventh Circuit's ruling in *Walgreen* thus perfectly describes the "conduct" of
the alleged RICO participants in this case: "To be sure, [Conspiring Dealers and FCA] were not
strangers. Representatives from the companies regularly communicated with one another, and
[dealers] purchased [vehicles] from [FCA]. This type of interaction, however, shows only that
the [alleged participants] had a commercial relationship, not that they had joined together to
create a distinct entity for purposes of [the scheme]." *Walgreen Co.*, 719 F.3d at 855.

Even taking all of their allegations as true, and giving them the benefit of every doubt, the
Seventh Circuit has made clear that the most Plaintiffs "allege[] here is a fraud perpetrated by
[FCA], not an association-in-fact enterprise directed and controlled by [it]." *See Crichton v.
Golden Rule Ins. Co.*, 576 F.3d 392, 400 (7th Cir. 2009). Thus, their RICO claim should be
dismissed for failure to adequately allege that FCA engaged in the "conduct" of a separate RICO
enterprise. *See Baker*, 357 F.3d at 691 (rejecting RICO claim where "[t]he nub of the complaint
is that [defendant] operates itself unlawfully… [but] does not manage or operate some other
enterprise").

### C.     Plaintiffs Do Not Adequately Allege Either A "Pattern" Or "Racketeering Activity" As Required By RICO

The Supreme Court has made clear that a RICO claim cannot be sustained by allegations consisting of assorted independent acts, rather, a plaintiff must establish a "pattern of racketeering activity." *See H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239-42 (1989); *see also Jennings*, 495 F.3d at 472-73.  Plaintiffs have failed to do so here.  A "pattern of racketeering activity" requires a plaintiff to satisfy the "continuity plus relationship test" by demonstrating "a relationship between the predicate acts as well as a threat of continuing activity."  *DeGuelle v. Camilli*, 664 F.3d 192, 199 (7th Cir. 2011) (citing *H.J. Inc.*, 492 U.S. at 239).  The required "relationship" can be shown if the predicate acts "have the same or similar purposes, results, participants, victims, methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events."  *H.J. Inc.,* 492 U.S. at 240.  Plaintiffs fail to sufficiently allege that the predicate acts are related.  Instead, Plaintiffs have alleged a mixture of isolated events involving different actors with independent motives and varying results.  *See* SAC ¶ 51.

The Second Amended Complaint also fails to sufficiently allege "racketeering activity" as required by 18 U.S.C. § 1962.  A Plaintiff cannot establish multiple "predicate acts by alleging that individual acts violate multiple statutes."  *Jennings,* 494 F.3d at 475; *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 781 (7th Cir. 1994) (dismissing RICO claims because "[w]hen all the verbiage is weeded out, [the Plaintiff] manages to allege a very few acts of mail or wire fraud in each count").  While Plaintiffs purport to have enhanced their allegations of racketeering activity by adding violations of the Travel Act under 18 U.S.C. § 1952, and allegations of bribery and extortion under applicable state laws, to their previously alleged predicate acts, these allegations distill down to the same few isolated acts of alleged mail and

22

wire fraud related to the reporting of supposedly false sales. Such limited acts do not constitute the type of "racketeering activity" necessary to support a RICO claim. *See U.S. Textiles, Inc. v. Anheuser-Busch Cos., Inc.*, 911 F.2d 1261, 1269 (Congress did not intend for RICO to apply to allegations of mail and wire fraud "absent a showing of criminal activity which presents a 'more significant social threat'").

Even if Plaintiffs' allegations of bribery, extortion, and Travel Act violations were not merely relabeled versions of the same acts of alleged mail and wire fraud, the underlying predicate acts have not been adequately pleaded so as to sustain a RICO violation. First, misdemeanors do not qualify as "racketeering activity," yet three of the four bribery statutes the plaintiffs rely upon are misdemeanor commercial bribery statutes. *See* 18 U.S.C. § 1961(1); SAC ¶ 157. Second, extortion requires a defendant to have actually taken the property of another. *See* 720 Ill. Comp. State. Ann. 5/16-1; Tex. Penal Code Ann. §§ 31.02-31.03; Ga. Code Ann. § 16-8-16. Plaintiffs have not alleged anything of the sort—at best, they allege an inchoate version of extortion based on vague alleged threats to individuals' jobs and the withholding of vehicles Plaintiffs never possessed. Plaintiffs' failure to adequately allege the elements of their predicate acts is grounds for dismissal of their claims. *See Bressner v. Ambroziak*, 379 F.3d 478, 482 (7th Cir. 2004) (affirming dismissal of RICO claim where plaintiff failed to plead "essential element" of predicate act). Third and finally, because FCA's alleged violation of the Travel Act is dependent upon Plaintiffs' claims of bribery and extortion it falls with the others. *See* SAC ¶¶ 163-165.

## III. COUNT V FAILS ALONG WITH COUNT IV AND THE "PROVISIONAL" REPLEADING OF COUNTS VI, VII, XIII, AND XIV IS IMPROPER

Plaintiffs' RICO conspiracy claim (Count V) fails for the same reasons as their substantive RICO claim (Count IV), and should be dismissed for the same reasons. *See Nat'l*

23

*Council on Comp. Ins., Inc. v. Am. Int'l Grp., Inc.*, 2009 WL 466802, at \*16 (N.D. Ill. Feb. 23, 2009) ("[B]ecause [plaintiff] has failed to state a claim under section 1962(c), its RICO conspiracy claim is also deficient."); *see also Stachon*, 229 F.3d 637 at 677.

Plaintiffs' erroneous attempt to replead claims this Court previously dismissed with prejudice is also improper, requiring this Court to once again dismiss these counts. Plaintiffs' Second Amended Complaint indicates that Counts VI, VII, XIII, XIV, which include two counts against former defendant FCAR, are alleged again "solely for the purpose of protecting against any assertion of waiver at the time of any subsequent appeal." SAC 2 n.1, 13 n.3. But the rule in this Circuit is clear; when repleading following dismissal "[i]t is not waiver—it is prudence and economy—for parties not to reassert a position that the trial judge has rejected." *Bastian v. Petren Res. Corp.*, 892 F.2d 680, 683 (7th Cir. 1990). *See also Scott v. Chuhak & Tecson, P.C.*, 725 F.3d 772, 782 (7th Cir. 2013) (plaintiff's "position—that a litigant must replead in later complaints claims that the court rejected in an earlier complaint in order to preserve those issues on appeal—would lead to needlessly duplicative pleadings and make-work for district courts.").

Accordingly, FCA requests that the Court reaffirm the dismissal of these Counts with prejudice, and have them removed from the Second Amended Complaint. *See Coleman v. City of Peoria*, 2016 WL 5497363, at \*2 (C.D. Ill. Sept. 27, 2016) (despite "explanatory footnote" stating claim was replead solely to preserve it for appeal, plaintiff had "no basis in law to bring the claim. It was dismissed before for this reason, and is dismissed again for this reason, with prejudice.").

## CONCLUSION

For the foregoing reasons, FCA respectfully requests that the Court dismiss, with prejudice, Counts IV and V of the Second Amended Complaint.

Dated: April 4, 2018                      Respectfully submitted,

*/s/ Robert D. Cultice*

*Of Counsel*:

Robert D. Cultice *(admitted pro hac vice)*
Felicia H. Ellsworth *(admitted pro hac vice)*
Caitlin W. Monahan *(admitted pro hac vice)*
Michael J. Horrell *(admitted pro hac vice)*
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000
robert.cultice@wilmerhale.com
felicia.ellsworth@wilmerhale.com
caitlin.monahan@wilmerhale.com
michael.horrell@wilmerhale.com

Randall L. Oyler
Owen H. Smith
Brandon C. Prosansky

BARACK FERRAZZANO KIRSCHBAUM &
NAGELBERG LLP
200 West Madison Street
Suite 3900
Chicago, IL 60606
(318) 984-3100
randall.oyler@bfkn.com
owen.smith@bfkn.com
brandon.prosansky@bfkn.com

**Attorneys for Defendant**

25

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that this document filed through the CM/ECF system will be served upon counsel for Plaintiffs electronically through the CM/ECF system on April 4, 2018.

/s/ Robert D. Cultice
_____
Robert D. Cultice *(admitted pro hac vice)*
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000
Fax: (617) 526-5000
robert.cultice@wilmerhale.com

26